## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ZACHRY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 24-90377 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## EMERGENCY MOTION FOR ENTRY OF PROTECTIVE ORDER PROTECTING GOLDEN PASS FROM DEBTORS' DISCOVERY REQUESTS

> **Emergency relief has been requested.  Relief is requested not later than 1:30 P.M. (prevailing Central Time) on July 10, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on July 10, 2024, at 1:30 P.M. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number.  Judge Isgur's conference room number is 954554.  Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page.  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page.  Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1] The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be  obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/zhi. The location of the Debtors' service address in these chapter 11 cases is: P.O. Box 240130, San Antonio, Texas 78224.

Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7026, Golden Pass LNG Terminal LLC ("Golden Pass") files this *Emergency Motion for Entry of a Protective Order* (the "Motion") to protect Golden Pass from the undue burden and expense that would result from responding to certain requests in the *Debtors' Request for Production of Documents and ESI to Golden Pass LNG Products LLC* (the "Discovery Requests") because such discovery is not relevant to the issues before the Court related to the *Emergency Motion for Entry of an Order Compelling Rejection of EPC Contract, or in the Alternative, Granting Relief From the Automatic Stay* (the "Motion to Compel Rejection") (Dkt. 299), nor the *Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Permit Golden Pass LNG Terminal LLC to Comply With Administrative Requirements Imposed by Non-Debtor Letter of Credit Issuer Under Letter of Credit* (the "Letter of Credit Motion") (Dkt. 302).

## SUMMARY OF RELIEF REQUESTED

1.      On June 18, 2024, Golden Pass filed its Motion to Compel Rejection, through which it seeks an order compelling Zachry Industrial, Inc. ("Zachry") to  reject its interest in the EPC Contract,[2] or alternatively, lifting the automatic stay to permit Golden Pass and the non-debtor JV Parties to perform the remaining work under the EPC Contract.  That same day, Golden Pass filed the Letter of Credit Motion, through which Golden Pass sought an order modifying the automatic stay (to the extent applicable) to permit Golden Pass to comply with the administrative requirements imposed by the non-debtor issuer, Bank of America N.A. (the "Issuer"), to draw on

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion to Compel Rejection.

a letter of credit (the "Letter of Credit"). The Motion to Compel Rejection and Letter of Credit Motion are set for final hearing on August 12.

2.      On June 30, 2024, the Debtors served their Discovery Requests. The Discovery Requests—51 in total—far exceed the scope of the hearing on these contested motions, which is limited to the questions of whether Zachry should be compelled to immediately reject the EPC Contract and whether Golden Pass may take the administrative steps to draw on the Letter of Credit. Instead, the Debtors improperly seek discovery on Zachry's adversary claims against Golden Pass outside of the Adversary Proceeding.

3.      No amount of discovery will change the undisputed facts that Zachry (i) has abandoned the LNG Facility, (ii) has no intention of resuming work on the LNG Facility, and (iii) has no ability to ever perform its obligations under the EPC Contract to complete the LNG Facility. The Court need only look to the Debtors' first day filings and recent cash collateral budgets, to reach those inescapable conclusions. There is no scenario in which Zachry is ever able to assume their interest in the EPC Contract, no matter how much time elapses—time during which the LNG Facility languishes in limbo and everyone affiliated with the Project continues to suffer significant damages.

4.      Similarly, the issues related to the Letter of Credit Motion are straightforward and not subject to credible dispute. Golden Pass is a beneficiary under the Letter of Credit, and as explained in the Letter of Credit Motion, Bank of America has an independent contractual obligation to satisfy the Letter of Credit from its own funds. The Letter of Credit is not property of the Debtors' estate and any dispute between Golden Pass and Zachry regarding performance under the EPC contract is entirely irrelevant to Golden Pass's right to draw on the Letter of Credit.

5.     Even though no discovery is necessary to resolve either Motion, the Debtors insist on obtaining documents having nothing to do with Zachry's ability to perform under the EPC Contract or Golden Pass's right to take the administrative steps to draw on the Letter of Credit. Specifically, Discovery Requests 12, 13(d), 14, 17, 20, 23-24, 25(c-f), 28-29, 31-32, 38, 40, and 43-48 (the "Disputed Discovery Requests") are untethered to the issues set for hearing on August 12, and serve no purpose other than to harass Golden Pass, and, more troublingly, obtain early discovery in the Adversary Proceeding.

6.     For example, the Debtors ask for documents related to alleged extra-contractual promises from Golden Pass's shareholders going back to *2021,* documents relating to meetings with Zachry or the joint venture going back to *2022*, financial projections regarding the ultimate profitability of the Project, and documents related to letters of credit provided by the non-debtor JV Parties.  None of these bears any relevance to whether Zachry is in default under the EPC Contract or has any prospect of curing its defaults, ensuring performance going forward, and assuming the EPC Contract.

7.     Zachry has refused to withdraw any of the Disputed Discovery Requests after the parties met and conferred.  Nevertheless, Golden Pass intends to respond to the remaining Discovery Requests and produce documents in response to each of those requests in accordance with the Rules and subject to any applicable objections.  This Motion concerns only those requests from which Golden Pass seeks protection.

8.     The Debtors' motives in seeking the Disputed Discovery Requests are clear and improper—to delay the inevitable conclusion that Zachry cannot perform under the EPC Contract, and to obtain discovery for Zachry's adversary claims outside of the Adversary Proceeding.

Accordingly, Golden Pass respectfully requests the Court enter a protective order protecting Golden Pass from the Disputed Discovery Requests.

## BACKGROUND[3]

### A. Zachry Agrees to Complete the Project Pursuant to the EPC Contract

9.      Golden Pass is the owner of the LNG Facility which consists of three interconnected natural-gas processing facilities, along with integrated utility facilities, storage facilities, export terminals, and related improvements in various stages of completion, spanning across 750 acres along the Texas Gulf Coast in Sabine Pass, Texas (the "LNG Facility").

10.      In January 2019, Golden Pass, as owner, and Zachry, Chiyoda International Corporation and CB&I LLC (the "JV Parties") executed the EPC Contract[4] for construction of the LNG Facility.

11.      In the EPC Contract, the JV Parties agreed to construct the LNG Facility pursuant to a fixed timeframe for completion and a lump sum, with Zachry taking on primary construction responsibility.

### B. Zachry Obtains a Letter of Credit

12.      The EPC Contract required Zachry to obtain a standby letter of credit as security for its performance under the EPC Contract.  Bank of America issued the Letter of Credit.

13.      The Letter of Credit has industry-standard terms and conditions and renews automatically each year for one-year periods (the renewal date for each extension is February 25th), unless and until the Issuer provides notice that it will not extend the Letter of Credit at least 60 calendar days before the then-current expiration date.  The "final expiration date" of the Letter of Credit is currently May 31, 2027.

---

[3] A full recitation of the factual background is contained in the Motion to Compel Rejection.
[4] EPC Contract, Dkt. 299-2.

14.     The Letter of Credit provides, among other things, that "[t]he obligation of the [Issuer] under this Letter of Credit is the individual obligation of the [Issuer] and is in no way contingent upon reimbursement with respect thereto. . . ."[5]

15.     Golden Pass is permitted to make partial draws, or draw the entire amount, upon Golden Pass's compliance with the applicable draw requirements.[6]

### C.     Zachry Repeatedly Fails to Comply With Its Obligations Under the EPC Contract

16.     Despite express representations that it understood the scope of the work, Zachry repeatedly failed to live up to its end of the bargain and demanded certain cost and schedule adjustments under the EPC Contract.  Despite having no obligation to do so, Golden Pass repeatedly worked with Zachry to address its performance and financial issues, agreeing to amend the EPC Contract on three separate occasions.  These amendments resulted in Golden Pass providing more than $1 billion in additional consideration to Zachry and the non-debtor JV Parties and significantly extending milestones on the construction schedule.

### D.     Before Filing for Bankruptcy, Zachry Repudiates Its Obligations Under the EPC Contract and Places the LNG Facility in Peril

17.     Despite Golden Pass providing more than $1 billion in consideration without obligation to do so, and Zachry's contractual representations that it could perform the work that it was obligated to perform, in March 2024, Zachry yet again demanded an additional cash infusion to which it was not entitled.

18.     In April 2024, Zachry demanded an additional immediate payment of up to $50 million to continue work on the project for the next two weeks, and represented that it would cease work if those funds were not provided.  Zachry also indicated that it was at least $200 million in

---

[5] Letter of Credit, p. 2, Dkt. 302-1.
[6] *See id.* at pp. 2–5.

arrears on its obligations to vendors and subcontractors, and would not have the necessary cash on hand to make payroll as soon as April 25, 2024.

19.     Incredibly, that same month, Zachry sent Golden Pass a letter stating not only that Zachry believed its exit from the LNG Facility was in the best interest of all involved, but also expressed its unequivocal intent to exit the project.[7]  In Zachry's own words, "the only way for the Project to be successfully completed is for Zachry to exit its role" in constructing the LNG Facility.[8]

20.     Zachry continued its prepetition efforts to abandon the project.  On April 24, 2024, Zachry sent Golden Pass an email, notifying Golden Pass that it would not be paying certain critical vendors, including the provider of bus services responsible for transporting thousands of workers to and from the Project each day.[9]  Just days later, Zachry put its words into action when Zachry instructed substantially all of its hourly employees and subcontractors to leave and remain away from the LNG Facility indefinitely.[10]

21.     Golden Pass responded by delivering to Zachry a notice of default based upon, among other things, Zachry's abandonment of its obligations under the EPC Contract.[11]  The non-debtor JV Parties similarly provided a notice of default to Zachry.[12]  In the days leading up to the bankruptcy filing, Golden Pass issued additional notices of continuing default to Zachry.  Zachry made no effort to address the defaults, but instead plowed ahead with its abandonment efforts, essentially eliminating its entire workforce on the LNG Facility.

---

[7] *See* Letter Dkt. 299-4.
[8] *Id*.
[9] *See* Motion to Compel Rejection ¶ 67.
[10] *See* Email Notice, Dkt. 299-5.
[11] *See* Default Notice, Dkt. 299-6.
[12] *See* JV Default notice Dkt. 299-7.

**E.  Zachry's Bankruptcy Demonstrates Its Intent to Permanently Abandon Its Obligations Under the EPC Contract**

22.     The Debtors filed these chapter 11 cases on May 21, 2024.  On that same day, Zachry filed an Adversary Proceeding against Golden Pass.  Golden Pass has not responded to the Complaint in the Adversary Proceeding nor has discovery commenced.  However,  Zachry's first day pleadings in the chapter 11 cases make clear that it has no intention and no ability to comply with its obligations under the EPC Contract.  In fact, Zachry cited the EPC Contract as the primary driver of its chapter 11 filing.  Lest there be any doubt that Zachry intended to permanently decamp from the LNG Facility and abandon all of its contractual obligations, Zachry's initial budget filed in connection with its cash collateral motion did not allocate any meaningful funds to pay the workers, subcontractors, and other critical vendors necessary to continue work on the LNG Facility, and Zachry's most recent budget only solidifies this intent to not perform and to completely demobilize by the first week of August, 2024.[13]  Indeed, every action Zachry has taken postpetition—i.e., terminating additional workers, further demobilizing from the LNG Facility, failing to pay vendors and subcontractors, and impeding the non-debtor JV Parties from completing their obligations—evidences Zachry's intent to abandon all work on the LNG Facility and never return.

**F.  The Debtors Serve Burdensome, Irrelevant Discovery as an Additional Delay Tactic  and  Improperly Seek Adversary Discovery.**

23.     Because of Zachry's refusal to face reality and reject its interest in the EPC Contract, Golden Pass was left with no choice but to file the Motion to Compel Rejection.  The issues presented by that motion are straightforward.  While courts consider multiple factors in assessing whether to order an early decision on whether to reject a contract, here the central issue

---

[13] Dkt. 24-1 at 40.

is both dispositive and undisputed. Zachry has not performed under the EPC Contract for some time, is not performing under the EPC Contract today, has no ability to perform under the EPC Contract going forward, has expressed its intent to not perform its obligations under the EPC Contract ever again, and has no ability to cure the various past and ongoing defaults under the EPC Contract. And this is causing substantial and ongoing harm to all parties associated with the Project.

24.     Despite having no credible argument that it has any intent or ability to ever comply with its obligations under the EPC Contract, on June 30, 2024, the Debtors served Golden Pass with burdensome Discovery Requests that are irrelevant to the Motion to Compel Rejection and Letter of Credit Motion but instead improperly seek discovery in the Adversary Proceeding. Indeed, the Debtors have refused to withdraw the Disputed Discovery Requests, which relate in part to:

    a.  Future compensation/payments and financial projections related to completion of the Project (Requests Nos. 12, 13(d), 14, 17, 25(c-f), 28-29, 40, and 46);

    b.  Communications related to supposed extra-contractual representations by ExxonMobil and Qatar Energy (Requests Nos. 23, 43-44, and 47-48);

    c.  Documents related to non-debtor JV Parties and other third parties (Requests Nos. 20, 24, 38, and 45); and

    d.  Documents related to Golden Pass's damage calculations (Requests Nos. 31 and 32).

25.     On July 3 and 5, counsel for Golden Pass conferred with the Debtors' counsel regarding the Disputed Discovery Requests. Despite counsel for Golden Pass explaining the

irrelevance of the Disputed Discovery Requests, the Debtors refused to withdraw or otherwise tailor their overbroad, irrelevant discovery, thus necessitating this Motion.[14]

## **LEGAL STANDARD**

26.     The Motion to Compel Rejection and Letter of Credit Motion are contested matters under Federal Rule of Bankruptcy 9014.  Accordingly, Federal Rules of Civil Procedure 26, 30, 33, and 34, as incorporated through Federal Rules of Bankruptcy Procedure 7026, 7030, 7033, and 7034, apply to this dispute.

27.     A court may issue a protective order for good cause "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding the disclosure or discovery" or by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c); *see Wright v. Csabi (In re Wright)*, 568 B.R. 770, 780 (Bankr. S.D. Tex. 2017).

28.     Discovery is limited to issues relevant to the contested matter.  *See, e.g., In re GB Herndon & Assocs., Inc.*, No. 10-00945, 2011 WL 5117786, at *1 (Bankr. D.D.C. Oct. 27, 2011) (denying discovery request because the "debtor's reply fails to articulate how the documents could be relevant to that contested matter.").  In determining whether to grant a motion for protective order, courts use a balancing of interests approach where they must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party.  *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016).

---

[14] Golden Pass intends to respond to the remaining Discovery Requests under the applicable rules and produce documents in response to each of those requests, subject to any objections.  This Motion concerns only those requests from which Golden Pass seeks protection.

## BASIS FOR RELIEF

**A. It is Undisputed That Zachry Has Not, Will Not, and Cannot Perform Under the EPC Contract or Cure the Existing and Ongoing Defaults Under the EPC Contract**

29.     A typical proceeding in which a debtor moves to assume or reject an executory contract "should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098–99 (2d Cir. 1993).  The decision whether to assume or reject "is not the time or place for prolonged discovery or a lengthy trial." *Id.*  The analysis should be no different here in the context of the Motion to Compel Rejection.  This should be a summary proceeding based on the undisputed facts, and Zachry should be compelled to make the only decision they will ever be capable of making: rejecting its interest in the EPC Contract.

30.     The Disputed Discovery Requests do not relate to any of the relevant factors in considering a reasonable time for an assumption or rejection determination.  Indeed, the relevant facts are undisputed.

31.     It is undisputed that Zachry is not performing under the EPC Contract.  Zachry has effectively abandoned the project by reducing its work force from over 6,000 to approximately 140 workers postpetition and instructing vendors and subcontractors to not return to the project site.  Even worse, Zachry has taken affirmative steps to impede the work of the non-debtor JV Parties and Golden Pass.[15]

32.     Zachry has also not budgeted for any meaningful work on the LNG Facility in its cash collateral budgets.  By Zachry's own admission, Project costs are $30-$40 million a week, at

---

[15] *See* Motion to Compel Rejection ¶¶ 5–6, 107–10.

minimum.[16]  But the Debtors' proposed cash collateral budget includes no more than $40 million in payroll a week for all of its projects, including an LNG project of similar scale as the Golden Pass LNG Facility.[17]  And its most recent cash collateral budget shows a meager $800,000 per week in June, going up to $4.8 million in the first week of July, then decreasing to $0 the week of August 4th, at which time Zachry presumably will have completely demobilized from the Project.

33.    Similarly, Zachry has stopped paying its vendors and has not sought postpetition financing to fund its obligations under the EPC Contract.  These vendors and subcontractors are only being paid because Golden Pass has obtained emergency relief to do so on its own—with corresponding increasing amounts owed from Zachry to Golden Pass, placing Zachry deeper in default on the EPC Contract.  At present, Zachry's defaults amount to more than $500 million, and continue to grow by the day.[18]  Zachry has no ability to cure these defaults and assume the EPC Contract.

34.    It cannot be disputed that Zachry's abandonment is causing ongoing harm.  Every day that Zachry delays rejecting the EPC Contract and allowing work to resume, subcontractors remain unpaid, and thousands of workers sit idle.  But if the remaining non-debtor JV Parties are able to proceed with the project, the Project will once again employ approximately 4,500 direct and indirect workers, just with respect to the Train 1 Scope.[19]

35.    It also cannot be disputed that Zachry has no ability or intent to perform its obligations going forward.  At present, Zachry's defaults amount to more than $500 million, and continue to grow by the day.  Zachry has no ability to cure these defaults (including the various milestones within the EPC Contract) and assume the EPC Contract and has admitted it is unable

---

[16] Dkt. 7 at ¶¶ 3, 5, & 8.
[17] Dkt. 24-1 at 40.
[18] *See* Motion to Compel Rejection ¶ 115.
[19] *See id.* ¶ 111.

to carry out its obligations.  As set forth in the Declaration of Moshin Y. Meghji in Support of Debtors' Petitions and Requests for First Day Relief (Dkt. 7), Zachry acknowledges that the "distress caused by" its construction obligations under the EPC Contract caused the bankruptcy filings, and that it is unable to "continue juggling the liquidity pressures" caused by the Project. In other words, complying with the EPC Contract would require resources that Zachry does not have.  In short, Zachry has already admitted in its sworn affidavits, filings, and actions all facts needed to meet the applicable standard.

36.     Zachry made clear prepetition that it intended to exit the LNG Facility and reject its obligations under the EPC Contract.  Zachry has not performed its obligations under the EPC Contract, is not currently performing under the EPC Contract, and has no ability or intent to perform in the future or to cure the various pre-existing and ongoing defaults under the EPC Contract.  The Discovery Requests will not impact any of those undisputed facts.

### B. The Disputed Discovery Requests are Unrelated to the Issues Raised in the Letter of Credit Motion and are Therefore Irrelevant and Improper

37.     Because any dispute between Golden Pass and Zachry relating to the EPC Contract is irrelevant to Issuer's independent obligation to pay Golden Pass under the Letter of Credit from its own funds, the Disputed Discovery Requests are of no probative value to the Letter of Credit Motion and are sought only to impose an undue burden on Golden Pass.  Accordingly, the Debtors should not be permitted to pursue them.

38.     "[L]etters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate." *In re Stonebridge Tech., Inc.*, 430 F.3d 260, 269 (5th Cir. 2005) (citing *Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.)*, 831 F.2d 586, 589 (5th Cir. 1987)).

39.     "All a beneficiary has to do to receive payment under a letter of credit is to show that it has performed all the duties required by the letter of credit." *In re Stonebridge*, 430 F.3d at 269 (quoting *In re Compton Corp.*, 831 F.2d at 589).

40.     As the right to receive payment under a letter of credit is strictly a matter between the beneficiary and the issuer, "[a]ny disputes between the beneficiary and the [applicant] do not affect the issuer's obligation to the beneficiary to pay under the letter of credit." *See In re Compton Corp.*, 831 F.2d at 589.  Permitting the letter of credit applicant to interject into a properly presented claim between the beneficiary and issuer would negate the commercial purpose of letters of credit. *See e.g. Semetex Corp. v. UBAF Arab Am. Bank*, 853 F. Supp. 759, 770 (S.D.N.Y. 1994) *aff'd*, 51 F.3d 13 (2d Cir. 1995) (The "central purpose of the letter-of-credit mechanism would be defeated if courts felt free to examine the merits of underlying contract disputes in order to determine whether letters of credit should be paid.") (internal citations omitted).

41.     As such, any dispute between the beneficiary and the letter of credit applicant regarding their performance under the underlying contract or the applicant's insolvency is irrelevant to the issuer's obligation to honor the letter of credit upon compliance with the terms of presentment.  *Semetex*, 853 F. Supp. at 770 (S.D.N.Y. 1994) ("the issuing or confirming bank must honor a proper demand even though the beneficiary has breached the underlying contract . . . and even though the insolvency of the [applicant] renders reimbursement impossible . . . and notwithstanding supervening illegality, impossibility, war, or insurrection.") (internal citations omitted); *Alaska Textile Co., Inc. v. Chase Manhattan Bank, N.A.*, 982 F.2d 813, 816 (2d Cir. 1992) ("If the documents . . . comply with the terms of the credit, the issuer's duty to pay is absolute").

42.     Here, to exercise its rights under the Letter of Credit, Golden Pass must simply comply with the terms of the Letter of Credit.  But the Disputed Discovery Requests have nothing

to do with whether or not Golden Pass has complied with the Letter of Credit's administrative procedures. Instead they relate to far flung topics such as letters of credit to which Debtors have absolutely no connection.

43.     Any alleged representations made by Golden Pass or its owners to Zachry during the course of the Project or any allegations concerning performance of Zachry or Golden Pass under the EPC Contract have absolutely no relevance, much less any probative value, to the limited issues raised in the Letter of Credit Motion—whether the stay (to the extent applicable) should be lifted or modified such that Golden Pass can comply with the Letter of Credit's requirements to effectuate a draw.

44.     As the Disputed Discovery Requests have no probative value, there is no justification for imposing the burden and expense of responding on Golden Pass. Accordingly, the Court should grant this Motion and relieve Golden Pass of any obligation to respond to the Disputed Discovery Requests.

### C. The Debtors Cannot Use the Motion to Compel Rejection as an Avenue to Obtain Discovery Related to Zachry's Claims in the Adversary Proceeding

45.     The Disputed Discovery Requests are also improper because they are plainly designed to try to buttress Zachry's claims in the Adversary Proceeding. Thus, the Disputed Discovery Requests must be sought, if at all, only in the Adversary Proceeding, in accordance with the Court's scheduling order and rulings related thereto. While Golden Pass does not concede that the Disputed Discovery Requests are relevant to the Adversary Proceeding, either, that is an issue for another day. For now, the Disputed Discovery Requests are procedurally improper. Zachry must be foreclosed from its attempted end-run around the Court's procedures and the applicable rules.

46.     Where discovery requests relate to issues in an adversary proceeding, the requesting party must serve the requests in the adversary proceeding in accordance with the governing scheduling order and rules.  *See In re Dernick*, No. 18-32417, 2019 Bankr. LEXIS 2829, at *10 (Bankr. S.D. Tex. 2019) ("If NorthStar's August 23, 2019 discovery requests relates in any way to the Adversary Proceeding, the Court's Scheduling Order controls… [i]f NorthStar's discovery requests relates to the Adversary Proceeding, their failure to adhere to this Court's Scheduling Order precludes them from serving discovery within the Adversary Proceeding.").

47.     Golden Pass has not yet answered or otherwise responded to the Adversary Complaint.  Nor have the parties yet held their initial 26(f) discovery conference in the Adversary Proceeding.  As such, Zachry is not entitled to seek discovery in the Adversary Proceeding at this time.  *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.").

48.     Zachry cannot use the Motion to Compel Rejection to skirt the rules governing the Adversary Proceeding, and the Court should reject Zachry's attempt to circumvent the Court's procedures and protect Golden Pass from the Disputed Discovery Requests given that they have no relation to the Motion to Compel Rejection.

### D.  Good Cause Exists for the Entry of a Protective Order

49.     "In adversary proceedings and contested matters, protective orders are authorized under Rule 26(c)."  *In re Caesars Ent. Operating Co., Inc.*, 584 B.R. 847, 850 (Bankr. N.D. Ill. 2018).  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

50.     There is ample good cause for a protective order here.  Despite the facts being undisputed, Zachry asks for documents completely divorced from the narrow, undisputed, dispositive issue that will resolve the Motion to Compel Rejection, or the administrative matters presented by the Letter of Credit Motion.

51.     It is clear that the Disputed Discovery Requests are not meant to obtain evidence to contest the Motions, but instead to delay their resolution, attempt to place Zachry in what it perceives to be a better bargaining position, and improperly seek discovery for the Adversary Proceeding.   The Disputed Discovery Requests fall into four major categories: (1) future compensation/payments and financial projections related to the completion of the Project, (2) communications related to supposed extra-contractual statements by non-parties, (3) documents related to non-debtor JV Parties and other third parties, and (4) documents related to damage calculations.  None of these categories bears even remote relevance to the issues before the Court.

### i.   Requests for Project-Related Future Compensation/Payments and Financial Projections are Not Relevant

52.     Disputed Discovery Requests 12, 13(d), 14, 17, 25(c-f), 28-29, 40, and 46 demand documents related to the Project's future compensation/payments and financial projections related to completion of the Project.  Requests 12 and 13(d) ask for any "plan, proposal, agreement or proposed agreement, forecast, projection, analysis, audit, examination, discussion, or meeting" relating to "overall compensation and/or progress payments for remaining work under the EPC Contract" (Disputed Discovery Request 12) and "Zachry's role on the Project after any change in Project leadership" (Disputed Discovery Request 13(d)).

53.     Disputed Discovery Request 14 asks for any "plan, proposal, agreement or proposed agreement, forecast, projection, analysis, audit, examination, discussion, or meeting" related to "completing the remaining work under the EPC Contract."  This includes enormously

broad categories of documents, including cost estimates, documents related to the non-debtor JV Parties, and "any releases in connection with a global settlement or new EPC contract."

54.    Disputed Discovery Requests 17 and 25(c-f) are similarly broad and outside the scope of the Motion to Compel Rejection, including documents related to a "cost improvement plan" (Disputed Discovery Request 17), and future cost projections, value of the Project, and cost to complete the Project "under a new EPC Contract" (Disputed Discovery Request 25).

55.    These requests have nothing to do with whether Zachry can assume the EPC Contract, and plainly are improper attempts to obtain Adversary Proceeding discovery.  The question before the Court is limited to whether Zachry can resume work under the EPC Contract—i.e., cure its past defaults and ensure performance going forward.  It has nothing to do with Project profitability.  By seeking documents related to analysis of go-forward costs and schedules to complete the Project, and cost improvement plans, the Debtors are seeking to shoehorn their desired Adversary Proceeding discovery into this contested matter.

56.    Disputed Discovery Request 28 asks for "Documents relating to any forecast, projection, analysis, audit, examination, discussion, or meeting reflecting Your expectations of revenues and profits that the Project will generate upon completion and operation, whether prepared or performed by You or on Your behalf, ExxonMobil, or QatarEnergy."

57.    The Project's financial projections have nothing to do with the Motions.  Indeed, the expected profits *upon completion* of the Project have no bearing on whether Zachry has the ability to continue work on the project *now* under the EPC Contract.  Nor do they have any relevance to the Adversary Proceeding.  Beyond imposing an additional burden on Golden Pass, it is entirely unclear why the Debtors' are asking for those documents.

58.     Similarly, "Documents relating to any forecast, projection, analysis, audit, examination, discussion, or meeting"—both dating back to January 30, 2019, and forward looking—regarding the Project's schedule or Project budget and costs are not relevant to the Motion to Compel Rejection.  *See* Discovery Requests 29, 40.  Golden Pass's analysis of costs and schedules is not relevant to the issue of whether Zachry has performed its work or can perform its work under the EPC Contract.

59.     Finally, Discovery Request 46 asks for "Documents that constitute or relate to any draft, proposed, tentative, or actual agreements, or the terms of any such agreement, regarding the sale, off-take, distribution, transportation, or other disposition of LNG or any other product from the Project."  This again is a request related only to the projected profitability of the Project, and has nothing to do with the Motion to Compel Rejection or Letter of Credit Motion.

### ii.  Requests for Communications Related to Alleged Extra-Contractual Representations are Not Relevant

60.     Disputed Discovery Requests 23, 43-44, and 47-48 all relate to Zachry's misguided claims in the Adversary Proceeding that alleged extra-contractual representations by ExxonMobil or Qatar Energy entitle it to relief. They have nothing to do with the Motions.

61.     For example, Disputed Discovery Requests 43 and 44 are similar.  The discovery Requests ask for documents "relating to any representations by ExxonMobil to Zachry that ExxonMobil, Golden Pass, and/or Qatar Energy planned to, agreed to, considered, or otherwise discussed providing Zachry with financial support or assistance."  Alleged conversations and extra-contractual representations and agreements—which were expressly disclaimed by the Claims Settlement Agreement and subsequent Amendments to the EPC Contract—are not relevant to whether Zachry can resume work on the Project and assume the EPC Contract.  They are, at best, related to Zachry's claims in the Adversary Proceeding.

62.     Further, Disputed Discovery Request 23 asks for documents "relating to meetings held with CCZJV or Zachry concerning payment of CCZJV vendors, subcontractors, or other parties, and costs to complete the project."  Disputed Discovery Requests 47, and 48 relate only to Zachry's supposed entitlement to "cost and schedule adjustments" under the EPC Contract.  *See* Discovery Requests 47-48.  Setting aside the fact that Zachry expressly waived these claims, these requests have nothing to do with Zachry's ability to perform under the EPC Contract.  Again, they are at best related to the Adversary Proceeding.  The Debtors cannot be allowed to circumvent discovery process and schedule in the adversary proceeding by asserting irrelevant, unduly burdensome discovery requests in this contested matter.

### iii.    Requests Related to Non-Debtor JV Parties and Other Third Parties are Not Relevant

63.     Disputed Discovery Requests 20, 24, 38, and 45 relate to the non-debtor JV parties. Discovery Request 20 asks for all "Documents that constitute or relate to any draft, proposed, tentative, or actual agreements, or the terms of any such agreement, between Golden Pass (including Golden Pass and/or QatarEnergy and ExxonMobil) and any vendor or contractor (including CB&I and/or Chiyoda)."  While the Debtors may very well desire to enter into a new contract on more favorable terms, the only agreement the Debtors may assume is the EPC Contract. Any agreements in place or being negotiated with CB&I, Chiyoda, or other third-parties to perform work on the Project has no relevance to Zachry's ability to continue work on the Project.

64.     Disputed Discovery Request 24 asks for "Documents relating to CB&I and/or Chiyoda opening a new bank account for the Project, CCZJV, or another joint venture for the Project consisting of CB&I and Chiyoda" and Disputed Discovery Request 38 asks for "Documents relating to the letters of credit provided by CB&I and Chiyoda under the EPC Contract, including any Communications with the issuing banks of those letters of credit."  The

Debtors are absolutely not entitled to documents relating to letters of credit that they did not provide.  Nor are they entitled in this proceeding to any document relating to a bank account "outside [Zachry's] control to receive direct payments from Golden Pass" for work done pursuant to the Stipulation.[20]  These requests seek nothing that would bear on Zachry's ability to perform its work under the EPC Contract.

65.     Disputed Discovery Request 45 asks for all documents "regarding Project funding increases, including Documents relating to the vendor and subcontractor invoices and out-of-pocket costs and expenses that exceed Zachry's compensation under the EPC Contract or any EPC Contract Amendments."  Again, funding related to third parties is not relevant to Zachry's ability to perform its obligations under the EPC Contract.

### iv.  Golden Pass's Damage Calculations are Not relevant

66.     Finally, Discovery Requests 31 and 32 relate to Golden Pass's damage calculations. While Golden Pass certainly is entitled to recover billions of dollars related to its  claims against Zachry in the Adversary Proceeding, those issues are not pertinent to  this contested matter.

### BASIS FOR EMERGENCY CONSIDERATION

67.     Debtors' demand responses to the Disputed Discovery Requests no later than July 15, 2024.  Accordingly, Golden Pass seeks emergency consideration of this Motion.  Golden Pass respectfully requests that this Motion be heard at the status conference before the Court on July 10, 2024.

---

[20] *See* Stipulation and Agreed Order, Dkt. 180.

## **CONCLUSION**

WHEREFORE, Golden Pass respectfully requests that this Court grant the relief requested herein and as set forth in the attached proposed order, and grant such other and further relief as the Court may deem just and proper, at law or in equity.

Dated:  July 5, 2024
        Houston, Texas

Respectfully submitted,

By: */s/ Louis R. Strubeck Jr*
       Louis R. Strubeck Jr

**NORTON ROSE FULBRIGHT US LLP**

Jason L. Boland (SBT 24040542)
Robert B. Bruner (SBT 24062637)
Maria B. Mokrzycka (SBT 24119994)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: jason.boland@nortonrosefulbright.com
Email: bob.bruner@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

**O'MELVENY & MYERS LLP**
Louis R. Strubeck Jr.
Nicholas J. Hendrix
2801 North Harwood Street
Suite 1600
Dallas, TX 75201
Telephone: (212) -326-1925
Email: lstrubeckjr@omm.com
       nhendrix@omm.com

Travis Sales
John V. Anaipakos
700 Louisiana Street, Suite 2900
Houston, TX 77002
Telephone: (832) 254-1532
Email: tsales@omm.com
       janaipakos@omm.com

Daniel M. Petrocelli
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 246-6850
Email: dpetrocelli@omm.com

*Counsel for Golden Pass LNG Terminal LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that movants conferred with counsel for the Debtors who indicated that the Debtors oppose the requested relief.

By:      /s/  Travis J. Sales
         Travis J. Sales

## CERTIFICATE OF SERVICE

I certify that on July 5, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  The undersigned attorney further certifies that a true and correct copy of the foregoing was served by e-mail on all parties directly affected by the relief sought by this Motion.

By:      /s/ Louis R. Strubeck Jr
         Louis R. Strubeck Jr

## CERTIFICATE OF ACCURACY

I hereby certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

By:      /s/ Louis R. Strubeck Jr
         Louis R. Strubeck Jr