IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>ZACHRY HOLDINGS, INC., *et al.*[1]<br><br>Debtors. | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 24-90377 (MI) <br> ) <br> ) (Jointly Administered) <br> ) |

**DECLARATION OF MOHSIN Y. MEGHJI IN SUPPORT OF
DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS,
GOLDEN PASS LNG TERMINAL LLC, CB&I LLC, CHIYODA INTERNATIONAL
CORPORATION, AND CCZJV, (II) AUTHORIZING THE PARTIES TO PERFORM
ANY AND ALL OBLIGATIONS CONTEMPLATED BY THE SETTLEMENT,
(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

I, Mohsin Y. Meghji, the Chief Restructuring Officer of Zachry Holdings, Inc. ("**ZHI**"), declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Chief Restructuring Officer ("**CRO**") of ZHI. I also am the Managing Partner of M3 Advisory Partners, LP, which is the Debtors' restructuring advisor in the above-captioned chapter 11 cases.

2. I submit this declaration (this "**Declaration**") in support of the *Debtors' Emergency Motion for Interim and Final Orders (I) Approving the Settlement by and among the Debtors, Golden Pass LNG Terminal LLC, CB&I LLC, Chiyoda International Corporation, and CCZJV, (II) Authorizing the Parties to Perform Any and All Obligations Contemplated by the Settlement,*

---

[1] The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at www.kccllc.net/zhi. The location of the Debtors' service address in these chapter 11 cases is: P.O. Box 240130, San Antonio, Texas 78224.

*(III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "**Motion**"), filed contemporaneously herewith.[2]

3. On May 21, 2024 (the "**Petition Date**"), ZHI and certain of its affiliates (collectively, the "**Debtors**") each filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing the chapter 11 cases.

4. As CRO, I am generally familiar with the Debtors' business, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with members of the Debtors' management team and external advisors, my review of relevant documents and information, and my opinion based upon my experience and knowledge of the Debtors' industry, operations, and financial condition.

## Background

5. Based on information provided by management, I understand that pursuant to the Hybrid Joint Venture Agreement (the "**HJVA**") dated January 30, 2019, ZII, CB&I, and Chiyoda formed an unincorporated hybrid joint venture ("**CCZJV**") to jointly serve as "Contractor" on the GPX Project. On or about January 30, 2019, Golden Pass and CCZJV entered into a $9.25 billion lump-sum contract to design and build the GPX Project (the "**EPC Contract**").

6. I understand that, shortly after ZII began work on the GPX Project as lead contractor, ZII faced unexpected obstacles, including: (i) inaccurate geological studies; (ii) the COVID-19 pandemic's dramatic impacts on labor and equipment availability and the global

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

supply chain, and (iii) additional logistical issues and supply chain disruptions stemming from the Russia-Ukraine war. Other challenges arose when construction on additional contemplated liquefied natural gas facilities broke ground.

7.  It is my understanding that these problems required a change order and billings schedule since the original contract price did not address the cost challenges for the Contractor. I have been advised that, over the last two years, ZII and its joint venture partners have engaged in negotiations with Golden Pass and its owners to address the need for additional funding for the GPX Project in the manner contemplated by the EPC Contract, with little to no success. I have been advised that Golden Pass and its owners ultimately agreed to certain amendments to the EPC Contract that provided short-term relief, including the First, Second, and Third Amendments to the EPC Contract and the Side Letter.

8.  I understand that these short-term amendments were insufficient to right-size the project entirely, and that on May 21, 2024, following the delivery of the Golden Pass Default Notice and the CCZJV Default Notice, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, ZII filed its complaint and commenced the GPX Litigation, seeking, among other things, avoidance of the Claims Settlement Agreement and the First, Second, and Third Amendments to the EPC Contract, recovery of the value of the avoided transfers, as well as equitable subordination of any claims that Golden Pass may assert against ZII. Based on information provided by management and Debtors' outside counsel, I understand that the Debtors also have, but have not yet alleged, claims for relief based on fraudulent representations and fraudulent inducement by Golden Pass and its owners.

9.  Since June 1, 2024, the Parties have participated in mediation with Judge Christopher M. Lopez serving as mediator. On June 18, 2024, while mediation was pending,

Golden Pass filed the Motion to Compel and Motion to Lift Stay, and on June 25, 2024, the Debtors filed the Preliminary Objection and CB&I and Chiyoda filed the JV Partner Motion. These matters are still pending before the Court.

### The Settlement

10. In light of the foregoing, the Parties negotiated the Settlement to resolve all outstanding issues, disputes, controversies, claims, and causes of action arising out of or otherwise related to the GPX Project, the EPC Contract, and the HJVA, including the GPX Litigation and the Contested Matters. Upon review of the relevant documents, I believe that the Settlement is in the best interests of the Debtors and their estates.

11. *First*, the Settlement provides all Parties with certainty regarding the GPX Project, the EPC Contract, the HJVA, and the GPX Litigation and removes a major hurdle to the Debtors' ultimate emergence from these chapter 11 cases. The disputes between the Parties have dominated the chapter 11 cases. The complaint filed in the GPX Litigation and the Motion to Compel highlight the size of the GPX Project and the complexity of the HJVA and the EPC Contract and its several amendments, which create unique legal and factual issues on which the Parties disagree in almost every respect. All of the Parties' claims (and potential additional claims related to the same set of facts) are subject to various affirmative defenses and other challenges. I believe that it is highly unlikely that these disputes would be litigated to conclusion in the chapter 11 cases, as any judgment would very likely lead to appeal that could significantly delay the Debtors' prospect of emergence from chapter 11.

12. I believe that the Settlement eliminates that risk and uncertainty for all of the Parties. It is my opinion that, based on that fact alone, the Settlement exceeds the lowest point in the range of plausible litigation outcomes for the Debtors. In addition, the Settlement will provide

for the (a) payment of prepetition vendor and subcontractor claims on the GPX Project (subject to an agreed cap), (b) release of retainage to fund the Debtors' demobilization efforts, and (c) execution of broad releases in favor of the Debtors from the other Parties, and will cease all litigation related to the GPX Project, the EPC Contract, and the HJVA.  It is my belief that these are material benefits that are far superior to the uncertain outcome of the complex disputes.

13.     ***Second***, the Settlement efficiently resolves complex, expensive, and distracting matters, preserving vital estates resources.  I believe that the GPX Litigation and the Contested Matters would be costly and time-consuming to litigate.  Golden Pass has yet to file an answer in the GPX Litigation, and the Debtors have only filed the Preliminary Objection in response to the Contested Matters.  Several Parties have nevertheless filed discovery objections, and the Debtors have spent substantial time and money on discovery disputes before a single document has been produced or a single witness deposed.  The underlying dispute raises complex factual and legal issues concerning the Parties' rights and obligations under a highly complicated construction contract for a highly complicated project.  It is my belief that, even if the Court were to compel the Debtors to reject their interest in the EPC Contract immediately, that would merely port the dispute over the Parties' respective claims to the GPX Litigation, which would take months if not years to litigate to judgment, before any potential appeal process.  I believe that the cost to the Debtors and their stakeholders would be substantial.  The Debtors would also be unable to advance the chapter 11 cases and emerge from bankruptcy while mired in that dispute.  The other Parties would be unable to complete the GPX Project without the overhang of litigation.

14.     ***Third***, the Settlement is the culmination of months of arm's-length, hard-fought negotiations and discussions among the Parties and their respective professionals, including through the Court-ordered mediation.  I understand that the Parties, the Prepetition Agent, and the

Committee support the terms as a superior alternative to extensive and uncertain litigation. Additionally, the Settlement will allow the Debtors to focus on maximizing value for their creditors through an efficient, consensual plan process and emerging from chapter 11 in the near term.

## Conclusion

15. Based on the foregoing considerations, I respectfully submit that the Settlement represents a fair and reasonable transaction that is in the best interest of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 19, 2024

/s/ *Mohsin Y. Meghji*
Mohsin Y. Meghji
Chief Restructuring Officer of Zachry Holdings, Inc.