IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| ZACHRY HOLDINGS, INC., *et al.*,[1] | § § | Case No. 24-90377 (MI) |
| Debtors. | § § § | (Jointly Administered) |

**STATEMENT OF THE STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS, GOLDEN PASS LNG TERMINAL LLC, CB&I LLC, CHIYODA INTERNATIONAL CORPORATION, AND CCZJV (II) AUTHORIZING THE PARTIES TO PERFORM ANY AND ALL OBLIGATIONS CONTEMPLATED BY THE SETTLEMENT, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

The statutory unsecured claimholders' committee (the "Committee") of Zachry Holdings, Inc, *et al.* (the "Debtors"), hereby submits this statement (the "Statement") in support of the Debtors' *Emergency Motion for Interim and Final Orders (I) Approving the Settlement by and Among the Debtors, Golden Pass LNG Terminal LLC, CB&I LLC, Chiyoda International Corporation, and CCZJV (II) Authorizing the Parties to Perform any and all Obligations Contemplated by the Settlement, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 587] (the "Settlement Motion").[2] The Committee respectfully states as follows:

---

[1] The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/zhi. The location of the Debtors' service address in these chapter 11 cases is: P.O. Box 240130, San Antonio, Texas 78224.

[2] Any capitalized terms used but undefined herein shall have the meaning given to them in the Settlement Motion. For background information regarding the Debtors' disputes relating to the Golden Pass project, the Committee incorporates by reference the "Background" section of the Settlement Motion, pages 5-11.

**STATEMENT IN SUPPORT**

1.      The Debtors' Settlement with Golden Pass and its joint venture partners resolves arguably the most important dispute in the Debtors' chapter 11 cases. Its resolution enables the Debtors to focus on their reorganization efforts without the cloud of litigation and its attendant risks hanging over these bankruptcy cases. The Committee submits this Statement to express its support for the Settlement, which is the product of the dedicated work of court-appointed mediator Judge Christopher M. López, the Debtors, Golden Pass, and the Debtors' joint venture partners, as well as their respective representatives and advisors. The Committee actively participated in the mediation and was in constant communication with all key parties to ensure the agreement before the Court provided the necessary benefits to general unsecured claimholders and protected their interests. The Committee is satisfied the Settlement achieves these aims, constitutes a positive resolution of gating issues in these chapter 11 cases, and should be approved by the Court.

2.      The Settlement provides several significant benefits to the Debtors' estates and general unsecured claimholders. First and foremost, it resolves many asserted or assertable litigation claims. Golden Pass asserted substantial damage claims against the Debtors' estates arising from the EPC Contract and the cessation of certain work on the GPX Project since the Petition Date. The Debtors' joint venture partners, Chiyoda and CB&I, could potentially be held jointly and severally liable by Golden Pass for those damage claims and could, in turn, attempt to assert contribution claims against the Debtors' estates. The joint venture partners also alleged direct claims against the Debtors extending beyond such contribution claims. If any or all of these claims were allowed against the Debtors' estates, they could significantly increase the pool of general unsecured claims, thereby substantially diluting creditor recoveries and potentially complicating the Debtors' ability to successfully reorganize. The Settlement eliminates this risk

by providing mutual releases from Golden Pass and the joint venture partners for all current and future claims against the Debtors relating to the GPX Project, EPC Contract, and HJVA.

3. Second, the Settlement greenlights work on the GPX Project by providing for (i) the immediate transition of work scope from the Debtors to the other joint venture partners and (ii) Golden Pass to commence direct payment of vendors' valid GPX-Project related claims, subject to a cap.[3] Accordingly, general unsecured claimholders who are GPX Project subcontractors and vendors should receive full recoveries on their valid prepetition claims from Golden Pass—in the near term, instead of waiting for distributions under a plan of reorganization—and will be able to resume work providing services on the GPX Project. The payment of these claims benefits all general unsecured claimholders because they will be satisfied by Golden Pass (subject to a cap), not the estates. Moreover, that Golden Pass is paying these claims avoids dilution to other general unsecured claims by taking the GPX Project claims out of the claims pool. Importantly, the Settlement preserves the Committee's watch dog role with respect to payment of GPX-Project related claims. Following entry of the interim order, Golden Pass will provide the Committee with weekly updates regarding all payments made on GPX-Project related claims toward the cap. The Committee and its professionals will carefully monitor Golden Pass' progress on these payments and ensure that such payments are being appropriately characterized as counting towards the cap, rather than the responsibility of the Debtors' estates.

4. Third, Golden Pass has sought to lift the automatic stay to draw down on a $213 million letter of credit (the "Letter of Credit") posted on ZII's behalf in support of the GPX Project. The Settlement resolves this issue in a manner favorable to the Debtors' estates by limiting the

---

[3] While Golden Pass must pay all GPX vendor claims, for any claims over the cap, the Debtors' estates will fund such payments. The Committee, however, believes there is a reasonable probability the cap is sufficient to pay all or substantially all GPX Project-related claims.

3

4861-1674-8754

amount that Golden Pass can draw from the Letter of Credit, and providing a schedule for draws on the remaining amounts. This aspect of the Settlement benefits general unsecured creditors by minimizing secured claims against the Debtors.

5.  Fourth, under the Settlement, Golden Pass will pay to the Debtors certain of the retainage the Debtors asserted they had earned to support their demobilization efforts on the GPX Project. After demobilizing and transitioning off the GPX Project, the Debtors' estates will no longer need to bear the expenses and losses otherwise associated with providing services to the GPX Project, which, in and of itself, is another significant benefit to the estates.

6.  In exchange for the benefits listed above, the Debtors made certain concessions, including (i) immediate turnover of the GPX Project to Golden Pass, Chiyoda, and CB&I, (ii) withdrawal of the adversary proceeding against Golden Pass (which, among other things, seeks to avoid claim settlements and amendments to the EPC contract as fraudulent transfers), (iii) transfer of certain equipment and other documents, data, and materials to Golden Pass, Chiyoda, and CB&I without charge, (iv) release of certain retainage payments, and (v) consent to limited scheduled draws on the Letter of Credit.

7.  The Committee has reviewed these concessions and agrees with the Debtors that they are reasonable given the significant benefits to be obtained under the Settlement. The Committee believes that the Golden Pass Settlement is a better alternative to time-consuming, costly, and risky litigation with uncertain benefits to the estates. Additionally, if Golden Pass were permitted to draw on the full $213 million Letter of Credit, recoveries to unsecured creditors could have been significantly reduced due to the creation of a higher-priority secured claim. While the Debtors will no longer be working on the GPX Project, the Committee is optimistic that many of

its constituents who are GPX Project vendors and subcontractors will be able to continue work on the GPX Project on a go-forward basis with Golden Pass, Chiyoda and CB&I.

## CONCLUSION

For the foregoing reasons, the Committee hereby requests the Court grant the relief requested in the Settlement Motion, and such other relief as the Court deems appropriate.

Respectfully submitted this 22nd day of July, 2024.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email:    jbrookner@grayreed.com

- and -

**PROSKAUER ROSE LLP**
    Ehud Barak (*pro hac vice*)
    Daniel Desatnik (*pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email:    ebarak@proskauer.com
            ddesatnik@proskauer.com

- and -

    Paul V. Possinger (*pro hac vice*)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone: (312) 962-3570
Email:    ppossinger@proskauer.com

*Counsel to the Statutory*
*Unsecured Claimholders' Committee*
*of Zachry Holdings, Inc., et al.*

4861-1674-8754

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd day of July, 2024, he caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system.

                                                  */s/ Jason S. Brookner*
                                                  Jason S. Brookner

4861-1674-8754