United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 13, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ZACHRY HOLDINGS, INC., et al.[1] | ) | Case No. 24-90377 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 24, 34, 59, 274, 281, 298,** |
| | ) | **485, 709, 1127, 1176, 1672 & 1676** |

**SEVENTH INTERIM ORDER (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Zachry Holdings, Inc. ("**ZHI**"), and each of its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105(a), 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 1075-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**") and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "**Complex Case Procedures**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking entry of interim orders and the Final Order (as defined below), among other things:

---

[1] The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/zhi. The location of the Debtors' service address in these chapter 11 cases is: P.O. Box 240130, San Antonio, Texas 78224.

[2] Each capitalized term that is not defined herein shall have the meaning ascribed to such terms in the Motion or the First Day Declaration (as defined below).

(a)     authorizing the use of Cash Collateral (as defined below), pursuant to sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code on the terms and conditions set forth in this seventh interim order (this "**Seventh Interim Order**");

(b)     granting adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their interests in any Cash Collateral;

(c)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Agent (as defined below) to implement and effectuate the terms and provisions of this Seventh Interim Order;

(d)     approving, subject to paragraph 20 hereof, certain stipulations, waivers, and releases by the Debtors with respect to, inter alia, the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Liens, and the Prepetition Secured Obligations (each as defined below);

(e)     subject to entry of the Final Order, granting adequate protection liens on the proceeds and property recovered on account of the Debtors' Avoidance Actions (as defined below);

(f)     subject to entry of the Final Order, and subject and subordinate to the Carve Out (as defined below), approving the waiver of the right to surcharge the Prepetition Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or otherwise as to any Prepetition Secured Parties;

(g)     subject to entry of the Final Order and to the extent set forth herein, approving the waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the Prepetition Collateral as to the Prepetition Secured Parties;

(h)     subject to entry of the Final Order and to the extent set forth herein, approving the Debtors' waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral as to any of the Prepetition Secured Parties;

(i)     scheduling a final hearing (the "**Final Hearing**") to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Order**") and approving the form of notice with respect to the Final Hearing;

(j)     waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Seventh Interim Order; and

(k)     granting related relief;

all as more fully set forth in the Motion; and an interim hearing with respect to the Motion having been held on May 21, 2024 (the "**First Interim Hearing**"); and a second hearing with respect to

the Motion having been held on June 17, 2024 (the "**Second Interim Hearing**"); a third hearing with respect to the Motion was scheduled for July 15, 2024 (the "**Third Interim Hearing**"); a fourth hearing with respect to the Motion was scheduled for August 5, 2024 (the "**Fourth Interim Hearing**"); a fifth hearing with respect to the Motion was scheduled for December 12, 2024 (the "**Fifth Interim Hearing**"); a sixth hearing with respect to the Motion was scheduled for February 13, 2025 (the "**Sixth Interim Hearing**" and, together with the First Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, the Fourth Interim Hearing, and the Fifth Interim Hearing, the "**Interim Hearings**"); and notice of the Interim Hearings having been given in accordance with Bankruptcy Rules 4001(b) and 9014 and Bankruptcy Local Rule 9013-1 and it appearing that no other or further notice need be provided; and the Court having considered the *Declaration of Mohsin Y. Meghji in Support of Debtors' Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), the Approved Budget (as defined below) filed and served by the Debtors, the evidence submitted or adduced, and the statements of counsel made at the Interim Hearings; and the Court having considered the interim relief requested in the Motion; and the relief requested being reasonable, appropriate, and in the best interests of the Debtors, their creditors, their estates and all other parties in interest in the Chapter 11 Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and the Court having entered the Interim Order *(I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Dkt. No. 59] on May 22, 2024 (the "**First Interim Order**"), the *Second Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a*

*Final Hearing, and (V) Granting Related Relief* [Dkt. No. 298] on June 18, 2024 (the "**Second Interim Order**"), the *Third Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Dkt. No. 485] on July 15, 2024 (the "**Third Interim Order**"), the *Fourth Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Dkt. No. 709] on August 7, 2024 (the "**Fourth Interim Order**"), the *Fifth Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Dkt. No. 1176] on October 17, 2024 (the "**Fifth Interim Order**"), and the *Sixth Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Dkt. No. 1676] on December 12, 2024 (the "**Sixth Interim Order**" and, together with the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Seventh Interim Order, the "**Interim Orders**"); and that the legal and factual bases set forth in the Motion and at the Interim Hearings establish just cause for the relief granted herein; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      ***Petition Date***. On May 21, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B.      ***Debtors in Possession***. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      ***Committee Formation***. On June 4, 2024, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Dkt. No. 176] (the "**Official Committee**").

D.      ***Jurisdiction and Venue***. This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105(a), 361, 362, 363, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rules 1075-1, 2002-1, 4002-1, and 9013-1.

E.      ***Notice***. Notice of the Motion and the Interim Hearings constitutes due, sufficient, and appropriate notice and complies with Bankruptcy Rules 4001(b) and 9014, the Bankruptcy

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Local Rules, and the Complex Case Procedures, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearings or the entry of this Seventh Interim Order shall be required.

F.  ***Debtors' Stipulations***. In requesting the use of Cash Collateral, and in exchange for, and as a material inducement to, the consent of the Prepetition Secured Parties to the use of their Cash Collateral, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows, in each case, without limitation to the rights of the Official Committee or any other party in interest to the extent set forth in paragraph 20 of this Seventh Interim Order (subject to the limitations set forth therein):

(a)  *Prepetition Credit Agreement*. Pursuant to that certain Third Amendment to Second Amended and Restated Credit Agreement, dated as of May 2, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition Credit Agreement), collectively, the "**Prepetition Loan Documents**")), by and among ZHI, Zachry EPC Holdings, LLC, and Zachry Plant Services Holdings, Inc. (collectively, the "**Prepetition Borrowers**") and the guarantors party thereto, Bank of America, N.A., as administrative agent (in such capacity, the "**Prepetition Agent**"), swing line lender, and an issuer of letters of credit under the Prepetition Credit Agreement, the Revolving Credit Lenders (as defined in the Prepetition Credit Agreement) party thereto (the "**Prepetition Revolving Lenders**"), and the Term Lenders (as defined in the Prepetition Credit Agreement) party thereto (the "**Prepetition Term Lenders**," and together with the Prepetition Revolving Lenders, collectively, the "**Prepetition Lenders**"), (i) the Prepetition Revolving Lenders provided Revolving Loans (as defined in the Prepetition Credit Agreement) and Revolving Credit Commitments (as defined in the Prepetition Credit Agreement) to the Prepetition Borrowers, (ii) the Prepetition Term Lenders provided Term Loans (as defined in the Prepetition Credit Agreement) to the Prepetition Borrowers, and (iii) the Prepetition Agent (together with the Prepetition Lenders, the "**Prepetition Secured Parties**") issued Letters of Credit (as defined in the Prepetition Credit Agreement) supporting the operations of the Prepetition Loan Parties (as defined below).

(b)  *Prepetition Guaranty*. Pursuant to that certain Third Amended and Restated Continuing Guaranty, dated as of May 2, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time), the guarantors party thereto (the "**Prepetition Guarantors**," and together with the Prepetition Borrowers, collectively, the "**Prepetition Loan Parties**") guaranteed, on a joint and several basis, all of the Prepetition Secured Obligations (as defined below).

(c)     *Prepetition Loan Obligations.* As of the Petition Date, the Prepetition Loan Parties were justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim, or offset of any kind, in the aggregate amount of not less than (x) $281,250,000 in funded debt, including (i) $125,000,000 in outstanding principal amount of Revolving Loans, (ii) $156,250,000 of outstanding principal amount of Term Loans, and (y) $618,900,000 of outstanding but undrawn Letters of Credit,[4] *plus* certain reimbursement obligations, fees, costs, expenses (including, without limitation, certain attorneys' fees and related fees, charges and disbursements), indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition Loan Documents (collectively, the "**Prepetition Secured Obligations**").

(d)     *Prepetition Liens.* Pursuant to that certain Third Amended and Restated Pledge, Assignment and Security Agreement (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Collateral Agreement**") by and among ZHI, the other Debtors party thereto and the Prepetition Agent and certain other Prepetition Loan Documents, each of the Prepetition Loan Parties granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, valid and properly perfected continuing liens on and security interests (the "**Prepetition Liens**") in all "Collateral" (as defined in the Prepetition Credit Agreement) (collectively, the "**Prepetition Collateral**") (it being understood that the term "**Prepetition Collateral**" does not include any property or assets that have been expressly excluded from such definition in the Prepetition Loan Documents (including any Excluded Property (as defined in the Prepetition Collateral Agreement)).

(e)     *Validity and Enforceability of Prepetition Secured Obligations.* As of the Petition Date, the Prepetition Secured Obligations constitute the legal, valid, non-avoidable and binding obligations of each of the Debtors, enforceable in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), and (i) no portion of the Prepetition Secured Obligations and no amounts paid or payments made at any time by the Debtors to the Prepetition Secured Parties in respect of or applied to, as applicable, the Prepetition Secured Obligations, the Prepetition Loan Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, disgorgement, reduction, disallowance, recovery or subordination, challenge or any other Claim or Cause of Action[5] of any kind

---

[4] For the avoidance of doubt, no Adequate Protection Obligations shall be due to the Prepetition Secured Parties in regard to the undrawn Letters of Credit (other than the payment of Letter of Credit Fees (as defined in the Prepetition Loan Documents)) and similar such fees related to the issuance and maintenance of Letters of Credit during the postpetition period, collectively in an amount not to exceed $11,000,000 until and unless such Letters of Credit are drawn by the beneficiary.

[5] As used in this Seventh Interim Order, "**Causes of Action**" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, or offset of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the entry of this Seventh Interim

or nature whatsoever, whether pursuant to the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (ii) the Debtors do not have any claims, counterclaims, Causes of Action, defenses or setoff rights related to the Prepetition Secured Obligations or the Prepetition Loan Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable non-bankruptcy law against the Prepetition Secured Parties, and each of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such), and (iii) the Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(f)     *Validity and Enforceability of Prepetition Liens*. As of the Petition Date, the Prepetition Liens (i) have been properly recorded and are valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Collateral, (ii) are not subject to any offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination, recharacterization, disgorgement, disallowance, avoidance, challenge or any other claim or Cause of Action of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or other applicable law, (iii) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations or consideration secured or obtained thereby, and (iv) without giving effect to this Seventh Interim Order, are senior with priority over any and all other liens on or security interests in the Prepetition Collateral, subject only to liens or security interests expressly permitted under the applicable Prepetition Loan Documents, in each case, solely to the extent any such permitted liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) and are senior in priority to the Prepetition Liens (the "**Permitted Prior Liens**").[6]

(g)     *No Control*. None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any of the Debtors' operations are conducted, or are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Orders, the Prepetition Loan Documents, or the transactions contemplated hereby or thereby.

---

Order, in contract or in tort, in law (whether local, state, or federal U.S. or non-U. S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law.

[6] Nothing contained herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing contained herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, and the Official Committee, in each case to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien (subject to the terms of this Seventh Interim Order). For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Lien.

(h)     *No Claims, Defenses, or Causes of Action*. As of the date hereof, no claims, cross-claims, counterclaims, defenses or Causes of Action exist, including claims and Causes of Action arising under chapter 5 of the Bankruptcy Code or applicable state law equivalents (the "**Avoidance Actions**") or actions for recovery, recoupment, offset, setoff, disallowance, recharacterization, subordination (whether equitable, contractual, or otherwise), or disgorgement, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such) with respect to, in connection with, related to, or arising from the Prepetition Secured Obligations or any of the Prepetition Loan Documents, any action or conduct of any Prepetition Secured Party in respect thereof, or any of the transactions contemplated thereunder, that may be asserted by the Debtors, their respective estates, or any other person or entity.

(i)     *Cash Collateral*. The Debtors admit, stipulate, acknowledge and agree that any and all of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located (including, without limitation, all cash or cash equivalents in the control of or on deposit or maintained by the Debtors in any account or accounts, any amounts generated by the sale or other disposition of Prepetition Collateral, and all income, proceeds, products, rents or profits of any Prepetition Collateral), constitutes "**cash collateral**" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (such cash and cash equivalents the "**Cash Collateral**").

(j)     *Releases*. Subject to entry of the Final Order and the rights and limitations set forth in paragraph 20 of this Seventh Interim Order, the Debtors, on behalf of themselves and their respective estates, hereby absolutely, unconditionally and irrevocably release and forever discharge and acquit the Prepetition Secured Parties and each of their respective former, current, and future officers, directors, employees, shareholders, stockholders, equity holders, owners, members, managers, partners, principals, subsidiaries, affiliates, funds or managed accounts, agents, advisors, attorneys, accountants, investment bankers, consultants, other professionals and representatives, together with the respective successors and assigns thereof, in each case, in their respective capacities as such (collectively, the "**Representatives**"), from any and all claims, offsets, defenses, counterclaims, set off rights, objections, challenges, Causes of Action and/or choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations (including, attorneys' fees), premiums, fees, costs, expenses, or judgments of every type, whether known or unknown, asserted or unasserted, fixed or contingent, pending or threatened, of any kind or nature whatsoever, whether arising at law or in equity (including, without limitation, any theory of so called "lender liability" or equitable subordination or any claim or defense asserting recharacterization, subordination, or avoidance, any claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or any other provision of the Bankruptcy Code or of applicable state or federal law, or any other claim, Cause of Action, or defense arising under the Bankruptcy Code or applicable non-bankruptcy law), in each case, arising under, in connection with, or related to the Debtors or their estates, the extent, amount, validity, enforceability, priority, security, and perfection of the Prepetition Secured

Obligations, the Prepetition Liens, the Prepetition Loan Documents, and/or the transactions contemplated thereunder or hereunder, in each case, arising at any time prior to entry of this Seventh Interim Order; *provided*, *however*, that nothing in this paragraph shall limit or release the commitments and obligations of any of the Prepetition Secured Parties under the Interim Orders and the Final Order.

G.      ***Need for Use of Cash Collateral***. The Debtors have an immediate need to use Cash Collateral to permit the orderly continuation of the operation of their businesses, maintain business relationships with customers, vendors, and suppliers, make payroll, pay the costs of administering the Chapter 11 Cases, and satisfy other working capital and operational needs (in each case, in accordance with and subject to this Seventh Interim Order) for the benefit of the estates and the Debtors' creditors and stakeholders, including the Prepetition Secured Parties.

H.      ***Use of Cash Collateral***. As a condition to their consent to the use of Cash Collateral, the Prepetition Secured Parties require, and the Debtors have agreed, that all Cash Collateral shall be used and/or applied solely for the purposes permitted in the Approved Budget (as defined below), including, without limitation, (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay adequate protection payments to the extent set forth herein, and (iv) to pay professional fees and expenses and fund the Carve Out in accordance with this Seventh Interim Order, in the case of each of the foregoing, in accordance with the terms and conditions of this Seventh Interim Order. Notwithstanding anything to the contrary herein, the $5,000,000 of funds held in the deposit account ending in 6378 (the "**Deposit Account**") maintained by the International Bank of Commerce ("**IBC**") to secure the Irrevocable Standby Letter of Credit issued by IBC on behalf of Zachry Group, Inc. on December 17, 2001 (the "**IBC Letter of Credit**") shall not constitute Cash Collateral, and such funds shall not be used for any purpose other than authorized under the terms of the IBC Letter of Credit and applicable assignment agreements with respect to the Deposit Account. IBC reserves all rights with respect to the Deposit Account and the funds held in the

Deposit Account, including with respect to the validity, extent, and priority of its liens on the Deposit Account and any proceeds thereof.

I.       ***Adequate Protection***. The Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, subject to the terms and conditions set forth herein. The Prepetition Secured Parties are entitled to adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtors' use of the Prepetition Collateral, including Cash Collateral, and the imposition of the automatic stay. Based upon the Motion and the evidence presented to the Court at the Interim Hearings, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral as contemplated herein are fair and reasonable and reflect the Debtors' prudent exercise of business judgment. The Prepetition Secured Parties have expressly consented to the entry of this Seventh Interim Order and relief provided herein and pursuant to the terms of the Prepetition Loan Documents. As adequate protection against any aggregate diminution in value of the Prepetition Secured Parties' respective liens and security interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from, among other things, (i) the use, sale, or lease by the Debtors of such collateral, (ii) the use of Cash Collateral by each of the Debtors on a dollar-for-dollar basis, (iii) the imposition of the automatic stay, and (iv) the subordination of their Prepetition Liens and Prepetition Secured Obligations to the Carve Out upon the terms set forth herein (collectively, and to the fullest extent permitted under the Bankruptcy Code or other applicable law, the "**Diminution in Value**"), the Prepetition Secured Parties are entitled to adequate protection, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as set forth in this Seventh Interim Order; *provided*, *however*, that nothing in this Seventh Interim Order shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of

11

Cash Collateral or other Prepetition Collateral other than on the terms expressly set forth in this Seventh Interim Order, or (y) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection after the date hereof. Based on the Motion, the First Day Declaration, and other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearings, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

J.      ***Consent***. The Prepetition Agent, with the requisite authorization from the Prepetition Secured Parties, has consented to the Debtors' use of Prepetition Collateral (including Cash Collateral) in accordance with and subject to the terms and conditions set forth in this Seventh Interim Order and the Approved Budget.

K.      ***Limitation on Charging Expenses Against Collateral***. Except to the extent of the Carve Out, and subject to entry of the Final Order, no costs or expenses of administration of the Chapter 11 Cases, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "**Successor Cases**") shall be charged against or recovered from any Prepetition Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law, as against the Prepetition Secured Parties, without the prior written consent of the requisite Prepetition Secured Parties (which may be evidenced by electronic mail

from counsel to the Prepetition Agent), and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties.

L.      ***No Marshaling; 552(b) Waiver***. Except to the extent of the Carve Out, and subject to entry of the Final Order, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the Prepetition Secured Obligations. Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, and in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or the Prepetition Collateral.

M.      ***Proper Exercise of Business Judgment***. Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearings, (i) the terms of adequate protection granted to the Prepetition Secured Parties, (ii) the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral), and (iii) the Cash Collateral arrangements described herein, (a) were negotiated in good faith and at arm's length among the Prepetition Loan Parties and the Prepetition Secured Parties, (b) are fair, reasonable, and the best available to the Debtors under the circumstances, (c) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (d) are supported by reasonably equivalent value and fair consideration. Absent the ability to continue to use Cash Collateral upon the terms set forth herein, the Debtors, their estates, their creditors, and other parties-in-interest will be seriously and irreparably harmed.

N.      ***Seventh Budget***. The Debtors have prepared a 13-week itemized cash flow forecast set forth on **Exhibit 1** attached to this Seventh Interim Order (the "**Seventh Budget**," as updated by the Debtors and acceptable to the Prepetition Agent from time to time in accordance with the

terms of this Seventh Interim Order, the "**Approved Budget**"). The Seventh Budget includes on a line-item basis (i) the Debtors' projected cash receipts, (ii) weekly disbursements (including, without limitation, debt service expenses), and (iii) payables balances. The Seventh Budget is an integral part of this Seventh Interim Order, and the Prepetition Secured Parties are relying, in part, upon the Debtors' agreement to comply, subject to Permitted Variances (as defined below), with the Seventh Budget, in determining to allow the Debtors' use of Cash Collateral in accordance with the terms of this Seventh Interim Order.

O.     ***Good Faith***. The parties herein have acted in good faith, at arm's length, and with sound business judgment in connection with this Seventh Interim Order.

P.     ***Need for Immediate Entry of this Seventh Interim Order***. The Debtors have requested immediate entry of this Seventh Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     ***Motion Granted***. The use of Cash Collateral is hereby authorized and approved on a further interim basis in accordance with and subject to the terms and conditions of this Seventh Interim Order. Any objections or other statements with respect to any of the relief set forth in this Seventh Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Seventh Interim Order, are hereby denied and overruled.

2. ***Authorization to Use Cash Collateral***. The Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including a Termination Date (as defined below) to operate the Debtors' businesses in the ordinary course and pay certain costs, fees, and expenses related to the Chapter 11 Cases, in accordance with the Approved Budget as provided herein, and as approved by any order of this Court.

3. ***Approved Budget***. The Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variances). The Debtors shall deliver an updated Approved Budget, subject to the approval of the Prepetition Agent, on each of the following dates: February 13, 2025 and March 13, 2025. On Thursday, February 13, 2025, for the prior four-week period ending on Friday, February 7, 2025, the Debtors shall deliver a reconciliation report (the "**First Variance Report**") to the Prepetition Agent and the Official Committee, in form reasonably satisfactory to the Prepetition Agent, showing variances of budget amounts to actual amounts for the prior four-week period ending on the Friday immediately prior (such period, the "**First Test Period**"). On Thursday, February 27, 2025, for the prior two-week period ending on Friday, February 21, 2025, the Debtors shall deliver a reconciliation report (the "**Second Variance Report**") to the Prepetition Agent and the Official Committee, in form reasonably satisfactory to the Prepetition Agent, showing variances of budget amounts to actual amounts for the prior two-week period ending on the Friday immediately prior (such period, the "**Second Test Period**"). On Thursday, March 13, 2025, for the prior four-week period ending on Friday, March 7, 2025, the Debtors shall deliver a reconciliation report (the "**Third Variance Report**") to the Prepetition Agent and the Official Committee, in form reasonably satisfactory to the Prepetition Agent, showing variances of budget amounts to actual amounts for the prior four-week period ending on the Friday immediately prior (such period, the "**Third Test Period**"). On Thursday, March 27,

2025, for the prior two-week period ending on Friday, March 21, 2025, the Debtors shall deliver a reconciliation report (the "**Fourth Variance Report**") to the Prepetition Agent and the Official Committee, in form reasonably satisfactory to the Prepetition Agent, showing variances of budget amounts to actual amounts for the prior two-week period ending on the Friday immediately prior (such period, the "**Fourth Test Period**"). On Thursday, April 10, 2025, for the prior four-week period ending on Friday, April 4, 2025, the Debtors shall deliver a reconciliation report (the "**Fifth Variance Report**" and, together with the First Variance Report, the Second Variance Report, the Third Variance Report, and the Fourth Variance Report, the "**Variance Reports**") to the Prepetition Agent and the Official Committee, in form reasonably satisfactory to the Prepetition Agent, showing variances of budget amounts to actual amounts for the prior four-week period ending on the Friday immediately prior (such period, the "**Fifth Test Period**" and, together with the First Test Period, the Second Test Period, the Third Test Period, and the Fourth Test Period, the "**Test Periods**"). The Variance Reports will include (i) the variance (as compared to the applicable Approved Budget) of actual cash receipts of the Debtors for the applicable Test Period, (ii) the variance (as compared to the applicable Approved Budget) of the operating disbursements made by the Debtors set forth in the Approved Budget for the applicable Test Period, and (iii) an explanation, in reasonable detail, for any material variances set forth in such Variance Report.

4.    The Debtors shall not permit (i) a total receipts variance for any Test Period to have a negative variance in excess of 20% (with negative variance meaning, for the avoidance of doubt, that actual receipts are less than projected receipts), or (ii) a total operating disbursement variance for any Test Period to have a negative variance in excess of 15% (with negative variance meaning, for the avoidance of doubt, that actual operating disbursements are greater than the projected operating disbursements) (the variances otherwise permitted by this covenant, the "**Permitted**

Variances"); *provided* that the cash disbursements considered for determining compliance with this covenant shall exclude disbursements in respect of (x) restructuring professional fees and (y) restructuring charges arising on account of the Chapter 11 Cases, including payments made to vendors that qualify as "Critical Vendors" and interest due under the Prepetition Credit Agreement.

5.      The Debtors shall deliver to the Prepetition Agent and the Official Committee with each Variance Report a revised rolling 13-week cash flow forecast substantially in the format of the initial Approved Budget.

6.      ***Limitations on Use of Cash Collateral***. The Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation before the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors (the "**Effective Date**"), except: (i) with respect to the Prepetition Obligations set forth in the Interim Orders; (ii) as provided in any order in connection with any relief requested by the Debtors at the commencement of these Chapter 11 Cases (the "**First Day Orders**"), each in form and substance reasonably acceptable to the Prepetition Agent; or (iii) any payment made in accordance with the Approved Budget, subject to Permitted Variances. The use of Cash Collateral pursuant to the terms and conditions of this Seventh Interim Order and in accordance with the Approved budget shall not be deemed to be consent by the Prepetition Agent to any other or future use of Cash Collateral or to use any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Approved Budget, subject to the Permitted Variances.

7.      ***Adequate Protection for the Prepetition Secured Parties***. Subject only to the Carve Out and the terms of this Seventh Interim Order, pursuant to sections 361, 363, 363, and 507 of the Bankruptcy Code as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, solely for and equal in amount

to the Diminution in Value of the Prepetition Collateral (including Cash Collateral), the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (the liens, security interests, payments, and other obligations set forth in this paragraph 7, collectively, the "**Adequate Protection Obligations**"):

(a)     *Adequate Protection Liens*. As security for and to the extent of any Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted (effective and perfected as of the entry of the First Interim Order and without the necessity of the execution by the Debtors of any security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Agent of any Collateral (as defined below)) valid, binding, continuing, enforceable, fully-perfected, nonavoidable, first-priority senior replacement liens on and security interests (all such liens and security interests, the "**Adequate Protection Liens**") in all Collateral (as defined below), which Adequate Protection Liens shall be subject only to the Carve Out and any Permitted Prior Liens, but shall be senior to any and all other liens and security interests in the Collateral; provided, however, nothing in this Seventh Interim Order shall prejudice the rights of the Official Committee in connection with the Final Order to challenge or object to any Adequate Protection Liens or replacement liens on after acquired property and/or property that did not exist as of the Petition Date.

(b)     *Collateral*. The term "**Collateral**" means all assets and properties of each of the Debtors of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, including, without limitation, any and all cash and cash equivalents of the Debtors, deposit, securities and other accounts (together with all cash and cash equivalents, instruments and other property deposited therein or credited thereto), accounts receivables and other receivables (including those generated by intercompany transactions), rights to payment, contracts and contract rights, goods, inventory, plants, fixtures, machinery, equipment, vehicles, real property and leasehold interests, general intangibles, documents, instruments, securities, capital stock of subsidiaries, investment property, chattel paper, franchise rights, patents, tradenames, trademarks, copyrights, licenses and all other intellectual property, tax and other refunds, insurance proceeds, books and records, commercial tort claims, in the case of each of the foregoing, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, any of the Debtors, whether prior to or after the Petition Date, whether owned or consigned by or to, or leased from or to, the Debtors, and wherever located, including, without limitation, each of the Debtors' rights, title and interests in (i) all Prepetition Collateral and (ii) all "Collateral" (as defined in the Prepetition Loan Documents), and all proceeds, products, offspring, and profits of each of the foregoing and all accessions to, substitutions, and replacements for, each of the foregoing, excluding Avoidance Actions but including, subject to entry of the Final Order, any proceeds or property recovered, whether by judgment, settlement or otherwise, of the Debtors' Avoidance Actions (collectively, the "**Avoidance Action Proceeds**").

(c)      *Adequate Protection Superpriority Claims*. As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, including subject to the priorities set forth therein, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted an allowed superpriority administrative expense claims ahead of and senior to any and all other administrative expense claims to the extent of, and in an aggregate amount equal to, any Diminution in Value (the "**Adequate Protection Superpriority Claims**"), but junior to the Carve Out. Subject to the Carve Out, the Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereinafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to any provision of the Bankruptcy Code to the extent of, and in an aggregate amount equal to, any Diminution in Value.

(d)      *Status of Adequate Protection Liens*. Except as otherwise expressly permitted hereunder, the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest, or administrative claim under section 364 of the Bankruptcy Code or otherwise.

(e)      *Interest*. From and after entry of the First Interim Order, the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall receive (i) upon the entry of the First Interim Order, all accrued and unpaid interest due under the Prepetition Loan Documents in respect of unpaid principal outstanding thereunder (whether accrued prior to or after the Petition Date), and (ii) thereafter, as and when due under the Prepetition Loan Documents, all interest due under the Prepetition Credit Agreement, in respect of unpaid principal outstanding thereunder. All interest due hereunder to the Prepetition Secured Parties shall be calculated at the non-default rates under the Prepetition Loan Documents and shall be payable in cash upon the same dates as currently required by the Prepetition Loan Agreement.

(f)      *Letter of Credit Fees*. After the entry of the Seventh Interim Order, the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall receive all Letter of Credit Fees (as defined in the Prepetition Loan Documents) and similar such fees related to the issuance and maintenance of Letters of Credit that accrue during the postpetition period and become due under the Prepetition Loan Documents on or prior to March 21, 2025 in an aggregate amount not to exceed $11,000,000.

(g)      *Fees and Expenses*. The Debtors are authorized and directed to pay the out-of-pocket fees, costs, and expenses of the Prepetition Agent, including the reasonable and documented fees and expenses of (i) McGuireWoods LLP, counsel to the Prepetition Agent, (ii) FTI Consulting, Inc., financial advisor to the Prepetition Agent, and (iii) any other accountants, consultants, advisors, or other professionals that may be retained by the Prepetition Agent upon the consent of the Debtors (which consent shall not be unreasonably withheld or delayed), whether arising prior to or after the Petition Date, without the necessity of filing formal fee applications or compliance with the U.S.

Trustee's fee guidelines, subject to paragraph 8 of this Seventh Interim Order. The Debtors are authorized and directed to pay the amounts provided in this paragraph 7 whether or not contained in the Approved Budget and without being limited by the dollar estimates contained in the Approved Budget.

(h)  *Right to Seek Additional Adequate Protection*. This Seventh Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(i)  *Cash Management Covenant*. The Debtors shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order.

(j)  *Reporting*. Upon reasonable advance written notice, the Debtors shall provide the Prepetition Agent and the Official Committee with reasonable access during business hours to the Debtors' facilities, management, books, and records required under the Prepetition Loan Documents. The Debtors shall also provide the Prepetition Agent with such other and further financial and operational reporting as the parties have agreed or may agree in writing (for which writing email shall suffice), including, without limitation, on a weekly basis at a time mutually agreed upon, a conference call with the Prepetition Agent to discuss such financial and operational reporting. The Debtors' investment banker, Lazard Frères & Co. LLC, shall also attend such weekly conference calls to discuss the exit financing process. Any written financial and operational reporting provided to the Prepetition Agent shall also be provided to the Official Committee.

(k)  *Prohibition on Disposition of Collateral*. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or Cash Collateral outside the ordinary course of business, other than the use of Cash Collateral pursuant to the terms of the Approved Budget (subject to the Permitted Variances) and the terms of this Seventh Interim Order, without (i) the prior written consent of the Prepetition Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Secured Parties), or (ii) an order of this Court.

8.  ***Adequate Protection Fees and Expenses***. The payment of all reasonable and documented fees and expenses provided for herein as adequate protection shall not be required to comply with the U.S. Trustee guidelines, nor shall the applicable professionals be required to file fee applications with the Court with respect to any fees or expenses payable herein, and all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the

attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, counsel to the Official Committee, and the U.S. Trustee (the "**Fee Notice Parties**"); *provided*, *however*, that the U.S. Trustee and the Official Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals; *provided further*, *however*, that if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten calendar days after delivery of such invoices (the "**Fee Objection Period**"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any event, within five business days after expiration of the Fee Objection Period. If a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested Postpetition Fees and Expenses, then only the disputed portion of such fees and expenses shall not be paid until such objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Subject to this paragraph 8, none of the adequate protection payments required to be made pursuant to this Seventh Interim Order shall be subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance or disgorgement in the Chapter 11 Cases or any Successor Cases.

9.      *Carve Out*.

(a)      *Carve Out*. As used in this Seventh Interim Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $125,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether

by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Official Committee pursuant to section 328 or section 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before the date of delivery by the Prepetition Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred on or after the date of delivery by the Prepetition Agent of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"); *provided*, *however*, that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described in clauses (i) through (iv) of this paragraph 9 on any grounds. For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to counsel to the Debtors, the U.S. Trustee, and counsel to the Official Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined below) and upon termination of the Debtors' right to use Cash Collateral by the Prepetition Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)      *Carve Out Reserves*. On the day on which a Carve Out Trigger Notice is delivered in accordance with paragraph 9(a) of this Seventh Interim Order (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash (including Cash Collateral) on hand as of such date (net of any amounts held on retainer by any Professional Persons) and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the fees and expenses of Professional Persons accrued prior to the Termination Declaration Date. Upon the occurrence of a Termination Declaration Date, each Professional Person shall have two business days to deliver fee statements to the Debtors that cover such Professional Person's reasonable good faith estimate of unpaid fees and expenses incurred by such Professional Persons through the Termination Declaration Date. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay Allowed Professional Fees through the Termination Declaration Date (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims. The Carve Out Trigger Notice shall also constitute a demand to the Debtors as of such date to utilize all cash (including Cash Collateral) on hand as of such date (net of any amounts held on retainer by any Professional Persons) and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims. The Carve Out Reserves shall be available only to satisfy such Allowed Professional Fees benefitting from the Carve Out in accordance with the terms hereof until such Professional Fees are paid in full. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out**

**Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations are paid in full, in which case, any remaining excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations are paid in full, in which case any remaining excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition Loan Documents, or the Interim Orders, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 9, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 9, prior to making any payments to the Prepetition Agent or any of the Debtors' creditors, as applicable. Notwithstanding anything to the contrary in the Prepetition Loan Documents or the Interim Orders, following delivery of a Carve Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Agent for application in accordance with the Prepetition Loan Documents. Notwithstanding anything to the contrary in the Interim Orders, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the Prepetition Loan Documents or increase or reduce the Prepetition Secured Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Seventh Budget, Approved Budget, Revised Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(c)     *Priority of Carve Out*. For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Orders, the Carve Out shall be senior to all liens, security interests, and superpriority claims granted herein and/or under the Prepetition Loan Documents, including the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, the Prepetition Liens, and the Prepetition Secured Obligations.

(d)     *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e) *No Direct Obligation to Pay Allowed Professional Fees*. Except for permitting the funding of the Carve Out Reserves as provided herein, none of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in the Interim Orders or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f) *Payment of Carve Out On or After the Termination Declaration Date*. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

10. ***Access and Information***. Without limitation of the requirements contained in the Prepetition Loan Documents, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit the Prepetition Agent and its Representatives (each of which is bound by obligations of confidentiality pursuant to a separate confidentiality agreement entered into with the Debtors) to have reasonable access to such information regarding the operations, business affairs and financial condition of the Debtors or any of their subsidiaries, or compliance with the terms of the Prepetition Credit Agreement as the Prepetition Agent (acting on behalf of itself or any applicable Prepetition Secured Party) may reasonably request, and it being understood that nothing in this paragraph 9 shall require the Debtors (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

11. ***Termination Events***. Subject to the Remedies Notice Period (as defined herein) and paragraphs 9 and 12 of this Seventh Interim Order, the Debtors' right to use the Cash Collateral pursuant to this Seventh Interim Order shall cease on the Termination Date (as defined herein). As used herein "**Termination Events**" means any of the events set forth in clauses (a) through (u)

24

below (each such event a "**Termination Event**," and the date upon which such Termination Event

occurs, the "**Termination Date**"):

(a)    a Final Order acceptable to the Debtors and the Prepetition Agent is not entered by the Court by 11:59 p.m. on March 21, 2025, unless extended by written agreement of the Prepetition Agent and the Debtors, a copy of which, with the applicable Approved Budget, shall be filed with the Court;

(b)    the effective date of a chapter 11 plan of one or more of the Debtors;

(c)    the violation of any term of this Seventh Interim Order by the Debtors that is not cured within five business days of receipt by the Debtors, counsel for the Official Committee, and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to the Debtors, counsel for the Official Committee, and the U.S. Trustee by email);

(d)    the entry of any order modifying, reversing, revoking, staying for a period in excess of five business days, rescinding, vacating, or amending this Seventh Interim Order without the express written consent of the Prepetition Agent;

(e)    the filing by the Debtors of motion to dismiss any of the Chapter 11 Cases, or the entry of any order dismissing any of these Chapter 11 Cases (other than following the effective date of a chapter 11 plan) without the express written consent of the Prepetition Agent, or a trustee under chapter 11 of the Bankruptcy Code or an examiner is appointed in any of the Chapter 11 Cases;

(f)    the filing by the Debtors of a motion to convert any of these Chapter 11 Cases to a case under chapter 7 or the entry of order converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, without the express written consent of the Prepetition Agent;

(g)    the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code) unless consented to by the Prepetition Agent in writing;

(h)    the filing by the Debtors of any application, motion, or borrowing request seeking to use Cash Collateral on a non-consensual basis;

(i)    the entry of an order granting another claim or lien (except for the Permitted Prior Liens) *pari passu* with or senior to (except as provided under this Seventh Interim Order) the Prepetition Liens, Adequate Protection Liens, or the Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties under this Seventh Interim Order;

(j)    any motion, pleading, or proceeding is filed or is commenced by any Debtor seeking, or otherwise consenting to or supporting, (i) the invalidation, subordination, or

other challenge to the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims or (ii) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or against any of the Prepetition Secured Parties; *provided* that if the Debtors provide any response to any third-party discovery request or may make a witness available for deposition, such action shall not be a violation of this clause (j);

(k)      any Debtor files a motion, pleading, or proceeding that would, if the relief sought therein were granted, result in a Termination Event (other than a Termination Event under this paragraph 11(k)), and such motion, pleading, or proceeding is not dismissed or withdrawn (as applicable) within five business days after receipt by the Debtors, counsel to the Official Committee, and the U.S. Trustee of notice (which may be by email) that the Prepetition Agent has determined that such motion, pleading, or proceeding, if the relief sought therein were granted, would give rise to such a Termination Event; *provided* that if the Debtors receive the written consent of the Prepetition Agent to file such motion, pleading, or proceeding than such action shall not be a violation of this clause (k);

(l)      the entry by this Court of an order granting relief from or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to any entities other than the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral with a value in excess of $1,000,000 or without which the Debtors' ability to operate their business in the ordinary course would be materially and adversely affected, in either case without the written consent of the Prepetition Agent;

(m)      the failure by the Debtors to make any payment required pursuant to this Seventh Interim Order when due; *provided* that such failure remains uncured for at least five business days following a written notice from the Prepetition Agent (which may be by email);

(n)      the failure by the Debtors to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Seventh Interim Order within five business days following a request therefor from any of the Notice Parties pursuant to the terms of this Seventh Interim Order; or any such documents or other information shall contain a material misrepresentation; *provided* that such misrepresentation remains uncured for at least five business days following written notice thereof from any of the Prepetition Agent;

(o)      the Debtors' failure to comply with an Approved Budget except with respect to Permitted Variances;

(p)      the failure of the Debtors to observe or perform any of the material terms or material provisions contained herein, *provided* that such failure remains uncured for at least five business days following written notice thereof from any of the Prepetition Agent;

(q)      the filing by the Debtors of a plan of liquidation or a plan of reorganization that is not conditioned upon the payment of the Adequate Protection Superpriority Claims

granted hereunder, in full in cash, no later than the effective date of such chapter 11 plan (unless a chapter 11 plan is filed that provides for alternative treatment with the written consent of the Prepetition Secured Parties);

(r)   the Debtors sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or Cash Collateral outside the ordinary course of business, other than the use of Cash Collateral pursuant to the terms of the Approved Budget (subject to the Permitted Variances) and the terms of this Seventh Interim Order, without (i) the prior written consent of the Prepetition Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Secured Parties), or (ii) an order of this Court;

(s)   the entry of an order pursuant to which the Prepetition Secured Parties cease to have a valid and perfected first priority security interest in and lien on any Prepetition Collateral, junior only to the Carve Out and any Permitted Prior Liens; or

(t)   this Seventh Interim Order has been reversed, vacated, stayed, appealed or is subject to a request for re-argument, or rehearing in a way that, if granted, would be adverse to the Prepetition Secured Parties, without the express written consent (which consent may be documented by e-mail) of the Prepetition Secured Parties.

12.   ***Remedies Upon Termination Event***. Upon the occurrence or during the continuation of a Termination Event, the Prepetition Agent may send written notice (the "**Remedies Notice**"), email being sufficient, to counsel to the Debtors, counsel to the Official Committee, and the U.S. Trustee (the "**Remedies Notice Parties**") that a Termination Event has occurred, and, prior to taking any enforcement action, the Prepetition Agent shall file with the Court and seek an emergency hearing (the "**Stay Relief Hearing**") upon no less than five business days' notice (unless the Debtors and the Prepetition Agent agree to request that the Court conduct the Stay Relief Hearing on shorter notice) to the Remedies Notice Parties (the "**Remedies Notice Period**") to determine whether a Termination Event has occurred. The Debtors shall not object to the Stay Relief Hearing being held on such shortened notice. During the Remedies Notice Period, the Debtors may object to the termination of the consensual use of Cash Collateral on any basis and may seek the non-consensual use of Cash Collateral, subject to the Prepetition Secured Parties' rights to object to, or otherwise oppose, any such non-consensual use and to seek adequate

protection in connection therewith. Notwithstanding anything to the contrary in the foregoing or otherwise in this Seventh Interim Order, during the Remedies Notice Period, the Debtors may use Cash Collateral to pay only such amounts that the Debtors have determined in good faith are in the ordinary course, critical to the preservation of the Debtors and their estates, and otherwise approved in advance in writing by the Prepetition Agent. Following the Stay Relief Hearing, and upon the Court's determination that a Termination Event has occurred, the Court may fashion an appropriate remedy. Prior to entry of the relevant order, the Prepetition Secured Parties shall not (i) terminate, restrict and/or revoke the Debtors' right under this Seventh Interim Order to use any Cash Collateral, (ii) freeze monies or balances in the Debtors' accounts, (iii) otherwise enforce any and all rights against the Prepetition Collateral, including, without limitation, disposition of the Prepetition Collateral for application towards the Carve Out and the Prepetition Secured Obligations in accordance with their respective priorities, and (iv) take any other actions or exercise any other rights or remedies permitted under this Seventh Interim Order or applicable law.

13. ***Payments Free and Clear***. Pursuant to the provisions of this Seventh Interim Order (including the Carve Out), any and all payments or proceeds remitted to the Prepetition Agent for the benefit of itself and the other Prepetition Secured Parties, pursuant to the provisions of this Seventh Interim Order or any subsequent order of this Court shall be irrevocable (subject to paragraphs 6(d) and 20 of this Seventh Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the Debtor) or section 552(b) of the Bankruptcy Code; *provided* that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Prepetition Secured Parties is determined to be not

allowed under section 506(b) of the Bankruptcy Code or on any other basis pursuant to a successful Challenge in accordance with paragraph 20 of this Order, such payments may be recharacterized and applied as payments of principal owed under the Prepetition Loan Documents.

14. ***Limitation on Charging Expenses Against Collateral***. Subject to entry of the Final Order, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or any Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Chapter 11 Cases.

15. ***No Marshalling; 552(b) Waiver***. Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral, as the case may be. Subject to entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Collateral.

16. ***Reservation of Rights of the Prepetition Secured Parties***. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant to this Seventh Interim Order shall not be deemed an admission that the interests of such Prepetition Secured Parties are indeed adequately protected, and is without prejudice to the right of the Prepetition Secured Parties to seek additional relief with respect to the use of Prepetition Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice

to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify, or otherwise impair the respective rights of the Prepetition Secured Parties under the Prepetition Loan Documents or under applicable law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Prepetition Loan Documents and/or applicable law. Without limiting the foregoing, nothing contained in this Seventh Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Parties for any Diminution in Value during the Chapter 11 Cases.

17.    ***Rights Preserved***. Notwithstanding anything herein to the contrary, the entry of this Seventh Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the Prepetition Secured Parties under the Prepetition Loan Documents, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Seventh Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party in interest's right to oppose

any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Seventh Interim Order.

18.     ***Modification of Automatic Stay***. The Debtors are authorized to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Seventh Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Seventh Interim Order.

19.     ***Survival***. The provisions of this Seventh Interim Order shall be binding upon any trustee appointed during the Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Chapter 11 Cases to chapter 7 cases, dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise. The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, this Seventh Interim Order, shall continue notwithstanding any conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the dismissal of any of the Chapter 11 Cases. Subject to the limitations described in paragraphs 4(d) and 19 of this Seventh Interim Order, payments made pursuant to this Seventh Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in any of the Chapter 11 Cases or any Successor Case.

20.     ***Effect of Stipulations on Third Parties***. The Debtors' stipulations, admissions, agreements, and releases contained in section F of this Seventh Interim Order (collectively, the "**Stipulations**") shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the

Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes. The Debtors' Stipulations shall be binding upon all other creditors, parties in interest and all of their respective successors and assigns (including without limitation, the Official Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes, unless: (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the later of (x) 75 calendar days after entry of the First Interim Order, and (y) solely for the Official Committee, 21 calendar days after entry of the Final Order, (ii) any such later date as has been agreed to, in writing, by the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within the time period set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"); *provided*, *however*, that if, prior to the Challenge Period termination date, any of these Chapter 11 Cases convert to chapter 7 or a chapter 7 or chapter 11 trustee is appointed in these Chapter 11 Cases or any Successor Cases, then in such case the Challenge Period termination date shall be extended solely with respect to the trustee until the later of the then Challenge Period termination date and the date that is thirty (30) days following such conversion or appointment, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Loan Documents, the Prepetition Secured Obligations, or the Prepetition Liens, or (B) otherwise asserting or prosecuting any claim or Cause of Action, including any action for preferences, fraudulent transfers or conveyances, recharacterization, subordination, disgorgement, offset,

32

objections, contests, defenses, or other challenges (collectively, the "**Challenges**") against any of the Prepetition Secured Parties or any of their Representatives (in each case, in their respective capacities as such) arising under, in connection with, or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral, and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished; *provided*, *further*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such Challenge or claim and any Challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred; *provided*, *further*, that any motion filed with the Court seeking requisite standing and authority to pursue a Challenge must include a draft complaint attached thereto. If no such Challenge is timely and properly filed during the Challenge Period or if the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' Stipulations contained in this Seventh Interim Order shall be binding on all parties in interest, including, without limitation, the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases, (b) the Prepetition Secured Obligations shall constitute allowed claims, the Prepetition Loan Documents shall be deemed valid and enforceable, and the Prepetition Liens shall be deemed to be legal, valid, binding, continuing, perfected, and enforceable, in each case, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and (c) the Prepetition Secured Obligations, the Prepetition Liens, and the

Prepetition Loan Documents shall not be subject to any other or further claim, Cause of Action, or Challenge, whether arising under the Bankruptcy Code or otherwise, by the Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases, against any of the Prepetition Secured Parties or any of their Representatives (in each case, in their respective capacities as such) arising under, in connection with, or relating to the Prepetition Loan Documents, the Prepetition Liens, or the Prepetition Secured Obligations, and each such claim, Cause of Action, or Challenge shall be deemed forever waived, released and barred. If any such Challenge is timely filed during the Challenge Period, the Stipulations shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Official Committee, and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction. Nothing in this Seventh Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Official Committee or any other person or entity, standing or authority to pursue any claim or Cause of Action belonging to the Debtors or their estates and all rights to object to such standing are expressly reserved; *provided* that no interested party shall be permitted to raise as a defense to any request for standing or to any Challenge the argument that creditors of such Debtor do not have the ability under applicable law to file derivative suits on behalf of limited liability companies under applicable limited liability company acts, but all other objections, defenses, claims or arguments to any such request for standing or to any Challenge are expressly reserved and preserved in all respects. Notwithstanding anything in this Seventh Interim

Order to the contrary, to the extent a motion seeking standing to commence a Challenge is timely filed and attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge prior to the expiration of the Challenge Period and the Challenge Period expires before such motion is ruled upon by this Court, the Challenge Period will be tolled solely with respect to the Challenges asserted in the draft complaint until the entry of a final order ruling on such motion. If standing is denied by a final order, the Challenge Period shall be deemed to have expired with respect to such Challenges.

21. ***Limitations on Use of Cash Collateral, Carve Out, or Other Funds***. Notwithstanding anything contained in this Seventh Interim Order or any other order of the Court to the contrary, no Prepetition Collateral, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other amounts may be used (nor shall any professional fees or expenses be applied, financed, or paid in connection with), directly or indirectly, by any of the Debtors, the Official Committee or any trustee or other estate representative (including a chapter 11 or chapter 7 trustee) appointed or elected in the Chapter 11 Cases or any Successor Cases, or any other person or entity, in connection with: (a) any investigation (including by way of examinations or discovery proceedings, whether formal or informal), initiation, preparation, assertion, initiation, joining or prosecution of any claims, Causes of Action, challenges defenses, suits, counterclaims, contested matters, adversary proceedings or other litigation (whether in law or equity, for monetary, injunctive or other affirmative relief) against any of the Prepetition Secured Parties or their Representatives with respect to any transaction, occurrence, omission, action or other matter arising under, in connection with or related to the Interim Orders, the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents, or the

transactions contemplated herein or therein, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, or seeking to avoid, marshal, subordinate or recharacterize, in whole or in part, any of the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, the Prepetition Liens, or the Prepetition Secured Obligations or any of the obligations, liens, security interests, claims, rights granted hereunder or under the Prepetition Loan Documents, including, in each case, without limitation, any claim or Cause of Action seeking or asserting (i) so-called "lender liability", (ii) Avoidance Actions, or (iii) the modification of any of the rights, remedies, priorities, privileges, protections or benefits granted to the Prepetition Secured Parties under the Interim Orders or under any of the Prepetition Loan Documents, (b) objecting to or seeking to prevent, hinder or otherwise delay any of the Prepetition Secured Parties' assertion, enforcement, exercise of remedies or realization upon any Prepetition Collateral in accordance with the Interim Orders or the Prepetition Loan Documents, (c) seeking or applying to the Court for authority to approve superpriority claims or grant liens or security interests in any portion of the Prepetition Collateral that are senior to or *pari passu* with the Adequate Protection Liens, the Adequate Protection Claims, or the Prepetition Liens, unless all Prepetition Secured Obligations have been paid in full or as otherwise agreed in writing by the Prepetition Agent, or (e) seeking to pay any amount on account of any claims arising before the commencement of these Chapter 11 Cases, unless such payments are agreed to in writing by the Prepetition Agent (or are otherwise included in the Approved Budget); *provided*, *however*, that no more than $125,000 of the Carve Out in the aggregate may be used for fees and expenses incurred (to the extent allowed by the Court at any time) by the Official Committee to investigate, but not object to, challenge, prosecute or litigate (including by way of formal discovery), the validity, enforceability, perfection and

priority of the Prepetition Liens, the Prepetition Secured Obligations, and the Prepetition Loan Documents during the Challenge Period.

22.    ***Renewals of Letters of Credit***. The Debtors may, in the ordinary course of their business, request, and the Prepetition Secured Parties are authorized but not directed to permit, in their discretion, the renewal and/or extension of any expiring Letter of Credit that was issued and outstanding as of the Petition Date for which the Debtors were the applicant, which as of the Petition Date had not been fully drawn; *provided that* no such renewal or extension shall (i) increase the aggregate undrawn amount of any such renewed or extended Letter of Credit or (ii) have the effect of transforming a prepetition claim on account of such Letter of Credit into an administrative expense claim or otherwise alter the priority of such claim. Notwithstanding the foregoing, to the extent this paragraph conflicts with the settlement terms of the *Final Order (I) Approving the Settlement by and Among the Debtors, Golden Pass LNG Terminal LLC, CB&I LLC, Chiyoda International Corporation, and CCZJV, (II) Authorizing the Parties to Perform Any and All Obligations Contemplated by the Settlement, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Dkt. No. 744], the terms of that order will control.

23.    ***Texas Taxing Authorities***. Notwithstanding any other provisions in the Motion, this Seventh Interim Order or any final orders pertaining to financing or the use of cash collateral in these Chapter 11 Cases, any statutory liens on account of ad valorem taxes held by the Texas Taxing Authorities[7] (the "**Texas Tax Liens**") shall neither be primed by nor made subordinate to

---

[7] For purposes of this Seventh Interim Order, the term "**Texas Taxing Authorities**" shall refer to: Randall County Tax Office, Parmer County Appraisal District, Pasadena Independent School District, West Harris County Municipal Utility District, Alief Independent School District, City of Houston, Channelview Independent School District, Harris County Municipal Utility District 285, Maverick County, Brazos County, Medina County, Bexar County, Cypress-Fairbanks Independent School District, Deer Park Independent School District, Eagle Pass Independent School District, Fort Bend County, Harris County Emergency Service District #09, Harris County Emergency Service District #48, Harris County Emergency Service District #60, City of Houston (where represented by Linebarger), Houston Community College System, Houston Independent School District, Jefferson County, Katy Independent School

any liens granted to any party hereby to the extent the Texas Tax Liens are valid, senior, perfected, and unavoidable and, under applicable non-bankruptcy law, are granted priority over a prior perfected security interest or lien. All parties' rights to object to the priority, validity, amount, and extent of the claims (the "**Texas Tax Claims**") and Texas Tax Liens are fully preserved. Notwithstanding any order that may be entered converting these Chapter 11 cases to cases under chapter 7, the Texas Tax Authorities and the Texas Tax Liens shall retain their relative priority until the Texas Tax Claims are paid in full.

24. *No Third-Party Rights*. Except as explicitly provided for herein, this Seventh Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

25. *Binding Effect*. Immediately upon entry of this Seventh Interim Order by the Court, subject to paragraph 20 of this Seventh Interim Order, the provisions of this Seventh Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the Prepetition Secured Parties, the Official Committee, or any other committee appointed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of any of the Debtors, and shall inure to the benefit of the each of the Debtors, the Prepetition Secured Parties, and their respective successors and assigns; *provided that*, except to the extent

---

District, Kleberg County, Lone Star College System, Matagorda County, Orange County, Nueces County and City of Pasadena.

expressly set forth in the Interim Orders, the Prepetition Secured Parties shall have no obligation to permit the use of Prepetition Collateral (including Cash Collateral) by any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

26.    **Property of Estate**. Notwithstanding anything to the contrary herein, nothing in this Seventh Interim Order grants liens on or superpriority claims payable from any assets that are not property of the Debtors' estates.

27.    **Proofs of Claim**. The Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successors Cases in order to assert claims for payment in respect of the Adequate Protection Obligations or Prepetition Secured Obligations. The Stipulations, acknowledgments, and provisions of this Seventh Interim Order are deemed sufficient to and do constitute timely filed proofs of claim in respect of such claims arising under the Adequate Protection Obligations or Prepetition Secured Obligations against each of the applicable Debtors. Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Chapter 11 Cases shall not apply to the Prepetition Secured Parties or the Prepetition Secured Obligations; *provided that*, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties), may (but is not required to) in its discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the Debtors' lead Chapter 11 Case against all of the Debtors, which shall be deemed to have been filed against each and every Debtor. Such consolidated or master proofs of claim shall not be required to attach

any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable party, which instruments, agreements, or other documents will be provided upon reasonable written request to the Prepetition Agent. Any proof of claim filed by or on behalf of any of the Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

28.     ***Effectiveness***. This Seventh Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Seventh Interim Order.

29.     ***Headings***. The headings in this Seventh Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Seventh Interim Order.

30.     ***Retention of Jurisdiction***. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Seventh Interim Order.

31.     ***Final Hearing***. The Final Hearing shall be held on March 13, 2025 at 10:00 a.m.(prevailing Central Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than March 6, 2025 at 4:00 pm (prevailing Central Time).

32.     ***Notice of Entry of Seventh Interim Order***. The Debtors shall promptly serve copies of this Seventh Interim Order to the parties that have been given notice of the Interim Hearings, to any party that has filed a request for notices with this Court and to the Official Committee.

Signed: February 13, 2025

_____
Marvin Isgur
United States Bankruptcy Judge

# <u>Exhibit 1</u>

## Seventh Budget

| Week number: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Thru Feb-25 | 8 | 9 | 10 | 11 | 12 | 13 | 13-Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending: | 1/19 | 1/26 | 2/2 | 2/9 | 2/16 | 2/23 | 3/2 | | 3/9 | 3/16 | 3/23 | 3/30 | 4/6 | 4/13 | |
| Actual / forecast: | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| ($ Millions) | | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | | |
| Major Projects | ├ | – | $28.0 | – | $48.4 | $38.5 | – | $114.9 | – | $55.0 | $55.6 | – | – | $69.2 | $294.7 |
| Services & Engineering | 13.6 | 16.8 | 17.6 | 23.3 | 24.2 | 22.8 | 20.7 | 139.1 | 21.6 | 17.0 | 24.2 | 21.6 | 22.1 | 23.3 | 268.9 |
| **Total Operating Receipts** | **$13.6** | **$16.8** | **$45.6** | **$23.3** | **$72.6** | **$61.3** | **$20.7** | **$253.9** | **$21.6** | **$72.0** | **$79.8** | **$21.6** | **$22.1** | **$92.5** | **$563.6** |
| | | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Payroll Cost | $26.7 | $27.6 | $27.1 | $28.1 | $31.1 | $31.4 | $30.9 | $202.9 | $31.0 | $33.5 | $33.7 | $33.3 | $34.7 | $34.8 | $403.9 |
| Post-Petition Vendor Payments (non-corporate) | 8.2 | 8.0 | 8.0 | 10.8 | 11.1 | 10.9 | 10.5 | 67.5 | 11.0 | 11.5 | 11.7 | 11.5 | 7.4 | 7.8 | 128.4 |
| GPX Disbursements | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Unallocated Corporate Cost | 3.3 | 3.2 | 4.2 | 3.1 | 2.9 | 0.7 | 4.7 | 22.1 | 7.5 | 2.4 | 0.7 | 0.8 | 3.3 | 3.8 | 40.5 |
| **Total Operating Disbursements** | **$38.1** | **$38.8** | **$39.3** | **$42.0** | **$45.1** | **$43.0** | **$46.1** | **$292.4** | **$49.5** | **$47.4** | **$46.1** | **$45.6** | **$45.4** | **$46.4** | **$572.8** |
| | | | | | | | | | | | | | | | |
| **OPERATING CASH FLOW** | **($24.6)** | **($21.9)** | **$6.3** | **($18.7)** | **$27.5** | **$18.3** | **($25.4)** | **($38.5)** | **($27.9)** | **$24.6** | **$33.7** | **($24.0)** | **($23.2)** | **$46.1** | **($9.2)** |
| | | | | | | | | | | | | | | | |
| **Non-Operating Items** | | | | | | | | | | | | | | | |
| Credit Facility Payments (Interest + Fees) | $0.5 | $0.0 | $1.0 | $0.3 | $0.5 | $0.0 | $0.9 | $3.2 | $0.3 | $0.4 | $0.0 | $0.0 | $4.1 | – | $8.0 |
| Pre-petition Critical Vendor Payments | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Other Non-Operating Disbursements | – | – | 19.5 | – | – | – | – | 19.5 | – | – | – | – | – | – | 19.5 |
| Ch.11 Professional Fees | 1.2 | 4.2 | 2.3 | 2.2 | 0.8 | 2.7 | 0.9 | 14.3 | 0.7 | 3.3 | 2.4 | 0.5 | 1.2 | 2.2 | 24.5 |
| **Total Non-Operating Items** | **$1.6** | **$4.2** | **$22.8** | **$2.5** | **$1.3** | **$2.7** | **$1.8** | **$37.0** | **$1.0** | **$3.7** | **$2.4** | **$0.5** | **$5.2** | **$2.2** | **$52.0** |
| | | | | | | | | | | | | | | | |
| **NET CASH FLOW** | **($26.2)** | **($26.1)** | **($16.5)** | **($21.2)** | **$26.2** | **$15.6** | **($27.2)** | **($75.5)** | **($28.9)** | **$20.9** | **$31.3** | **($24.5)** | **($28.5)** | **$43.9** | **($61.2)** |
| | | | | | | | | | | | | | | | |
| **Cash Rollforward** | | | | | | | | | | | | | | | |
| Beginning Cash Balance | $183.2 | $157.0 | $130.9 | $114.4 | $93.2 | $119.3 | $134.9 | $183.2 | $107.7 | $78.8 | $99.7 | $131.0 | $106.6 | $78.1 | $183.2 |
| Net Cash Flow | (26.2) | (26.1) | (16.5) | (21.2) | 26.2 | 15.6 | (27.2) | (75.5) | (28.9) | 20.9 | 31.3 | (24.5) | (28.5) | 43.9 | (61.2) |
| **Ending Cash Balance** | **$157.0** | **$130.9** | **$114.4** | **$93.2** | **$119.3** | **$134.9** | **$107.7** | **$107.7** | **$78.8** | **$99.7** | **$131.0** | **$106.6** | **$78.1** | **$122.0** | **$122.0** |