## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ZACHRY HOLDINGS, INC., *et al.*[1] | ) | Case No. 24-90377 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### (I) APPROVING THE DEBTORS' DISCLOSURE STATEMENT ON
### A FINAL BASIS AND (II) CONFIRMING THE FURTHER MODIFIED FIRST
### AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
### OF ZACHRY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

Zachry Holdings, Inc. and its debtor affiliates in the above-captioned Chapter 11 Cases

(collectively, the "**Debtors**"),[2] having:

> a.   commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on May 21, 2024 (the "**Petition Date**");

> b.   continued to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

> c.   Filed, on January 20, 2025, the *Debtors' Revised Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement, (III) Approving the Revised Confirmation Timeline, Solicitation Procedures, Solicitation Package, and Notices; (IV) Establishing Procedures for Objecting to the Disclosure Statement and*

---

[1]   The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814.  A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' Claims and Noticing Agent at www.veritaglobal.net/ZHI.  The location of the Debtors' service address in these Chapter 11 Cases is: P.O. Box 240130, San Antonio, Texas 78224.

[2]   Unless otherwise noted, capitalized terms used but not otherwise defined in this order (the "**Order**") shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (as defined herein), as applicable.  The rules of interpretation set forth in **Article I.B** of the Plan shall apply to this Order.

*First Amended Plan, and (V) Granting Related Relief* [Docket No. 1956] (the "**Solicitation Motion**");

d.   Filed, on January 23 2025, the *Modified First Amended Joint Chapter 11 Plan of Reorganization for Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 1978];

e.   Filed, on January 23, 2025, the *Disclosure Statement for the Modified First Amended Joint Chapter 11 Plan of Reorganization for Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 1986] (the "**Disclosure Statement**");

f.   obtained, on January 24, 2025, entry of the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement, (III) Approving the Revised Confirmation Timeline, Solicitation Procedures, Solicitation Package, and Notices, (IV) Establishing Procedures for Objecting to the Disclosure Statement and Modified First Amended Plan, and (V) Granting Related Relief* [Docket No. 1991] (the "**Disclosure Statement Order**");

g.   caused the Combined Hearing Notice [Docket No. 1991, Ex. 6] to be served on or about January 24, 2025, in accordance with the terms of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the *Procedures for Complex Cases in the Southern District of Texas* (the "**Complex Case Procedures**"), and the Disclosure Statement Order, as evidenced by the certificate of service Filed on February 7, 2025 [Docket No. 2100] (together with all the exhibits thereto, the "**Solicitation Affidavit**");

h.   commenced solicitation, on January 30, 2025, of (i) the Plan, (ii) the Disclosure Statement, (iii) ballots for voting on the Plan to Holders of Class 3 Prepetition Credit Facility Claims [Docket No. 1991, Ex. 2] and Class 6 General Unsecured Claims [Docket No. 1991, Ex. 3], (iv) the Cover Letter [Docket No. 1991, Ex. 12], and (v) the U.S. Trustee's Statement [Docket No. 1991, Ex. 14], in each case in accordance with the terms of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and the Disclosure Statement Order, as evidenced by the Solicitation Affidavit;

i.   caused (i) the *Notice of (A) Non-Voting Status to Holders or Potential Holders of (I) Unimpaired Claims or Equity Interests Conclusively Presumed to Accept the Plan and (II) Impaired Claims or Equity Interests Conclusively Deemed to Reject the Plan and (B) Opportunity for Holders of Claims and Equity Interests to Opt Out of the Third-Party Release* [Docket No. 1991, Ex. 4] (the "**Non-Voting Status Notice**") and (ii) the

*Third-Party Release Opt-Out Form* [Docket No. 1991, Ex. 5] (the "**Opt-Out Form**") to be served on or about January 30, 2025, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and the Disclosure Statement Order, as evidenced by the Solicitation Affidavit;

j.    caused (i) the *Notice of Reclassification and Voting Status* [Docket No. 1991, Ex. 11] (the "**Reclassification Notice**"), (ii) the *Notice of Non-Voting Status with Respect to Disputed Claims* [Docket No. 1991, Ex. 10] (the "**Disputed Claims Notice**"); and (iii) the Opt-Out Form attached to each Reclassification Notice and Disputed Claims Notice to be served on or about January 30, 2025, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and the Disclosure Statement Order, as evidenced by the Solicitation Affidavit;

k.    caused the Employee Letter [Docket No. 1991, Ex. 13] to be served on or about January 30, 2025, in accordance with the Disclosure Statement Order, as evidenced by the Solicitation Affidavit;

l.    caused the *Notice of (I) Combined Hearing to Consider (A) Final Approval of the Disclosure Statement, (B) Confirmation of the Modified First Amended Joint Chapter 11 Plan, and (C) Opportunity to Opt Out of Third-Party Releases, and (II) Related Voting and Objection Deadlines* [Docket No. 1991, Ex. 7] (the "**Publication Notice**") to be published in (i) *The New York Times* (National Edition), on January 28, 2025, (ii) *USA Today* (National Edition) and *Beaumont Enterprise* on January 29, 2025, and (iii) *Port Arthur News* on February 1, 2025 in accordance with the Disclosure Statement Order, as evidenced by the *Affidavit of Publication of the Notice of (I) Combined Hearing to Consider (A) Final Approval of the Disclosure Statement, (B) Confirmation of the Modified First Amended Joint Chapter 11 Plan, and (C) Opportunity to Opt Out of Third-Party Releases, and (II) Related Voting and Objection Deadlines in the New York Times, USA Today, Beaumont Enterprise and the Port Arthur News* Filed on February 6, 2025 [Docket No. 2085] (the "**Publication Affidavit**");

m.    Filed, on February 5, 2025, the *Notice of Filing of the Plan Supplement* [Docket No. 2080], containing the GUC Trust Agreement and the GUC Trust Note Term Sheet;

n.    Filed, on February 11, 2025, the *Notice of Filing of Amended GUC Note Term Sheet* [Docket No. 2122];

o.    caused the *Statement of the Statutory Unsecured Claimholders' Committee Regarding the Modified First Amended Joint Chapter 11 Plan of Reorganized of Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 2123], to be served on or about February 12, 2025, as evidenced by the

*Certificate of Service* Filed on February 20, 2025 [Docket No. 2325] (the "**Supplemental Affidavit**");

p.  Filed, on February 13, 2025, the *Notice of Filing of the Second Plan Supplement* [Docket No. 2150];

q.  caused the *Notice of Filing of the Second Plan Supplement* [Docket No. 2150] to be served on or about February 13, 2025, as evidenced by the Supplemental Affidavit;

r.  caused (i) the *Notice of Assumption of Executory Contract or Unexpired Lease and Cure Amounts, if Any* [Docket No. 1991, Ex. 8], (ii) the *Assumption List* [Docket No. 2150, Ex. B], (iii) the *Notice of Rejection of Executory Contract or Unexpired Lease* [Docket No. 1991, Ex. 9], (iv) the *Rejection List* [Docket No. 2150, Ex. C]; and (v) the *GPX Excess Claims Stipulation* [Docket No. 2150, Ex. G] to be served on affected counterparties on or about February 14, 2025, as evidenced by the Supplemental Affidavit;

s.  Filed, on February 19, 2025, the *Notice of Filing of the Third Plan Supplement* [Docket No. 2316];

t.  caused the *Notice of Filing of the Third Plan Supplement* to be served on or about February 19, 2025, as evidenced by the Supplemental Affidavit;

u.  Filed, on February 23, 2025, the *Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Further Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 2361] (the "**Confirmation Brief**"); and

v.  Filed, on February 23, 2025, the *Further Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 2362] (as amended, supplemented, or otherwise modified from time to time, the "**Plan**"), attached hereto as **Exhibit A**;

w.  Filed, on February 24, 2025, (i) the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Zachry Holdings, Inc. in Support of (I) Approval of the Disclosure Statement on a Final Basis and (II) Confirmation of the Further Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 2380] (the "**Meghji Declaration**") and (ii) the *Declaration of Jason New in Support of (I) Approval of the Disclosure Statement on a Final Basis and (II) Confirmation of the Further Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and Its Debtor Affiliates*

[Docket No. 2381] (the "**New Declaration**" and, together with the Meghji Declaration, the "**Confirmation Declarations**");

x.     Filed, on February 25, 2025, the *Declaration of P. Joseph Morrow IV with Respect to the Tabulation of Votes on the Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 2399] (the "**Voting Affidavit and Voting Report**" and, together with the Solicitation Affidavit, the Publication Affidavit, and the Supplemental Affidavit, the "**Affidavits**");

y.     Filed, on February 25, 2025, the *Notice of Filing of the Fourth Plan Supplement* [Docket No. 2406]; and

z.     Filed, on February 26, 2025, the *Notice of Filing of the Fifth Plan Supplement* [Docket No. 2417] (together, with the *Notice of Filing of the Plan Supplement,* the *Notice of Filing of Amended GUC Note Term Sheet*, the *Notice of Filing of the Second Plan Supplement*, the *Notice of Filing of the Third Plan Supplement*, and the *Notice of Filing of the Fourth Plan Supplement* as well as any amendments and supplements Filed prior to the Effective Date, the "**Plan Supplement**").

The Court having:

a.     entered the Disclosure Statement Order on January 24, 2025;

b.     set February 20, 2025 at 4:00 p.m. (prevailing Central Time) as the deadline for voting on the Plan (the "**Voting Deadline**");

c.     set February 20, 2025 at 4:00 p.m. (prevailing Central Time) as the deadline for opting out of the Third-Party Release (the "**Opt-Out Deadline**");

d.     set February 20, 2025 at 4:00 p.m. (prevailing Central Time) as the deadline for filing objections to final approval of the Disclosure Statement and Confirmation of the Plan (the "**Objection Deadline**");

e.     scheduled February 26, 2025 at 1:30 p.m. (prevailing Central Time) as the date and time for the hearing to consider approval of the Disclosure Statement on a final basis and Confirmation of the Plan pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, as set forth in the Disclosure Statement Order (the "**Combined Hearing**");

f.     reviewed the Plan, the Disclosure Statement, the Solicitation Motion, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Affidavits, the Combined Hearing Notice, the Publication Notice, and all Filed pleadings, exhibits, statements, and comments regarding approval

of the Disclosure Statement on a final basis and Confirmation of the Plan, including all objections, statements, and reservations of rights;

g.    considered the Restructuring Transactions incorporated and described in the Plan or Plan Supplement, as applicable;

h.    held the Combined Hearing;

i.    reviewed the discharge, compromises, settlements, releases, exculpation, and injunctions set forth in the Plan;

j.    heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement on a final basis and Confirmation of the Plan;

k.    considered all oral representations, live testimony, proffered testimony, documents, filings, exhibits, and other evidence regarding approval of the Disclosure Statement on a final basis and Confirmation of the Plan;

l.    overruled (i) any and all objections to approval of the Disclosure Statement on a final basis and Confirmation of the Plan, except as otherwise stated or indicated on the record, and/or (ii) all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

m.    taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents Filed in support of approval of the Disclosure Statement on a final basis and Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court makes and issues the following findings of fact and conclusions of law, and orders:

**Findings of Fact and Conclusions of Law**

IT IS HEREBY FOUND, DETERMINED, ADJUDGED, DECREED, AND ORDERED THAT:

**A.  Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.  Jurisdiction, Venue, and Core Proceeding.**

2.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code are core proceedings as defined in 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.  Eligibility for Relief.**

3.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of These Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.   In accordance with the *Order (I) Directing Joint Administration of Cases and (II) Waiving Requirements of Bankruptcy Code Section 345(c)(1) and Bankruptcy Rules 1005 and 2002(n)* [Docket No. 21], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  On June 4, 2024, the U.S. Trustee appointed the Statutory Unsecured Claimholders' Committee (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [Docket No. 176] and reconstituted the Committee on January 27, 2025 [Docket No. 2003].

**E.      Judicial Notice.**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents Filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**F.      Plan Supplement.**

6.      The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good and proper notice of the Filing of the Plan Supplement in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and requirements.  No other or further notice will be required with respect to the Plan Supplement or any of the documents contained therein or related thereto.  All documents included in the Plan Supplement and all other documents

necessary or appropriate to implement the Plan are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement and any of the documents contained therein or related thereto or the Plan before the Effective Date.

        **H.**      **Objections Overruled.**

7.      Any resolution or disposition of objections (whether formal or informal), reservations of rights, statements, or joinders with respect to approval of the Disclosure Statement on a final basis and Confirmation explained or otherwise ruled upon by the Court on the record at the Combined Hearing is hereby incorporated by reference.  All unresolved objections, reservations of rights, statements, and joinders are hereby overruled on the merits.

        **I.**      **Modifications to the Plan.**

8.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan or Plan Supplement Filed after the commencement of solicitation or described or set forth in this Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.  These modifications are consistent with the disclosures previously made in the Disclosure Statement and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, the Plan is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**J.      Adequacy of the Disclosure Statement.**

9.      The Disclosure Statement contains "adequate information" as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code with respect to the Debtors, the Plan, and the transactions contemplated therein.

**K.      Disclosure Statement Order and Notice.**

10.     The Disclosure Statement Order conditionally approved the Disclosure Statement and established the Voting Deadline, Objection Deadline, and Opt-Out Deadline.  As evidenced by the Affidavits, and the record in the Chapter 11 Cases, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Materials, the Plan Supplement, the discharge, compromise, settlement, release, exculpation, and injunction provisions contained in the Plan, the ability to opt-out of the Plan's Third-Party Release, the Combined Hearing, the Voting Deadline, the Objection Deadline, the Opt-Out Deadline, and any other applicable dates described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules (including Bankruptcy Rules 2002(b), 3016, 3017, and 3020(b)), the Bankruptcy Local Rules, the Complex Case Procedures, and the procedures set forth in the Disclosure Statement Order.  Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

**M.      Ballots.**

11.     The Classes of Claims entitled under the Plan to vote to accept or reject the Plan (the "**Voting Classes**") are set forth below:

| Class | Designation |
|-------|-------------|
| 3 | Prepetition Credit Facility Claims |
| 6 | General Unsecured Claims |

12. As determined in the Disclosure Statement Order, the ballots (the "**Ballots**") the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.

**N.     Solicitation.**

13. As described in the Voting Affidavit and Voting Report, the solicitation of votes on the Plan complied with the procedures set forth in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations.

14. As described in the Voting Affidavit and Voting Report, as applicable, the Solicitation Packages were transmitted and served on all Holders in the Voting Classes in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable non-bankruptcy law.  Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No further notice is required.

15. As set forth in the Voting Affidavit and Voting Report, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim as of January 22, 2025 (the "**Voting Record Date**").  The establishment and notice of the Voting Record Date was reasonable and sufficient.

16.     The period during which the Debtors solicited acceptances or rejections of the Plan was a reasonable and sufficient period of time for each Holder in the Voting Classes to make an informed decision to accept or reject the Plan.

17.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (Deferred Compensation Plan Claims), Class 5 (Convenience Claims), and Class 9 (Zachry Interests) (collectively, the "**Deemed Accepting Classes**") are Unimpaired and conclusively presumed to have accepted the Plan.  The Debtors were therefore not required to, and did not, solicit votes from the Deemed Accepting Classes.  Holders of Claims in Class 7 (Intercompany Claims) and Holders of Interests in Class 8 (Intercompany Interests) are Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated or converted to equity, as applicable) or are Impaired and deemed to reject the Plan (to the extent set off, settled, addressed, distributed, contributed, merged, cancelled, or released), and, in either event, are not entitled to vote to accept or reject the Plan.  The Debtors served Holders in the non-voting Classes with the Combined Hearing Notice and the Non-Voting Status Notice, including the Opt-Out Form.

18.     The Debtors served the Employee Letter via first class mail on all current employees of the Debtors that do not hold Claims or Interests (the "**Non-Creditor Employees**"). The Employee Letter provided adequate notice of the Combined Hearing, generally described the Plan, explained that Non-Creditor Employees were specifically excluded from the Plan's Third-Party Release, and advised Non-Creditor Employees how they could request a Ballot or obtain further information about the Chapter 11 Cases from the Claims and Noticing Agent.

19.     The Debtors also served the Disputed Claims Notice and the Opt-Out Form on certain Holders of Disputed Claims in these Chapter 11 Cases.  The Disputed Claims Notice

provided adequate notice of the Combined Hearing, the Rule 3018 Motion Deadline, the procedures for challenging the Debtors' disallowance of Disputed Claims, and the release, exculpation, and injunction provisions of the Plan.

20.     The Debtors served the Combined Hearing Notice and/or the Non-Voting Status Notice on the entire creditor matrix (except the Non-Creditor Employees served with the Employee Letter).   The Combined Hearing Notice and/or the Non-Voting Status Notice adequately summarized the material terms of the Plan, the classification and treatment of claims, and the release, exculpation, and injunction provisions of the Plan.   Further, because stakeholders were able to opt out of the Third-Party Release through the Ballot or the Opt-Out Form, every known stakeholder affected by the Third-Party Release (including Unimpaired creditors) was provided with the means by which the stakeholders could opt out of the Third-Party Release.

**O.     Voting.**

21.     As evidenced by the Voting Affidavit and Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, the Disclosure Statement Order, and any applicable non-bankruptcy law, rule, or regulation.   As evidenced by the Voting Affidavit and Voting Report, Classes 3 and 6 have voted to accept the Plan in accordance with the requirements of sections 1126 and 1129 of the Bankruptcy Code.

**P.     Plan Supplement.**

22.     The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and requirements, and no other or further notice is required.   All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.   Subject to the

terms of the Plan, the Debtors may alter, amend, update, or modify the Plan Supplement before the Effective Date.  Holders of Claims and Interests were provided, due, adequate, and sufficient notice of the Plan Supplement.

### Q.  Bankruptcy Rule 3016.

23.  The Plan and any modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately Filed the Disclosure Statement and Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement and Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined by such injunction and identify the Entities that will be subject to such injunction, thereby satisfying Bankruptcy Rule 3016(c).

### R.  Burden of Proof.

24.  The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.  Each witness who testified or submitted a declaration on behalf of the Debtors or any other party, in support of the Disclosure Statement, Plan, and Confirmation in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

### S.  Compliance with Bankruptcy Code Requirements – 11 U.S.C. § 1129(a)(1).

25.  The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

### i.   Proper Classification – 11 U.S.C. §§ 1122 and 1123.

26.    The classification of Claims under the Plan is proper and satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  **Article III** of the Plan provides for the separate classification of Claims and Interests into nine (9) Classes other than Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Claims for Restructuring Expenses, which need not be classified.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Class of Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

### ii.   Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2).

27.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. **Article III** of the Plan specifies that Claims, as applicable, in the following Classes are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Claims |
|---|---|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 4 | Deferred Compensation Plan Claims |
| 5 | Convenience Claims |
| 9 | Zachry Interests |

Additionally, **Article II** of the Plan specifies that Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Claims for Restructuring Expenses will be paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

### iii.   Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3).

28.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. **Article III** of the Plan specifies that Claims in the following Classes (the "**Impaired Classes**")

are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Claims |
|-------|--------|
| 3 | Prepetition Credit Facility Claims |
| 6 | General Unsecured Claims |

### iv.      No Discrimination – 11 U.S.C. § 1123(a)(4).

29.     The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to less favorable treatment on account of such Claim or Interest.

### v.      Adequate Means for Plan Implementation – 11 U.S.C. § 1123(a)(5).

30.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in **Article IV** and elsewhere in the Plan, and in the exhibits and attachments to the Plan (including the Plan Supplement) and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including: (a) the general settlement of Claims and Interests; (b) the GPX Settlement, previously approved by this Court and subject to the Plan and the GPX Settlement Documents; (c) authorization for the Debtors and/or Reorganized Debtors to take all actions necessary to effectuate the Plan, including those actions necessary or appropriate to effectuate the Restructuring Transactions, and any restructuring transaction steps set forth in the Plan Supplement, as the same may be modified or amended from time to time prior to the Effective Date; (d) the entry into, delivery of, and implementation of the A&R Credit Facility Documents and other transaction documents contemplated by the Plan; (e) the issuance of the Sunbelt Promissory Note; (f) the entry into, delivery of, and implementation of the GUC Note Documents and issuance of the GUC Promissory Notes;  (g) the entry into, delivery of, and implementation of

16

the Exit Intercreditor Agreement; (h) the delivery and implementation of the Parent Capital Contribution; (i) the funding and sources of consideration for the Plan distributions, including the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory Notes, the Parent Capital Contribution, and Cash on hand; (j) the preservation of the Debtors' corporate existence following the Effective Date (except as otherwise provided in the Plan); (k) the vesting of the Estates' assets in the respective Reorganized Debtors; (l) the cancellation of certain existing agreements as provided in the Plan and this Order; (m) the authorization and approval of corporate actions under the Plan; (n) the adoption and re-affirmation of the Organizational Documents; (o) the effectuation and implementation of other documents and agreements contemplated by, or necessary to effectuate, the transactions contemplated by the Plan; (p) the assumption of certain Employee Obligations and Indemnification Obligations; (q) the preservation of Claims and Causes of Action not released pursuant to the Plan, including as set forth in the Schedule of Retained Causes of Action; and (r) the closing of the Chapter 11 Cases as provided in the Plan.

31.     The precise terms governing the execution of these transactions are set forth in greater detail in the Plan or form of agreements or other documents included in the Plan Supplement or other documents related to the Plan, including the A&R Credit Facility Term Sheet, the GUC Note Term Sheet, and the Sunbelt Term Sheet.

### vi.     Voting Power of Equity Securities – 11 U.S.C. § 1123(a)(6).

32.     The Plan is consistent with the requirements of section 1123(a)(6) of the Bankruptcy Code.  To the extent required to comply with section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtors are prohibited from issuing nonvoting equity securities, notwithstanding anything to the contrary in the Plan or Plan Supplement.

### vii.    Directors and Officers – 11 U.S.C. § 1123(a)(7).

33.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. **Article IV.K** of the Plan provides that the directors and officers of each Reorganized Debtor shall consist of the current directors and officers of each respective Debtor.

### viii.    Impairment / Unimpairment of Classes – 11 U.S.C. § 1123(b)(1).

34.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. **Article III** of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

### ix.    Assumption – 11 U.S.C. § 1123(b)(2).

35.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. **Article V** of the Plan provides for the assumption of all of the Debtors' Executory Contracts and Unexpired Leases, other than the Rejected Contracts and/or Unexpired Leases identified on the Rejection List and as otherwise provided in **Article V.A** of the Plan, and the payment of Cure Claims, if any, related thereto, not previously assumed, assumed and assigned, or rejected during these Chapter 11 Cases under section 365 of the Bankruptcy Code. The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts to Affiliates.

36.    The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on, and within, the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties-in-interest in the Chapter 11 Cases.  Entry of this Order by the Court shall constitute approval of such assumptions, assumption and assignments, and/or rejections, as applicable, including the assumption of the Executory Contracts or Unexpired Leases as provided in the

Assumption List and Rejection List included in the Plan Supplement pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

> **x.      Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action – 11 U.S.C. § 1123(b)(3).**

37.      **General Compromise and Settlement of Claims and Interests.**  In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan, including all General Unsecured Claims and GPX Claims and any challenge to the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Credit Facility Claims, whether under any provision of chapter 5 of the Bankruptcy Code, based on any equitable theory, or otherwise.  Entry of this Order shall constitute the entry of an order approving the settlement of all such Claims, Interests, and controversies under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.   The compromise and settlement of such Claims and Interests embodied in the Plan and Reinstatement and Unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

38.      **GPX Settlement.**   The terms of the GPX Settlement, as set forth in the GPX Settlement Documents, are incorporated into, and are an integral part of, the Plan.  As set forth in **Article IV.B** of the Plan, the GPX Interim Settlement Order, and the GPX Final Settlement Order, the GPX Settlement is a good-faith compromise and settlement of all disputes, controversies, claims, and causes of action among the GPX Settlement Parties arising out of or otherwise related to the GPX Project and the matters described in the GPX Settlement Term Sheet; the GPX Settlement is the product of extensive arm's-length, good faith negotiations and represents a fair

and reasonable compromise among the GPX Settlement Parties; the GPX Settlement is reasonable, fair, equitable, appropriate, and in the best interests of each of the Debtors, their estates, and all vendors and subcontractors asserting Claims related to the GPX Project; and the Debtors' reasonably exercised their business judgment when determining to enter into the GPX Settlement.

39.     The GPX Excess Claims Stipulation sets forth an agreement by the Debtors and Golden Pass on the amount of Excess Claims (as defined in the GPX Excess Claims Stipulation) and related matters.  Each term of the GPX Excess Claims Stipulation is incorporated into, and is an integral part of, the Plan and this Order.  In addition, for the avoidance of doubt, each of the stipulated facts among the Debtors and Golden Pass set forth in the GPX Excess Claims Stipulation, as well as Schedules 1 through 4 of the GPX Excess Claims Stipulation, are incorporated by reference into this Order as if set forth fully herein.

40.     The Debtors and Golden Pass engaged in good faith and diligent analysis, over several months following this Court's interim and final approval of the GPX Settlement, to identify all GPX Claims, reconcile such GPX Claims, and determine the total amount of potential Excess Claims, in each case in compliance with, and furtherance of, the terms of the GPX Settlement.  The Debtors and Golden Pass, among other things, reviewed the Proofs of Claim timely filed in these Chapter 11 Cases to identify asserted GPX Claims; sent letters to GPX Project vendors and subcontractors instructing them to submit all invoices for ZII's share of Pool A and Pool B obligations accruing through July 25, 2024, by September 16, 2024; reviewed all asserted Pool A and Pool B obligations submitted by such vendors; shared their analyses of the potential GPX Claims pool and direct cap payments calculation with each other; engaged in regular communications regarding accounting, reconciliation, and payment issues arising in connection with the GPX Settlement, and provided notice of the Excess Claim Stipulation and the Schedules

thereto to all known parties-in-interest.  Based upon the Bar Date and the outreach by the Debtors and Golden Pass to vendors potentially asserting Pool A and Pool B obligations, all vendors and subcontractors in respect of the GPX Project have had a reasonable opportunity to identify and assert GPX Claims payable under the GPX Settlement.  The schedules to the GPX Excess Claims Stipulation disclose all GPX Claims paid to date by Golden Pass, all GPX Claims to be paid by Golden Pass, and the universe of potentially valid GPX Claims, in each case identified during the Debtors' and Golden Pass's good faith reconciliation of GPX Claims that resulted in their determination of Excess Claims.  The determination of Excess Claims set forth in the GPX Excess Claims Stipulation is reasonable under the circumstances and based on the good faith reconciliation and review of all potential GPX Claims conducted by the Debtors and Golden Pass.

41.     The GPX Excess Claims Stipulation is a good-faith compromise and settlement of all disputes, controversies, claims, and causes of action among the Debtors and Golden Pass arising out of or otherwise related to the reconciliation and determination of Excess Claims under the GPX Settlement.  The GPX Excess Claims Stipulation is the product of extensive arm's-length, good faith negotiations and represents a fair and reasonable compromise among the Debtors and Golden Pass.  The GPX Excess Claims Stipulation is reasonable, fair, equitable, appropriate, and in the best interests of each of the Debtors, their estates, and all vendors and subcontractors asserting Claims related to the GPX Project.  Entry into the GPX Excess Claims Stipulation reflects a sound exercise of the Debtors' business judgment.

42.     **Debtor Release.**  **Article VIII.C** of the Plan describes certain releases granted by the Debtors (the "**Debtor Release**").  The Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the Debtor Release.  The Debtor Release is a necessary and integral element of the Plan, and is fair, reasonable, and in the best

interests of the Debtors, the Estates, and Holders of Claims and Interests.  The Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) narrowly tailored to the circumstances of the Chapter 11 Cases; and (g) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.  The Debtor Release for the Debtor Related Parties is appropriate because the Debtor Related Parties share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, actively participated in meetings, negotiations, and implementation during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

43.     The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' chapter 11 efforts.  Such protections from liability facilitated the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan. In addition, the Debtors are not aware of any (a) significant potential claims that are being released; or (b) pending litigation that would be discontinued as a result of the Debtor Release.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

44.     For the avoidance of doubt, and notwithstanding anything to the contrary herein or in the Plan, no Claim or Cause of Action referenced on the Schedule of Retained Causes of Action shall be released by the Debtors or a Debtor Related Party pursuant to the Debtor Release.

45.     **Third-Party Release.  Article VIII.D** of the Plan describes certain releases granted by the Releasing Parties (the "**Third-Party Release**").  The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Combined Hearing Notice sent to Holders of Claims and Interests, the Non-Voting Status Notice sent to all Holders of Claims and Interest not entitled to vote on the Plan, the Ballots sent to all Holders of Claims entitled to vote on the Plan, the Publication Notice published in: (a) *The New York Times* (National Edition) on January 28, 2025, (b) *USA Today* (National Edition) on January 29, 2025, (c) *Beaumont Enterprise*, on January 29, 2025, and (d) *Port Arthur News*, on February 1, 2025, in each case, unambiguously stated that the Plan contains the Third-Party Release.  Such release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests.  Also, the Third-Party Release is: (a) consensual; (b) essential to the formulation, Confirmation, and implementation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the payment in full of all General Unsecured Claims pursuant to the terms of the Plan; (d) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) narrowly tailored to the circumstances of the Chapter 11 Cases; and (i) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  As set forth on the record

at the Combined Hearing and in **<u>Article I.A.128.n</u>** of the Plan, each Related Party of a Releasing Party shall be a Releasing Party solely to the extent an applicable principal Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law.

46.     The Third-Party Release is consensual as to all relevant parties, including all Releasing Parties, and such parties were provided notice of the Chapter 11 Cases, the Plan, and the deadline to object to Confirmation of the Plan, received the Combined Hearing Notice, a Ballot, and/or the Non-Voting Status Notice, and were properly informed that any Holder of a Claim against or Interest in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form, returned in advance of the Voting Deadline, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Non-Voting Status Notice, the Combined Hearing Notice, and the Opt-Out Form.

37.     The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, is consistent with applicable law, including *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071 (2024), and is approved.  **For the avoidance of doubt, and notwithstanding anything to the contrary, any party who timely opted-out of the Third-Party Release in connection with the solicitation permitted under this Court's Order [Docket No. 1392] or the Disclosure Statement Order [Docket No. 1191] is not**

bound by the Third-Party Release and also is not a Released Party under the Plan and this
Order.

47.    **Exculpation.**    The exculpation, described in **Article VIII.E** of the Plan (the
"**Exculpation**"), is appropriate under applicable law, including *In re Highland Capital Mgmt.,
L.P.*, 48 F. 4th 419 (5th Cir. 2022), because it was proposed in good faith, was formulated
following extensive good-faith, arm's-length negotiations with key constituents, and is
appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated
Party has participated in these Chapter 11 Cases in good faith and is appropriately released and
exculpated from any obligation, Cause of Action, or liability for any prepetition or postpetition act
taken or omitted to be taken in connection with, relating to, or arising out of the Debtors'
restructuring efforts, these Chapter 11 Cases, the formulation, preparation, dissemination,
negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release,
or other agreement or document created or entered into, in connection with, or pursuant to the
Disclosure Statement or the Plan, including the A&R Credit Facility, the Sunbelt Promissory Note,
the GUC Promissory Notes, the GUC Note Documents, the Parent Capital Contribution, the GPX
Settlement Documents, the Cash Collateral Order, the Disclosure Statement, the filing of these
Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration
and implementation of the Plan, or the distribution of property under the Plan. The Exculpated
Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good
faith and in compliance with the applicable laws with regard to the solicitation of votes and
distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such
distributions shall not be, liable at any time for the violation of any applicable law, rule, or
regulation governing the solicitation of acceptances or rejections of the Plan or such distributions

made pursuant to the Plan. Notwithstanding the foregoing, the Exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. The Exculpation, including its carveout for actual fraud, willful misconduct, and gross negligence, is consistent with applicable law in this jurisdiction.

48.     The Exculpated Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

49.     **Injunction.**  The injunction provision set forth in **Article VIII.F** of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, the Exculpation, and the GPX Settlement, and is narrowly tailored to achieve this purpose.

50.     Notwithstanding anything to the contrary in this Order, no Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to **Articles VIII.C**, **VIII.D**, **VIII.E**, or **VIII.F** of the Plan, without the Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable.

51.     **Preservation of Causes of Action.**  The provisions set forth in **Article IV.N** of the Plan regarding the preservation of Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights, as applicable, to commence, prosecute, or settle such retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

52.     **Lien Release.**  The release and discharge of mortgages, deeds of trust, Liens, pledges, bond claims, or other security interests against any property of the Estates described in **Article VIII.B** of the Plan (the "**Lien Release**") is essential to the Plan and necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

**xi.     Additional Plan Provisions – 11 U.S.C. § 1123(b)(6).**

53.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**T.     Cure of Defaults – 11 U.S.C. § 1123(d).**

54.     **Article V.C** of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  The Debtors or the Reorganized Debtors, as applicable, shall pay the Cure Claims, if any, on the Effective Date, or as soon as reasonably practicable thereafter, in the ordinary course of the Debtors' business if not yet due on the Effective Date, or on such other

27

terms as the parties to any Executory Contract or Unexpired Lease may agree.  If there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any objection to the assumption of any Executory Contract or Unexpired List assumed pursuant to the Plan, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory or Unexpired Lease.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.

**U.    Debtor Compliance with the Bankruptcy Code – 11 U.S.C. § 1129(a)(2).**

55.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and, thus, have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and Bankruptcy Rules 2022, 3017, 3018, and 3019.  The Debtors and their agents transmitted the Solicitation Materials and related documents and solicited and tabulated votes with respect to the Plan fairly, in good faith, and in compliance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures, including, but not limited to, sections 1125 and 1126(b) of the Bankruptcy Code.

**V.    Plan Proposed in Good Faith – 11 U.S.C. § 1129(a)(3).**

56.    The Debtors have proposed the Plan (including the Plan Supplement and all other documents necessary or appropriate to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining

that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation (including the overwhelming support of Holders of Claims for the Plan), and the transactions to be implemented pursuant thereto. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Plan, the Disclosure Statement, the hearing to conditionally approve the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in the Chapter 11 Cases. These Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate and honest purpose of maximizing the value of the Estates and allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy to allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources. Further, the Plan's classification, settlement, discharge, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and each is integral to the Plan, supported by valuable consideration, and necessary to the Debtors' successful reorganization. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**W.      Payment for Services or Costs and Expenses – 11 U.S.C. § 1129(a)(4).**

57.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**X.      Directors, Officers, and Insiders – 11 U.S.C. § 1129(a)(5).**

58.     **Article IV.K** of the Plan sets forth that the directors and officer of each Reorganized Debtor shall consist of the current directors and officers of each respective Debtor.

Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

### Y.    No Rate Changes – 11 U.S.C. § 1129(a)(6).

59.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  Further, as the Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission, section 1129(a)(6) of the Bankruptcy Code is satisfied.

### Z.    Best Interest of Creditors – 11 U.S.C. § 1129(a)(7).

60.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Meghji Declaration, the liquidation analysis attached as **Exhibit C** to the Disclosure Statement, and the other evidence related thereto in support of the Plan that was proffered prior to, or in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims in each Class will recover at least as much under the Plan on account of such Claim, as of the Effective Date, as such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### AA.    Acceptance by Certain Classes – 11 U.S.C. § 1129(a)(8).

61.    Classes 1, 2, 4, 5, and 9 constitute the Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  As evidenced by the Voting Affidavit and Voting Report, Classes 3 and 6 have voted to accept the Plan.  Holders of Claims and Interests in Classes 7 and 8 are Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated or converted to equity,

30

as applicable) or are Impaired and deemed to reject the Plan (to the extent set off, settled, addressed, distributed, contributed, merged, cancelled, or released), and, in either event, are not entitled to vote to accept or reject the Plan.  Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**BB.     Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code – 11 U.S.C. § 1129(a)(9).**

62.     The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Claims for Restructuring Expenses under **Article II** of the Plan, and of Other Priority Claims under **Article III** of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**CC.     Acceptance by At Least One Impaired Class – 11 U.S.C. § 1129(a)(10).**

63.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Affidavit and Voting Report, Classes 3 and 6, which are Impaired, voted to accept the Plan by the requisite number and amount of Claims, determined without including any acceptance of the Plan by any insider (as such term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**DD.     Feasibility – 11 U.S.C. § 1129(a)(11).**

64.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The Meghji Declaration, the financial projections attached as **Exhibit B** to the Disclosure Statement, and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, prior to, or in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions;

(c) have not been rebutted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or their successors under the Plan, except as may be provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan, including on account of any contingent, unliquidated, and other Disputed Claims that ultimately become Allowed after the Effective Date. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

> **EE.     Payment of Fees – 11 U.S.C. § 1129(a)(12).**

65.     **Article XII.D** of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

> **FF.     Continuation of Employee Benefits – 11 U.S.C. § 1129(a)(13).**

66.     The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. **Article IV.L** of the Plan provides that, as of the Effective Date, all obligations related to the Deferred Compensation Plan are assumed and all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

> **GG.     Non-Applicability of Certain Sections – 11 U.S.C. § 1129(a)(14), (15), and (16).**

67.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not non-profit corporations.

> **HH.     "Cram Down" Requirements – 11 U.S.C. § 1129(b).**

68.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Classes 7 and 8 are deemed to reject the Plan (to the extent set off,

settled, addressed, distributed, contributed, merged, cancelled, or released), the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan does not discriminate unfairly with respect to Classes 7 and 8 because all similarly situated creditors and interest holders will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. *Third*, the Plan has been proposed in good faith, is reasonable, no Holder of a Claim or Interest in a Class senior to each such Class is receiving more than 100% on account of its Claim or Interest, and the treatment provided to Classes 7 and 8 has no economic substance and is intended to allow the Debtors to modify their intercompany structure and liabilities in order to implement the Restructuring Transactions under the Plan. *Fourth*, no Holders of an Intercompany Claim or Intercompany Interest has objected to the reinstatement of Zachry Interests under the Plan. Accordingly, the Plan is fair and equitable to all Holders of Claims and Interests in Classes 7 and 8. Therefore, the Plan satisfies section 1129(b) of the Bankruptcy Code and can be confirmed.

## II. Only One Plan – 11 U.S.C. § 1129(c).

69.     The Plan (including previous versions thereof) is the only chapter 11 plan filed in each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

## JJ. Principal Purpose of the Plan – 11 U.S.C. § 1129(d).

70.     As evidenced by its terms, the principal purpose of the Plan is to reorganize the Debtors, and not to avoid such obligations. Further, no Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**KK.** **Not Small Business Cases – 11 U.S.C. § 1129(e).**

71. None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**LL.** **Good Faith Solicitation – 11 U.S.C. § 1125(e).**

72. The Debtors and each of the Released Parties and Exculpated Parties have acted fairly, in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and Consummation of the Plan, including the negotiation, execution, and delivery of the A&R Credit Facility Documents, the Sunbelt Promissory Note, the GUC Promissory Notes, the GUC Note Documents, the Exit Intercreditor Agreement, and the Parent Capital Contribution, the solicitation and tabulation of votes on the Plan, and the activities described in section 1125 of the Bankruptcy Code, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, and solicitation of acceptances of the Plan, as applicable, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

73. The Debtors and their Related Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(g), with regard to the distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan and this Order.

**MM.  Satisfaction of Confirmation Requirements.**

74.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**NN.  Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

75.     Each of the conditions precedent to the Effective Date, as set forth in **Article IX.A** of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with **Article IX.B** of the Plan.

**OO.  Implementation.**

76.     All documents and agreements necessary to implement the Plan, including the Plan Supplement, and all other relevant and necessary or desirable documents have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements, not avoidable and not in conflict with any federal, state, or foreign law.  Consummation of the transactions contemplated by each such document or agreement is in the best interest of the Debtors, their Estates, and Holders of Claims.  The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**PP.  Disclosure of Facts.**

77.     The Debtors have disclosed all material facts regarding the Plan, including with respect to the Restructuring Transactions, and the fact that each Reorganized Debtor will emerge from its Chapter 11 Case as a validly existing corporation, limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations.

**QQ.  Good Faith.**

78.     The Debtors, the Committee, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith within the meaning of section 1125(e) of the

Bankruptcy Code if they proceed to: (a) consummate the Plan, the Restructuring Transactions, the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory Notes, the GUC Note Documents, the Exit Intercreditor Agreement, the Parent Capital Contribution, and the agreements, settlements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Order; and (b) take any actions authorized and directed or contemplated by this Order.

**RR.    A&R Credit Facility.**

79.     The terms and conditions of the A&R Credit Facility and the Debtors' entry into the A&R Credit Facility Documents, including all actions, undertakings, and transactions contemplated thereby, and payment of all fees, indemnities, and expenses provided for thereunder, are essential elements of the Plan, necessary for Confirmation and Consummation of the Plan, critical to the overall success and feasibility of the Plan, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the A&R Credit Facility and have provided adequate notice thereof.  The A&R Credit Facility was negotiated in good faith and at arm's-length among the Debtors, the A&R Credit Facility Agent, the A&R Credit Facility Lenders, and any credit extended and loans made to the Reorganized Debtors by the A&R Credit Facility Lenders and any fees and expenses paid thereunder are deemed to have been extended, issued, and made in good faith and for legitimate business purposes.  The execution, delivery, and performance by the Debtors or the Reorganized Debtors, as applicable, of any of the A&R Credit Facility Documents, and any agreements related thereto and compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof, is authorized by, and will not conflict with, the terms of the Plan or this Order.

**SS.** **Sunbelt Promissory Note.**

80. The terms and conditions of the Sunbelt Promissory Note and the Debtors' entry into the Sunbelt Promissory Note, including all actions, undertakings, and transactions contemplated thereby, are essential elements of the Plan, necessary for Confirmation and Consummation of the Plan, critical to the overall success and feasibility of the Plan, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into the Sunbelt Promissory Note and have provided adequate notice thereof. The Sunbelt Promissory Note was negotiated in good faith and at arm's-length among the Debtors and Sunbelt, and the Sunbelt Promissory Note is deemed to have been extended, issued, and made in good faith and for legitimate business purposes. The execution, delivery, and performance by the Debtors or the Reorganized Debtors, as applicable, of the Sunbelt Promissory Note, and any agreements related thereto and compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof, is authorized by, and will not conflict with, the terms of the Plan or this Order.

**TT.** **GUC Promissory Notes.**

81. The terms and conditions of the GUC Promissory Notes and the Debtors' entry into the GUC Note Documents, including all actions, undertakings, and transactions contemplated thereby, and payment of all fees, indemnities, and expenses provided for thereunder, are essential elements of the Plan, necessary for Confirmation and Consummation of the Plan, critical to the overall success and feasibility of the Plan, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into the GUC Note Documents and have provided adequate notice thereof. The GUC Note Documents were negotiated in good faith and at arm's-length among the Debtors and the Committee, and the GUC Promissory Notes and any fees and expenses paid thereunder

are deemed to have been extended, issued, and made in good faith and for legitimate business purposes.  The execution, delivery, and performance by the Debtors or the Reorganized Debtors, as applicable, of any of the GUC Note Documents, and any agreements related thereto and compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof, is authorized by, and will not conflict with, the terms of the Plan or this Order.

      **UU.**    **Exit Intercreditor Agreement**

      82.    The terms and conditions of the Exit Intercreditor Agreement (which shall be consistent in all material respects with the terms set forth in the term sheet attached hereto as **Exhibit B**, the "**Exit ICA Term Sheet**"), and the Debtors' entry into the Exit Intercreditor Agreement, including all actions, undertakings, and transactions contemplated thereby, are essential elements of the Plan, necessary for Confirmation and Consummation of the Plan, critical to the overall success and feasibility of the Plan, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the Exit Intercreditor Agreement and have provided adequate notice thereof.  The Exit ICA Term Sheet setting forth the material terms of the Exit Intercreditor Agreement was negotiated in good faith and at arm's-length among the Debtor, the Committee, the A&R Credit Facility Agent, and Sunbelt, and the Exit Intercreditor Agreement is deemed to have been extended, issued, and made in good faith and for legitimate business purposes.  The execution, delivery, and performance by the Debtors or the Reorganized Debtors, as applicable, of the Exit Intercreditor Agreement, and any agreements related thereto and compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof, is authorized by, and will not conflict with, the terms of the Plan or this Order.

## Order

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

83.     **Findings of Fact and Conclusions of Law.**  The above findings of fact and conclusions of law, as well as any additional findings of fact and conclusions of law announced by the Court at the Combined Hearing, are hereby incorporated in this Order.

84.     **Approval of the Disclosure Statement.**  The Disclosure Statement is approved in all respects on a final basis pursuant to section 1125 of the Bankruptcy Code.

85.     **Confirmation of the Plan.**  The Plan, including (a) all modifications to the Plan Filed with the Court prior to or during the Combined Hearing and (b) all documents incorporated into the Plan through the Plan Supplement is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  All terms of the Plan and the Plan Supplement are incorporated herein by reference and are an integral part of this Order.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

86.     This Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Order; *provided* that if there is any direct conflict between the terms of the Plan (including the Plan Supplement) and the terms of this Order, the terms of this Order shall control solely to the extent of such conflict.

87.     **Objections Overruled.**  All parties have had a full and fair opportunity to be heard on all issues raised by the objections to final approval of the Disclosure Statement and

Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon provisions as set forth in this Order. All objections, responses, statements, reservations of rights, and comments in opposition, if any, to final approval of the Disclosure Statement or Confirmation of the Plan that have not been withdrawn, waived, settled, or resolved prior to the Combined Hearing or otherwise resolved on the record of the Combined Hearing or in this Order are hereby **OVERRULED** and **DENIED** on the merits, with prejudice. All objections to entry of this Order or to the relief granted herein that were not timely filed and served prior to the Objection Deadline are deemed waived and forever barred. All withdrawn objections are deemed withdrawn with prejudice.

88. **Headings.** Headings utilized herein are for convenience and reference only and do not constitute a part of the Plan or this Order for any other purpose.

89. **Plan Modifications**. The Plan includes certain modifications made after the Debtors solicited approval from Holders of Claims entitled to vote (the "**Plan Modifications**"). The Plan Modifications do not materially adversely affect the treatment of any Claim or Interest under the Plan. After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Debtors provided due and sufficient notice of the Plan Modifications under the circumstances. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

90. **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, Holders of Claims who voted to accept the Plan or who are

conclusively presumed to accept the Plan are deemed to have accepted the Plan.  No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

91.     **No Action Required.**  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, the Texas Business Organizations Code (including section 101.866 thereof), section 1142(b) of the Bankruptcy Code, and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

92.     **Binding Effect.**  Pursuant to **Article XII.A** of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests voted or are deemed to have accepted the Plan, voted or are deemed to have rejected the Plan, or failed to vote to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors or the Reorganized Debtors, as applicable.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan and this Order, regardless of whether any such Holder of a Claim or Interest has voted on the Plan.  Pursuant to section

1142(a) of the Bankruptcy Code, the Plan, the Plan Supplement, and this Order shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

93.     **Incorporation by Reference.**  The terms and provisions of the Plan, the Plan Supplement, all other relevant and necessary documents, and each of the foregoing's schedules and exhibits are, on and after the Effective Date, incorporated herein by reference and are an integral part of this Order.

94.     **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan, this Order, or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan or this Order, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

95.     **Cancellation of Existing Agreements and Interests.**  On the Effective Date, except with respect to the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory Notes, the GUC Note Documents, the Parent Capital Contribution, the Zachry Interests, the Prepetition Intercreditor Agreement, the Exit Intercreditor Agreement, the GPX Settlement Documents, the GPX L/C (subject to **Article IV.B** of the Plan), the GPX Parent Guarantee (subject to **Article IV.B** of the Plan), all Employee Obligations assumed pursuant to **Article IV.L** of the Plan, all Indemnification Obligations assumed pursuant to **Article IV.M** of the Plan, and all Executory Contracts and Unexpired Leases assumed pursuant to **Article V.A** of the Plan, or to the

extent otherwise provided in the Plan or this Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect.  Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan.

96.    Notwithstanding the preceding paragraph, any credit agreement or other instrument that governs the rights, claims, and remedies of the Holder of a Claim shall continue in full force and effect for the limited purposes of allowing Holders of Allowed Claims to receive distributions under the Plan and permitting the Reorganized Debtors and any other distribution agent, as applicable, to make distributions on account of the applicable Claims.

97.    On the Effective Date, each holder of a certificate or instrument evidencing a Claim or Interest that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture or agreement that governs the rights of such holder of such Claim or Interest.  Such surrendered certificate or instrument shall be deemed cancelled as set forth in, and subject to the exceptions set forth in, **Article IV.I** of the Plan.

98.    **Organizational Documents.**  On the Effective Date, the Reorganized Debtors shall be deemed to adopt and re-affirm the Organizational Documents without any further action, notice, or approval.  The Reorganized Debtors shall be authorized to adopt any agreements, documents, and instruments, and to take any other action contemplated under the Plan as necessary to consummate the Plan.  To the extent any Organizational Document is modified in connection with

43

Consummation of the Plan, each Reorganized Debtor, as applicable, will file such Organizational Document with the applicable Secretary of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document.  The Organizational Documents shall prohibit the issuance of non-voting Equity Securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date, each Reorganized Debtor may amend and restate its constituent and governing documents as permitted by the laws of its jurisdiction of formation and the terms of such documents.

99.     **Effectiveness of All Actions.**  All actions contemplated by the Plan and the Plan Supplement are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by the unanimous action, consent, approval and vote of each of such officers, directors, managers, members, or equity holders.

100.    **Restructuring Transactions.**  The Restructuring Transactions set forth in the Plan are hereby approved and authorized in all respects.  After the Confirmation Date, the Debtors or Reorganized Debtors, the GUC Note Administrative Agent, or the GUC Note Collateral Agent, as applicable, are authorized to consummate the Restructuring Transactions and may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan.  Any transfers of assets or equity interests effected, or any

obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.

101. **Distributions.**  The procedures governing distributions contained in **Article VI** of the Plan shall be, and hereby are, approved in their entirety.

102. **Contingent, Unliquidated, and Disputed Claims.**  The procedures for resolving contingent, unliquidated, and disputed claims contained in **Article VII** of the Plan shall be, and hereby are, approved in their entirety.  For the avoidance of doubt, no distributions shall be made on account of any Claim under the Plan, including any contingent, unliquidated, or other Disputed Claim, unless and until such Claim becomes Allowed in accordance with **Article VII** of the Plan.

103. **Claims Register.**  Any Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, compromised, settled, or superseded may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors without the Debtors or the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest without any further notice to or action, order, or approval of the Court.

104. **A&R Credit Facility.**  On the Effective Date, the Reorganized Debtors shall enter into the A&R Credit Facility, the terms of which will be set forth in the A&R Credit Facility Documents.  Confirmation of the Plan pursuant to this Order shall be deemed final approval of each of the A&R Credit Facility, the A&R Credit Facility Documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization for the Reorganized Debtors to enter into and execute the A&R Credit Facility Documents, and such other

documents as may be required to effectuate the A&R Credit Facility.  Effectiveness of the A&R Credit Agreement shall be deemed to bind all Holders of Prepetition Credit Facility Claims and all A&R Credit Facility Lenders as if each such Holder or A&R Credit Facility Lender had executed the A&R Credit Facility Agreement with appropriate authorization.

105.    **Sunbelt Promissory Note.**  On the Effective Date, the Reorganized Debtors shall issue the Sunbelt Promissory Note.  Confirmation of the Plan pursuant to this Order shall be deemed final approval of the Sunbelt Promissory Note, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization for the Reorganized Debtors to enter into and execute the Sunbelt Promissory Note, and such other documents as may be required to effectuate the Sunbelt Promissory Note.

106.    **GUC Promissory Notes.**  On the Effective Date, the Reorganized Debtors shall enter into the GUC Note Documents and issue the GUC Promissory Notes.  The Reorganized Debtors shall issue additional GUC Promissory Notes from time to time after the Effective Date for the benefit of Holders of General Unsecured Claims in accordance with the Plan as and to the extent such Claims are Allowed.  Confirmation of the Plan pursuant to this Order shall be deemed final approval of each of the GUC Promissory Notes, the GUC Note Purchase Agreement, the GUC Note Documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization for the Reorganized Debtors to enter into and execute the GUC Note Documents, and such other documents as may be required to effectuate the GUC Promissory Notes.

107. **Collateral**.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the A&R Credit Facility Documents, Sunbelt Promissory Note, and GUC Note Documents shall: (a) be deemed to be granted; (b) be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the A&R Credit Facility Documents, the Sunbelt Promissory Note, the GUC Note Documents, and the Exit Intercreditor Agreement, as applicable; (c) be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the A&R Credit Facility Documents, the Sunbelt Promissory Note, the GUC Note Documents, and the Exit Intercreditor Agreement, as applicable; and (d) not be subject to recharacterization or equitable subordination for any purposes whatsoever shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Order (it being understood that perfection shall occur automatically by virtue of the entry of the Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

108. **Zachry Interests.**  On the Effective Date, Zachry Interests shall be Reinstated on the Effective Date, and the legal, equitable, and contractual rights to which Holders of Zachry Interests are entitled shall remain unaltered as provided in the Organizational Documents.

109.    **Effectuating Documents; Further Transactions.**  On and after the Effective Date, the Reorganized Debtors, and their respective officers and boards of directors and managers, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan the name of and on behalf of the Reorganized Debtors without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

110.    **Non-Voting Equity Securities**.  The Debtors are not issuing new equity securities, and all Interests are not impaired and are being Reinstated under the Plan, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

111.    **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan, including with respect to General Unsecured Claims and GPX Claims as set forth in the Plan, and the entry of this Order constitutes approval of such compromises and settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

112.    **GPX Settlement.**  This Court approved the GPX Settlement on a final basis in the GPX Final Settlement Order.  The terms of the GPX Settlement, as approved by the GPX Final Settlement Order, are incorporated into, and are an integral part of, the Plan and this Order.  The GPX Settlement Parties shall comply with the terms of the GPX Settlement Documents through and following the Effective Date, and the terms of the GPX Settlement and the GPX Settlement Documents remain binding on the GPX Settlement Parties and, as applicable, the A&R Credit Facility Agent and A&R Credit Facility Lenders.

113.    **GPX Excess Claims Stipulation.**   The terms of the GPX Excess Claims Stipulation are fair, equitable, within the range of reasonableness, and in the best interests of the Debtors, their Estates, and all vendors and subcontractors asserting Claims related to the GPX Project.  Entry of this Order shall constitute the entry of an order approving the GPX Excess Claims Stipulation, and each term and agreement set forth therein in their entirety, under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  The GPX Excess Claims Stipulation, including each paragraph therein, is incorporated by reference into this paragraph and Order as if set forth fully herein, and is an integral part of the Plan and this Order.

114.    For the avoidance of doubt, and as set forth in the GPX Excess Claims Stipulation, (i) the Debtors and Golden Pass shall not seek recovery from each other on account of any potential claims related to the GPX Project other than as set forth in the GPX Excess Claims Stipulation; (ii) the Debtors have no payment obligations, liability, or any other responsibility with respect to any GPX Claims identified on Schedule 1 to the GPX Excess Claims Stipulation or any Payable GPX Claims (as defined in the GPX Excess Claims Stipulation) identified on Schedule 2, Schedule 3, or Schedule 4 to the GPX Excess Claims Stipulation, except to the extent any GPX Claim not listed on the Schedules to the GPX Excess Claims Stipulation becomes an Allowed Claim or is Allowed in an amount higher than the amounts set forth on the Schedules through the Debtors' proof of claim resolution process in the Court, in which case the Debtors shall resolve and satisfy such Claims (in the amount that is higher than the amount in the Schedules, if any) pursuant to the terms of the Plan; (iii) Golden Pass has no further liability, obligation, or responsibility whatsoever under the GPX Settlement or any applicable agreement or law with respect to any Claims filed or scheduled in the Debtors' bankruptcy cases, including without limitation, any Allowed Claims, other than the Payable GPX Claims in the amounts identified on

Schedule 2, Schedule 3; and Schedule 4 to the GPX Excess Claims Stipulation; (iv) other than the Payable GPX Claims, all GPX Claims have been resolved and satisfied as of entry of this Order and are subject to each of the release, discharge, and injunctive relief provisions in the Plan, including as set forth in **Articles IV** and **VIII** of the Plan, and Golden Pass shall have no further liability, obligation, or responsibility whatsoever with respect to such claims; (v) upon Golden Pass's payment of the Payable GPX Claims in the amounts set forth in Schedule 2, Schedule 3, and Schedule 4 to the GPX Excess Claims Stipulation, the Payable GPX Claims will be deemed fully satisfied and subject to each of the release, discharge, and injunctive relief provisions in the Plan, including as set forth in **Articles IV** and **VIII** of the Plan, and Golden Pass shall have no further liability, obligation, or responsibility whatsoever with respect to such claims; (vi) Chiyoda, CB&I, and the current Chiyoda-CB&I joint venture on the GPX Project ("**CCJV-GPX**") shall have no further liability, obligation, or responsibility whatsoever with respect to GPX Claims satisfied by Golden Pass; and (vii) all release, discharge, and injunctive relief provisions in the Plan related to GPX Claims are approved as set forth herein and the Plan for the benefit of the Debtors, Golden Pass, and their Related Parties.

115.    Consistent with the terms of the GPX Excess Claims Stipulation, upon entry of this Order and occurrence of the Effective Date of the Plan that incorporates, approves, and implements the stipulations and schedules of the GPX Excess Claims Stipulation, the GPX L/C and Parent Guarantee (as defined in the GPX Settlement Term Sheet) shall be deemed automatically reduced to the amount of the GPX L/C Scheduled Draws *less* the amount of the February 1, 2025 GPX L/C Scheduled Draw already paid by the Debtors in Cash pursuant to that certain letter agreement dated January 31, 2025, without any further notice to or action, order, or approval by any Entity or this Court.  The Reorganized Debtors may pay any future GPX L/C Scheduled Draws in Cash subject

to the terms of the GPX Excess Claims Stipulation.  The Reorganized Debtors shall pay the Excess Claims Amount (as defined in the GPX Excess Claims Stipulation) in Cash on or before August 1, 2026, which shall be an obligation solely of the Debtors (and their successors) and no other party.  The Reorganized Debtors, Golden Pass, and the Prepetition Credit Facility Agent are authorized to execute all agreements and other documents, and to take any other ministerial actions, as may be necessary to effectuate the terms of this paragraph.  Notwithstanding anything to the contrary herein or in any A&R Credit Facility Documents, the terms of the GPX Settlement with respect to the GPX L/C are modified solely as expressly set forth in the GPX Excess Claims Stipulation and incorporated in this paragraph.

116.    Notwithstanding anything to the contrary in this Order, the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Transactions, or other related Plan documents (the "**Plan Documents**"), the terms of the GPX Excess Claims Stipulation shall not impair or affect any rights of and between Golden Pass, Chiyoda, CB&I, or the CCJV-GPX unrelated to GPX Claims satisfied, released, or otherwise resolved by the GPX Settlement, the GPX Excess Claims Stipulation, or the Plan.

117.    For the avoidance of doubt, Golden Pass is not a Releasing Party under the Plan other than with respect to the Debtors and the Debtors' Related Parties consistent with the GPX Settlement.

118.    **Release, Exculpation, Discharge, Injunction, and Related Provisions.**    The release, exculpation, discharge, injunction, and related provisions embodied in the Plan, including those contained in **Article VIII.A–H** of the Plan shall be, and hereby are, approved and authorized in their entirety and shall be effective and binding on all Persons and Entities, to the extent provided in the Plan, without further order or action by the Court.

119.   **Debtor Release.**   Entry of this Order shall constitute the Court's approval of the Debtor Release, including by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Court's finding that the Debtor Release is: (a) consensual on the part of the Releasing Parties; (b) essential to the Confirmation of the Plan; (c) given in exchange for good and valuable consideration provided by the Released Parties, including the payment in full of all General Unsecured Claims pursuant to the terms of the Plan; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Debtor Releasing Parties asserting any Claim or Cause of Action released pursuant to the Debtor Release against a Released Party.

120.   Notwithstanding anything to the contrary in **Article VIII.C** of the Plan, the Debtors shall maintain all rights to object to Filed Claims and shall not release any claims or Causes of Action (i) identified on the Schedule of Retained Causes of Action, or (ii) related to the GPX Settlement that are preserved by the GPX Settlement Documents, the GPX Settlement Dispute Opinion, or the GPX Settlement Dispute Order.  Upon entry of this Order, any and all such rights, claims, and Causes of Action set forth in this paragraph 120 and **Article VIII.C** shall be fully preserved and revest in the Reorganized Debtors pursuant to the Plan and this Order.

121.   **Third-Party Release.**   Entry of this Order shall constitute the Court's approval of the Third-Party Release, including by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Court's finding that the Third-Party Release is: (a) consensual on the part of the Releasing Parties; (b) essential to the Confirmation of the Plan; (c) given in exchange for good and valuable consideration provided by the Released Parties,

including the payment in full of all General Unsecured Claims pursuant to the terms of the Plan; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action against a Released Party.  As set forth on the record at the Combined Hearing and in **Article I.A.128.n** of the Plan, each Related Party of a Releasing Party shall be a Releasing Party solely to the extent an applicable principal Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law.

122.     **Treatment of Executory Contracts and Unexpired Leases.**     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases.  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in **Article V** of the Plan are hereby approved in their entirety.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

123.     **Assumption and Assignment of Contracts and Leases.**  On the Effective Date, each Executory Contract and Unexpired Lease shall be deemed assumed, unless such Executory Contract and Unexpired Lease: (1) is identified on the Rejection List; (2) previously expired or terminated pursuant to its own terms; (3) was previously assumed or rejected by the Debtors, including pursuant to the GPX Settlement; (4) is the subject of a motion or notice to reject pending

as of the Effective Date; or (5) has an effective date of rejection that is after the Effective Date, without the need for any further notice to or action, order, or approval of the Court, under section 365 of the Bankruptcy Code and the payment of Cure Claims, if any, shall be paid in accordance with **Article V.C** of the Plan.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  Except as otherwise provided in the Plan or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all amendments, assignments, attachments, change orders, confidentiality agreements, exhibits, extensions, guaranties, hold harmless agreements, modifications, restatements, revisions, schedules, side letters, supplements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Amendments, assignments, attachments, change orders, confidentiality agreements, exhibits, extensions, guaranties, hold harmless agreements, modifications, restatements, revisions, schedules, side letters, and supplements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

124.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in **Article V** of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption and assignment, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.  For the avoidance of doubt, if there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning

of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, and if such dispute is not resolved in a manner acceptable to the Reorganized Debtors in their sole discretion, the Reorganized Debtors shall have the right to add the applicable Executory Contract or Unexpired Lease to the Rejection List, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as of the Effective Date and no Cure Claim shall be owed in respect of such Executory Contract or Unexpired Lease.  The Reorganized Debtors may determine to add an Executory Contract or Unexpired List to the Rejection List pursuant to this paragraph before or after the Court rules on any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption.  Following the resolution of any dispute regarding any Cure Claim, provided that the Reorganized Debtors do not elect to add the applicable Executory Contract or Unexpired Lease to the Rejection List, payment of the Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute or as may be agreed by the Reorganized Debtors and the counterparty to the Executory Contract or Unexpired Lease.

125.     Nothing in this Order or in any notice or any other document is or shall be deemed an admission by the Debtor or Reorganized Debtors that any assumed contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

126.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure Claim pursuant to **Article V.C** of the Plan shall result in the full release and satisfaction of any Cure Claims, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory

Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to this Order, and for which any Cure Claim has been fully paid pursuant to **Article V.C** of the Plan, shall be deemed Disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Court.

127.    All Claims for damages resulting from the rejection of an Executory Contract or Unexpired Lease shall be asserted in accordance with **Article V.B** of the Plan and shall be treated as General Unsecured Claims pursuant to **Article III.C** of the Plan and may be objected to in accordance with the provisions of **Article VII** of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  The Reorganized Debtors shall reconcile all Claims for damages resulting from the rejection of an Executory Contract or Unexpired Lease after the deadline to file such Claims has expired, and may object to any such Claims as set forth in the Plan.

128.    **Deferred Compensation Plan and Other Employee Obligations.**  Subject to **Article V** of the Plan, all written employment, confidentiality, non-competition agreements, bonus, gainshare and incentive programs, discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees, vacation, holiday pay, severance, retirement, retention, supplemental retirement, executive retirement, pension, deferred compensation (including the Deferred Compensation Plan), indemnification, other similar employee-related agreements or arrangements, retirement income plans, medical, dental, vision, life and disability insurance, flexible spending account, and other health and welfare benefit plans, programs, and arrangements,

and collective bargaining agreements that are in effect immediately prior to the Effective Date with the Debtors, shall be assumed by the Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans as of the Effective Date, unless otherwise: (i) provided in the Plan or this Order, (ii) specifically rejected pursuant to a separate order of this Court, (iii) specifically designated as a contract or lease to be rejected on the Rejection List, or (iv) specifically identified in a separate rejection motion Filed by the Debtors.  For the avoidance of doubt, the Debtors' assumption of all obligations related to the Deferred Compensation Plan shall include any amounts due and owing to participants that have accrued under the Deferred Compensation Plan following the Petition Date.

129.    The Debtors' assumption of such compensation and benefits plans, including the Deferred Compensation Plan, pursuant to the terms of this Plan shall be deemed not to trigger any applicable change of control, immediate vesting, termination, or similar provisions in any applicable plan or program, or an event of "Good Reason" (or a term of like import), in each case as a result of the consummation of the Restructuring Transactions.  No counterparty shall have rights under a compensation and benefit plan or program, including the Deferred Compensation Plan, assumed pursuant to the Plan other than those applicable immediately prior to such assumption.

130.    Nothing in the Plan or this Order shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, as of the Effective Date, all retiree benefits (as such

term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable orders of this Court and applicable law.

131. **Indemnification.**  All indemnification provisions in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for (each in their capacities as such) the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, financial advisors, restructuring advisors, consultants, other professionals of, or acting on behalf of, the Debtors, and the Sureties, as applicable, shall be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, other professionals of, or acting on behalf of, the Debtors, and the Sureties, as provided under the indemnification obligations in place prior to the Effective Date*; provided, however,* nothing in the Plan or this Order shall expand any of the Debtors' indemnification obligations in place as of the Petition Date.

132. **Compliance with Tax Requirements.**  Each Holder of an Allowed Claim or Interests that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.  In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, the Distribution Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting

requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Reorganized Debtors, the Distribution Agent, and any applicable withholding agent, as applicable, are authorized to take all actions necessary or appropriate to comply with applicable withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

133.    **<u>Exemption from Transfer Taxes and Recording Fees</u>.**  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for any or all of the A&R Credit Facility, the Sunbelt Promissory Note, or the GUC Promissory Notes; (6) the issuance of the GUC Promissory Notes; (7) the issuance of the Sunbelt Promissory Note; or (8) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising

out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

134.    **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Order.

135.    **Plan Supplement.**  Without further order or authorization of this Court, the Debtors, Reorganized Debtors, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan, unless such modifications require relief under section 1127 of the Bankruptcy Code; *provided, however,* that the Debtors shall obtain the consent of the Committee (which consent shall not be unreasonably withheld) for any alternations, amendments, supplements, or modifications to the Plan Supplement impacting the treatment of Holders of General Unsecured Claims under the

Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby.

136.    **Professional Compensation.**  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Court allows as soon as practicable after such Professional Fee Claims are Allowed.

137.    Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

138.    **Exemption from Securities Laws.**  To the extent applicable, the offer, sale, issuance, and distribution of the A&R Credit Facility, GUC Promissory Notes, and Sunbelt Promissory Note shall be exempt pursuant to section 1145 of the Bankruptcy Code from registration under the Securities Act, and the instruments shall be freely transferable and resaleable by non-affiliates of the Debtors and Reorganized Debtors, subject to any contractual limitations or restrictions under applicable non-bankruptcy law.

139. **Restructuring Expenses.** The Claims for Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date (or, with respect to necessary post-Effective Date matters, after the Effective Date), shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein, without any requirement to File a fee application with the Court, without the need for itemized time detail, or without any requirement for Court review or approval. All Claims for Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided, however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Effective Date, invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors. After the Effective Date, the Debtors and Reorganized Debtors (as applicable) shall continue to pay when due and payable in the ordinary course of their business any unpaid Restructuring Expenses that were incurred on, before, or after the Effective Date.

140. **Term of Injunctions or Stays.** Unless otherwise provided in the Plan or in this Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

141. **Nonseverability of Plan Provisions Upon Confirmation.** Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted

or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (c) non-severable and mutually dependent.

142.   **Post-Confirmation Modifications.**   Without the need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan.   The Debtors and the Reorganized Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtors or Reorganized Debtors, one or more times after Confirmation, and any such alteration, amendment, or modification shall be considered a modification of the Plan and shall be made in accordance with section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and **Article X.A** of the Plan; *provided, however*, that the Debtors shall also obtain the consent of the Committee (which consent shall not be unreasonably withheld) for any alterations, amendments, supplements, or modifications to the Plan (including the Plan Supplement) impacting the treatment of Holders of General Unsecured Claims under the Plan.

143.   **Notice of Entry of Confirmation and Effective Date.**   In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven (7) Business Days after the Effective Date, the Reorganized Debtors shall file with the Court and serve by email and first class mail or overnight delivery service a notice of the entry of this Order and occurrence of the Effective Date (the "**Effective Date Notice**") on all Holders of Claims and/or Interests and to all parties on the *Master Service List* maintained by the Claims and Noticing Agent.   Notwithstanding the above, no Effective Date Notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned

marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. Mailing of the Effective Date Notice in the time and manner set forth in this paragraph shall be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice of Confirmation of the Plan and the occurrence of the Effective Date will be necessary.

144. **Applicable Non-Bankruptcy Law.** The provisions of this Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

145. **Governmental Approvals Not Required.** This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or Consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments, agreements, amendments, or modifications related thereto, and any other acts referred to in, or contemplated by, the Plan, Plan Supplement, or Disclosure Statement.

146. **Reporting.** Except as otherwise required under the A&R Credit Facility Documents, the Sunbelt Promissory Note, or the GUC Note Documents, after entry of this Order, the Debtors or Reorganized Debtors, as applicable, shall have no obligation to file with the Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or Reorganized Debtors, as applicable, were obligated to provide under the Bankruptcy Code or any order of the Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases and (b) monthly

operating reports (even for those periods for which a monthly operating report was not filed before the Confirmation Date, if any); *provided* that the Debtors and Reorganized Debtors, as applicable, shall comply with the U.S. Trustee's post-confirmation quarterly reporting requirements prior to the closure of the applicable Chapter 11 Case.

147.    **Termination of Challenge Period.**  The Challenge Period (as defined in the Cash Collateral Order) for all parties in interest shall be terminated as of the Effective Date, and the stipulations, admissions, findings, and releases contained in the Cash Collateral Order at that time shall be binding on the Debtors' estates and all parties in interest.

148.    **Authorization to Consummate.**  The Debtors and the Reorganized Debtors, as applicable, are authorized to consummate the Plan after the entry of this Order subject to satisfaction or waiver of the conditions precedent to Consummation set forth in **Article IX** of the Plan; *provided, however*, that if the Debtors seek any waiver (in whole or in part) of the conditions precedent in **Article IX.A.1** or **Article IX.A.6**, the Debtors shall obtain the consent of the Committee.

149.    **Substantial Consummation.**  Consummation of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

150.    **Failure of Consummation.**  Notwithstanding entry of this Order, if Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by the Debtors or by Holders of Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity, respectively.

151. **Reservation of Rights.**  Except as expressly set forth in the Plan, the Plan shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to any Entity unless and until the Effective Date has occurred.

152. **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by reference.

153. **Provisions Regarding Committee and Cessation of Fees and Expense Payment.**

**Article X.E** of the Plan shall be replaced in its entirety with the following:

> On the Effective Date, the Committee shall dissolve automatically and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except with respect to (i) final fee applications of the Professionals asserting Professional Fee Claims, including any appeals in connection therewith, and/or (ii) for purposes of participating in any appeals of the Confirmation Order.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committee, other than such fees and expenses incurred in connection with any appeals of the Confirmation Order.   Any reasonable and documented fees or expenses of the Committee or its advisors incurred between the Confirmation Date and the Effective Date (or after the Effective Date with respect to any appeals of the Confirmation Order) shall be paid by the Debtors or Reorganized

Debtors, as applicable, without the necessity of the filing of a fee application for such fees and expenses.

154. **Provisions Regarding Governmental Units**.  Nothing in the Plan or this Order discharges, releases, precludes, or enjoins: (a) any liability to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Confirmation Date; (c) any police or regulatory liability to a Governmental Unit on the part of any Entity as the owner, permittee, or operator of property after the Confirmation Date; (d) any valid right of setoff or recoupment of any Governmental Unit against any of the Debtors or Reorganized Debtors; or (e) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Debtors.  Nor shall anything in the Plan or this Order: (a) enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; (b) divest any court, commission, or tribunal of jurisdiction to resolve any matters relating to the liabilities and/or Claims set forth in this paragraph; (c) confer in this Court jurisdiction over any matter over which it would not have jurisdiction under 28 U.S.C. § 1334; or (d) authorize the transfer or assignment of any Governmental Unit license, permit, registration, authorization, or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order or the Plan shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or the Plan or to adjudicate any defense asserted under this Order or the Plan.  The Debtors' and Reorganized Debtors' rights and defenses under applicable non-bankruptcy law with respect to the foregoing are fully preserved.  For the avoidance of doubt, the term "Governmental Unit" includes federally recognized Indian tribes and applicable state taxing authorities.

155. **Provisions Regarding Texas State Taxing Authorities.**    Notwithstanding anything to the contrary in the Plan Documents:

      a.    The Claims of the Texas Comptroller of Public Accounts, Revenue Accounting Division and the Texas Workforce Commission (together, the "**Texas State Taxing Authorities**") shall be reconciled by the Reorganized Debtors and the Texas State Taxing Authorities in the ordinary course of business following the Effective Date. Once any Claim by the Texas State Taxing Authorities becomes an Allowed Claim under the Plan, the Reorganized Debtors shall pay such Allowed Claim as an Other Priority Claim, along with all accrued state statutory post-petition interest to the extent owed under applicable state law, within 10 days of such Allowance.

      b.    The setoff or recoupment rights of the Texas State Taxing Authorities shall not be affected by confirmation of the Plan to the extent that such rights relate to (1) a tax refund claim asserted after the Petition Date by any of the Debtors, or (2) a tax return amended after the Petition Date by any of the Debtors. Any setoff or recoupment right of the Texas State Taxing Authorities as of the Petition Date shall not be affected by confirmation if a Proof of Claim or motion filed by the Texas State Taxing Authorities has asserted such right.

      c.    Should a Debtor or Reorganized Debtor, as applicable, default on a payment to a Texas State Taxing Authority under the terms of the Plan or this Order, the applicable Texas State Taxing Authority shall provide the Debtors or Reorganized Debtors and counsel of record with written notice of default mailed and emailed per **Article XII.H** of the Plan. The Debtors or Reorganized Debtors, as applicable, shall have twenty-one (21) days from the date of the notice of default to cure the default, with failure to do so to result in the applicable Texas State Taxing Authority being free to pursue its state law remedies under the Texas Property Tax Code to collect the full amount of taxes, penalties, and interest owed without further order of the Court or notice to parties.

156. **Provisions Regarding Texas Local Taxing Authorities**.    Notwithstanding anything to the contrary in the Plan Documents, the claims of the Texas Local Taxing Authorities[3]

---

[3]    For purposes of this Order, the term "**Texas Local Taxing Authorities**" shall refer to: Randall County Tax Office, Parmer County Appraisal District, Pasadena Independent School District, West Harris County Municipal Utility District, Alief Independent School District, Brazoria County Tax Office, City of Houston, Channelview Independent School District, Harris County Municipal Utility District 285, Maverick County, Sabine Pass Independent School District, Brazos County, Medina County, Bexar County, Cypress-Fairbanks Independent School District, Deer Park Independent School District, Eagle Pass Independent School District, Fort Bend County, Harris County Emergency Service District #09, Harris County Emergency Service District #48, Harris County Emergency Service District #60, City of Houston (where represented by Linebarger), Houston

shall be paid in full, along with all accrued state statutory post-petition interest at the rate of twelve percent (12%) per annum to the extent owed under applicable state law, within 10 days of the Effective Date.  The Debtors or Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2025 and subsequent tax years) owing to the Texas Local Taxing Authorities in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the Texas Local Taxing Authorities to file an administrative expense claim and/or request for payment.  The Texas Local Taxing Authorities shall retain all statutory tax liens against property of the Debtors or Reorganized Debtors, whether pre- or post-petition, until such outstanding taxes secured by a particular lien are fully paid.  The Texas Local Taxing Authorities' lien priority shall not be primed or subordinated by any exit financing approved by the Court in conjunction with the confirmation of the Plan or otherwise.  In the event that collateral that secures the claim of one or more of the Texas Local Taxing Authorities is sold or returned to a creditor holding a lien that is junior to that of the Texas Local Taxing Authorities, the Debtors shall first pay all ad valorem property taxes that are secured by such collateral, to the extent that the Debtors are liable for such ad valorem property taxes under applicable non-bankruptcy law.  The Distribution Agent shall pay any Allowed Texas Local Taxing Authority claim regardless of whether it does not meet any minimum threshold established pursuant to the Plan or this Order.

157.    Should a Debtor or Reorganized Debtor default on a payment to a Texas Local Taxing Authority under the terms of the Plan or this Order, the applicable Texas Local Taxing

---

Community College System, Houston Independent School District, Jefferson County, Katy Independent School District, Kenedy County, Kleberg County, Lone Star College System, Orange County, Nueces County and City of Pasadena.

Authority shall provide the Debtors or Reorganized Debtors and counsel of record with written notice of default mailed and emailed per **Article XII.H** of the Plan. The Debtors or Reorganized Debtors shall have twenty-one (21) days from the date of the notice of default to cure the default, with failure to do so shall allow the applicable Texas Local Taxing Authority being free to pursue its state law remedies under the Texas Property Tax Code to collect the full amount of taxes, penalties, and interest owed without further order of the Court or notice to parties.

158. **Provisions Regarding CPChem.** Notwithstanding anything to the contrary in the Plan Documents: (i) on the Effective Date, the Reorganized Debtors shall be deemed to have assumed: (a) the Master Agreement for Products and Services Maintenance Agreement, Contract No. CW64524, by and between Zachry Maintenance Services LLC and Chevron Phillips Chemical Company LP ("**CPChem**"), effective July 1, 2023 (as amended, modified or restated from time to time, together with all attachments, exhibits, and ancillary documents, the "**CPChem MSA**"); (b) the Blanket Contract for Engineering Design, Procurement and Construction Services, Contract No. CPC-34116, by and between ZII  (with other Zachry contractors also a party through permissible affiliation with ZII) and CPChem, effective October 1, 2020; (c) the Modified Blanket Services Agreement, Contract No. 4600006406, by and between JV Industrial Companies LLC and CPChem, effective April 11, 2006; (d) the OSBL Engineering, Procurement, and Construction Contract, Contract No. USGCII-CNCN-000E4, by and between GTPC, ZII, and Burns & McDonnell Engineering Company, Inc. dated June 28, 2022, (as amended, modified or restated from time to time, together with all attachments, exhibits, and ancillary documents); (e) the Polyethylene Engineering, Procurement and Construction Contract, Contract No. USGCII-CNCN-000E1, by and between GTPC, ZII, and DL USA, Inc., dated July 7, 2022 (as amended, modified, or restated from time to time, together with all attachments, exhibits, and ancillary documents);

70

and (f) the Blanket Service Agreement, Contract No. 4600005747, effective October 23, 2008, to the extent not superseded by the CPChem MSA; and (g) any active or open purchase order submitted by CPChem to the Debtors under the foregoing agreements (collectively, (a)-(g), the "**CPChem Agreements**"), pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice, action, order, or approval of the Court; (ii) no Cure Claim in Cash shall be paid to CPChem by the Reorganized Debtors on the Effective Date; (iii) assumption of the CPChem Agreements and Consummation of the Plan shall not alter, impair or otherwise modify the rights and obligations of the parties to the CPChem Agreements, including in respect of any claims of the Debtors, the Reorganized Debtors, CPChem, or their respective Affiliates, as applicable, arising at any time under or in relation to the CPChem Agreements, whether such claims are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, now existing or hereinafter arising; (iv) notwithstanding the commencement of the Chapter 11 Cases and confirmation of the Plan, all obligations of the Debtors, the Reorganized Debtors, and CPChem under the CPChem Agreements shall be satisfied by the Debtors, the Reorganized Debtors, and CPChem, as applicable, in the normal course of business in accordance with the terms of the CPChem Agreements, including, for the avoidance of doubt, any contingent and unliquidated obligations of the Debtors and Reorganized Debtors validly owed to CPChem under the CPChem Agreements; and (v) CPChem is hereby deemed, as of the Effective Date, to have affirmatively opted out of the Third-Party Release provisions of the Plan.  For the avoidance of doubt, references to CPChem herein shall refer to both Chevron Phillips Chemical Company, LLC as well as Chevron Phillips Chemical Company, LP.

159. **Provisions Regarding GTPC**.  Notwithstanding anything to the contrary in Plan Documents, on the Effective Date: (i) the Reorganized Debtors shall be deemed to have assumed (a) the Engineering, Procurement and Construction Contract dated June 28, 2022 (as amended, modified or restated from time to time, together with all attachments, exhibits and ancillary documents), between Golden Triangle Polymers Company LLC ("**GTPC**"), ZII, and Burns & McDonnell Engineering Company, Inc.; (b) the Engineering, Procurement and Construction Contract dated July 7, 2022 (as amended, modified or restated from time to time, together with all attachments, exhibits and ancillary documents), between GTPC, ZII, and DL USA, Inc.; (c) the Parent Guarantee dated as of June 28, 2022 made by ZHI in favor of GTPC; and (d) the Parent Guarantee dated as of September 29, 2022 made by ZHI in favor of GTPC (collectively, (a)-(d), the "**GTPC EPC Contracts**"), pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice, action, order, or approval of the Court; (ii) no Cure Claim in Cash shall be paid to GTPC by the Reorganized Debtors on the Effective Date; (iii) notwithstanding the forgoing, assumption of the GTPC EPC Contracts and Consummation of the Plan shall not alter, impair or otherwise modify the rights and obligations of the parties to the GTPC EPC Contracts, including in respect of any claims of the Debtors, the Reorganized Debtors, GTPC, or their respective Affiliates, as applicable, arising at any time under or in relation to the GTPC EPC Contracts, whether such claims are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, now existing or hereinafter arising; (iv) notwithstanding the commencement of the Chapter 11 Cases and confirmation of the Plan, all obligations of the Debtors, the Reorganized Debtors, and GTPC under the GTPC EPC Contracts shall be satisfied by the Debtors, the Reorganized Debtors, and GTPC, as applicable, in the normal course of business in accordance

with the terms of the GTPC EPC Contracts, including, for the avoidance of doubt, any contingent and unliquidated obligations of the Debtors and Reorganized Debtors validly owed to GTPC under the GTPC EPC Contracts; and (v) as an administrative matter, GTPC is hereby deemed, as of the Effective Date and without any further action, notice, or order by any party or this Court, to have (x) withdrawn Claim Nos. 1284 and 1285 as duplicative of Claim Nos. 1242 and 1243 (which shall remain pending) and (y) affirmatively opted out of the Third-Party Release provisions of the Plan.

160.    **Provisions Regarding VGPL**.  Notwithstanding any other provisions of the Plan, the Plan Supplement, this Order, or any other order of this Court, on the Effective Date, all rights and obligations that have arisen and/or may arise at law related to: (a) those certain guaranties entered into by ZHI for the benefit of Venture Global Plaquemines LNG, LLC ("**VGPL**"), dated as of April 21, 2021 and January 10, 2023 (together, the "**VGPL Guaranties**"), and any other agreements setting forth the parties' respective rights and obligations under the VGPL Guaranties, (collectively, the "**VGPL Guaranty Obligations**"); (b) that certain standby letter of credit No. 777020221583-L, dated as of March 17, 2023, and that certain standby letter of credit No. 777020244050-L, dated as of March 20, 2023, each issued by Standard Chartered Bank on behalf of KZJV LLC in favor of VGPL (together, the "**VGPL Performance Bonds**"); (c) that certain payment bond No. 107261759 (Travelers), K40530423 (Pacific), 30108502 (Continental), dated as of May 25, 2022, issued by Travelers Casualty and Surety Company, Pacific Indemnity Company, and Continental Casualty Company, and that certain payment bond No. 107652660 (Travelers), K40530484 (Pacific), 30161481 (Western), dated as of March 13, 2023, issued by Travelers Casualty and Surety Company, Pacific Indemnity Company, and Western Surety Company, each on behalf of KZJV LLC in favor of VGPL (together, the "**VGPL Payment Bonds**"); (d) any other agreements setting forth the parties' respective rights and obligations with

respect to the VGPL Performance Bonds and VGPL Payment Bonds (such agreements, together with the VGPL Performance Bonds and the VGPL Payment Bonds, the "**VGPL Surety Bond Obligations**"); and (e) that certain Second Amended and Restated Engineering, Procurement and Construction Agreement, entered into as of January 7, 2022, and that certain Engineering, Procurement and Construction Agreement, entered into as of January 10, 2023 (as amended together, the "**PLNG EPC Contracts**") with KZJV LLC, and any other agreements setting forth the parties' respective rights and obligations under the PLNG EPC Contracts (collectively, the "**PLNG EPC Contracts Obligations**"), shall all continue in full force and effect in accordance with the terms thereof and applicable non-bankruptcy law and are not discharged, enjoined, impaired, released or otherwise modified in any way.   For the avoidance of doubt, nothing in the Plan or this Order, including, without limitation, any exculpation, release, injunction, exclusions, and discharge provisions of the Plan contained in **Article VIII** of the Plan or otherwise, shall bar, alter, limit, impair, release, modify, enlarge, or enjoin any VGPL Guaranty Obligations, any VGPL Surety Bond Obligations, PLNG EPC Contracts Obligations and/or any rights, claims, actions or defenses, or other matters to which VGPL is entitled under such VGPL Guaranty Obligations, VGPL Surety Bond Obligations, or PLNG EPC Contracts Obligations at law, in equity, or otherwise.  The VGPL Guaranties, the VGPL Payment Bonds, the VGPL Performance Bonds, the PLNG EPC Contracts, and all VGPL Guaranty Obligations, VGPL Surety Bond Obligations, PLNG EPC Contracts Obligations, and any rights, claims, actions or defenses, or other matters to which the Reorganized Debtors or VGPL are entitled under such agreements or obligations, at law, in equity, or otherwise, shall be reinstated and/or retained by the Reorganized Debtors and VGPL, as applicable, in the ordinary course of business as if the Chapter 11 Cases had not been commenced.  Nothing in the Plan or this paragraph shall affect in any way VGPL's rights against

any non-Debtor under the VGPL Guaranties, VGPL Payment Bonds, VGPL Performance Bonds, PLNG EPC Contracts, or otherwise with regard to the VGPL Guaranty Obligations, VGPL Surety Bond Obligations, and PLNG EPC Contracts Obligations.  Subject to **Article VIII** of the Plan, nothing in this paragraph shall affect in any way any non-Debtor's rights against VGPL under the VGPL Guaranties, VGPL Payment Bonds, VGPL Performance Bonds, PLNG EPC Contracts, or otherwise with regard to the VGPL Guaranty Obligations, VGPL Surety Bond Obligations, and PLNG EPC Contracts Obligations.

161. **OPPD Reservation of Rights.**  Notwithstanding anything to the contrary in the Plan Documents: (i) nothing contained in the Plan Documents shall operate to release, discharge, impair, or enjoin any rights, obligations, Claims, Causes of Action, defenses, or remedies of Omaha Public Power District ("**OPPD**"), the Debtors, or the Reorganized Debtors, as applicable, against the Debtors, Reorganized Debtors, OPPD, or any Person, as applicable, accruing before, on, or after the Effective Date as it relates to that certain *Engineer, Procure, and Construct Contract for Omaha Public Power District Standing Bear Lake and Turtle Creek Generating Stations* (Contract No. 263406) dated September 21, 2021, as amended by those certain *Amendment No. 1 and Amendment No. 2 to Engineer, Procure, and Construct Contract for Omaha Public Power District Standing Bear Lake and Turtle Creek Generating Stations* (Contract No. 263406) dated August 13, 2024 (together with all amendments, exhibits, schedules, and ancillary agreements and documents thereto, the "**OPPD Contract**"), or the adversary proceeding, pending before the Court at Adversary Number 25-03025; (ii) all parties' rights, remedies, and obligations under the OPPD Contract are explicitly preserved, and all terms of the OPPD Contract remain fully enforceable after the Effective Date notwithstanding the Plan Injunction; and (iii) OPPD is hereby deemed, as of the Effective Date, to have affirmatively opted out of the Third-Party Release

provisions of the Plan and is not bound by the Third-Party Release or any other provision contained in the Plan Documents purporting to release, discharge, impair, or enjoin OPPD's rights, Claims, Causes of Action, or remedies against any non-Debtor, including Travelers Casualty and Surety Company and Pacific Indemnity Company, who issued performance and payment bond no. 107261753/82455022 (the "**OPPD Surety Bonds**").  All of OPPD's rights (whatever such rights may or may not be) are hereby explicitly preserved against the OPPD Surety Bonds.

162.     **Provisions Regarding Element Fleet**.  Notwithstanding anything to the contrary set forth in the Plan or this Order, (i) on the Effective Date, the Reorganized Debtors shall be deemed to have assumed (a) the Master Lease Agreement dated July 1, 2008, executed by Zachry Industrial, Inc. (together with any and all amendments); (b) the Master Services Agreement dated July 1, 2008, executed by Zachry Industrial, Inc. (together with any and all amendments, and addenda); (c) the Vehicle Fleet Open-End Lease Agreement dated April 18, 2022, executed by Zachry Maintenance Services, LLC (together with any and all amendments, and addenda); (d) the Master Services Agreement dated April 18, 2022, executed by Zachry Maintenance Services, LLC (together with any and all amendments, and addenda); (e) the Continuing Guaranty of Payment dated June 23, 2008, executed by ZHI; and (f) the Continuing Guaranty of Payment dated March 28, 2022, executed by ZHI (collectively, (a)-(f), the "**Element Contracts**" and items (e) and (f), collectively, the "**Guaranty Agreements**"); (ii) no Cure Claim in Cash shall be paid to Element Fleet Corporation ("**Element**") by the Reorganized Debtors on the Effective Date; (iii) to the extent either or both of the Guaranty Agreements are not executory contracts capable of being assumed under section 365 of the Bankruptcy Code they shall not be subject to the discharge (**Article VIII**), re-vesting of assets (**Article IV.E**) or cancellation of instruments (**Article IV.I**) provisions of the Plan and shall remain enforceable in accordance with their terms and applicable non-bankruptcy

law following the Effective Date; (iv) following the Effective Date, any payments under the Element Contracts shall be made in the ordinary course of business pursuant to the terms of the Element Contracts and without regard to the discharge provisions of **Article V.A** of the Plan; (iv) following the Effective Date, the Reorganized Debtors and Element may exercise any rights of set off and/or recoupment under the Element Contracts in accordance with the terms of the Element Contracts, and Element shall not be obligated to file a motion by the Confirmation Date under **Article VI.J** of the Plan; (v) the retention of jurisdiction provision in **Article XI.3** of the Plan shall not apply to the Element Contracts after the Effective Date; and (vi) as an administrative matter, Element is hereby deemed, as of the Effective Date and without any further action, notice, or order by any party or this Court, to have withdrawn Claim Nos. 1238, 1239, and 1240.

163.     **Provisions Regarding Reynolds**.  Notwithstanding anything to the contrary in the Plan Documents: (i) D. Reynolds Company, d/b/a The Reynolds Company ("**Reynolds**") is hereby deemed, as of the Effective Date, to have affirmatively opted out of the Third-Party Release provisions of the Plan and is not bound by the Third-Party Release; (ii) confirmation of the Plan shall not release, discharge, impair, or enjoin Reynolds' rights, Claims, or remedies against any non-Debtor, including BMZ Third Coast Partners ("**BMZ**"), Burns & McDonald Engineering Company, Inc., and the Sureties (Travelers Casualty and Surety Company of America and Pacific Indemnity Company), subject to the terms of this paragraph; (iii) as set forth in **Article II.A** of the Plan, any Administrative Claims of Reynolds that accrued in the ordinary course of business after the Petition Date may be paid by the Debtors or Reorganized Debtors, as applicable, in the ordinary course of business, to the extent not otherwise paid as Cure Claims on the Effective Date; and (iv) confirmation of the Plan shall not release, discharge, impair, or enjoin Reynolds' rights, claims, or remedies against any Person accruing on or after the Effective Date.  On the Effective Date, as a

Cure Claim, the Debtors shall pay to Reynolds the sum of $9,459,022.55 which payment shall be deemed to fully satisfy: (a) Proof of Claim No. 64 filed by Reynolds, and (b) any Claim which Reynolds may have or assert against the Sureties, whether based on the Claim reflected in Proof of Claim No. 64, any other Claim against the Debtors, or otherwise, and Reynolds shall not assert against the Sureties any such Claims that are actually satisfied pursuant to this paragraph.  Proof of Claim No. 65 relating to BMZ shall be deemed as withdrawn based upon the terms of this provision.  Reynolds's objections to confirmation of the Plan [Docket Nos. 1859, 2239, 2322] are resolved by this paragraph.

164.  **Provisions Regarding Encina.**  Notwithstanding anything to the contrary in the Plan Documents, including **Article VII.E** of the Plan, Claim No. 1753 filed by Encina Development Group, LLC ("**Encina**") shall be deemed timely filed if the Court grants Encina's *Emergency Motion to Permit Filing Proof of Claim After Bar Date* [Docket No. 2120] (the "**Encina Motion**").  The hearing on the Encina Motion shall be adjourned to no earlier than April 1, 2025 at 3:00 p.m. (prevailing Central Time), or such other date and time agreed by the Debtors and Encina or ordered by the Court.  *Encina Development Group LLC's Objection to Confirmation of the Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 2315] shall be deemed withdrawn.

165.  **Provisions Regarding Consolidated Pipe and Supply.**  For the avoidance of doubt, any rights of Consolidated Pipe and Supply Company, Inc. d/b/a High Country Fusion with respect to the Claim Nos. 1453, 1478, 1649, whether against the Debtors, Golden Pass, or other third-party, if any, are reserved pending satisfaction of such claims consistent with the terms of the Plan.

166. **Provisions Regarding the Sureties**.  No provision of the Plan Documents shall bar, release, impair, expand, alter, modify, amend, transfer, limit, enjoin, prime, or subordinate the rights, claims, and defenses of Travelers Casualty & Surety Company of America, Pacific Indemnity Company, or any of the foregoing's parent companies, affiliates, and/or successors (each a "**Surety**", and collectively, the "**Sureties**") under (1) any surety bonds by the Sureties (collectively, the "**Existing Surety Bonds**"), (2) any indemnity agreements or other agreements between any Surety and any Debtor in these bankruptcy cases related to the Existing Surety Bonds (the "**Prepetition Indemnity Agreements**"), or (3) the terms, conditions, rights, claims, defenses, and/or obligations of the Sureties or of the Debtors under the Existing Surety Bonds or the Prepetition Indemnity Agreements.  The Reorganized Debtors have and are hereby deemed to assume *cum onere* the Existing Surety Bonds and Prepetition Indemnity Agreements, and any and all obligations thereunder, without regard to and without the necessity of any determination as to whether the Existing Surety Bonds or the Surety Indemnity Agreements are executory contracts or whether such agreements are financial accommodations, as those terms are defined or used in the Bankruptcy Code, and the Sureties are hereby deemed to have consented to the Debtors' assumption of the Existing Surety Bonds and Prepetition Indemnity Agreements.  All obligations of the Debtors and the Sureties under the Existing Surety Bonds and Prepetition Indemnity Agreements shall be satisfied by the Debtors and the Sureties, as applicable, in the normal course of business in accordance with the terms of the applicable agreements.  The Reorganized Debtors shall execute new indemnity agreements in favor of, and in a form acceptable to, in their sole discretion, each of the Sureties (the "**Post-Confirmation Indemnity Agreements**") in forms substantially the same as the Prepetition Indemnity Agreements; *provided, however*, that (1) the execution of the Post-Confirmation Indemnity Agreements shall be deemed cumulative relief and

any failure to execute the same shall not impact the liability of the Reorganized Debtors under the Existing Surety Bonds or the Prepetition Indemnity Agreements, and (2) nothing shall obligate the Sureties to issue new surety bonds or renew any Existing Surety Bonds or bar, enjoin, or stay the Sureties from demanding collateral or exercising any other of the Sureties' rights, claims, and defenses, in each case subject in all respects to the terms and conditions of the Existing Surety Bonds, Prepetition Indemnity Agreements, and Post-Confirmation Indemnity Agreements, as applicable.  The Sureties shall be deemed to have opted out of the Third-Party Release provided in **Article VIII.D** of the Plan, and such Third-Party Release shall not be applicable to the Sureties. Notwithstanding any other provision of the Plan Documents, the Sureties shall not be enjoined from enforcing any rights under the Existing Surety Bonds and the Prepetition Indemnity Agreements.  As an administrative matter and in consideration of the Reorganized Debtors' assumption of the obligations as set forth in this paragraph, the Sureties are hereby deemed, as of the Effective Date, to have withdrawn all proofs of claim filed in the Chapter 11 Cases, including, for the avoidance of doubt, Claim Nos. 1210, 1216, 1217, 1218, 1219, 1220, 1222, 1223, 1224, 1247, 1367, 1371, 1374, 1376, 1378, 1385, 1388, 1389, 1394, 1398, 1402, 1403, 1405, 1406, 1408, 1412, 1414, 1416, 1417, 1418, and 1155, without any further action, notice, or order by any party or this Court.  For the avoidance of doubt, the Debtors and the Sureties reserve all rights, defenses, and claims under the Existing Surety Bonds and Prepetition Indemnity Agreements, which are preserved notwithstanding anything to the contrary in the Plan Documents.

167.   **Provisions Regarding Zurich and Chubb**.  Notwithstanding anything to the contrary in the Plan Documents, any agreement or order related to post-petition or exit financing, any bar date notice or claim objection, any notice of any cure amount or claim, any document related to any of the foregoing, or any other order of the Court (including, without limitation, any

other provision that purports to be preemptory or supervening, confers Court jurisdiction, grants

an injunction, discharge or release, or requires a party to opt out of any releases):

a.  nothing alters, modifies or otherwise amends the terms and conditions of either of (i) the Zurich Insurance Program (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature, and priority of the Zurich Collateral), or (ii) any insurance policies issued by ACE American Insurance Company, Federal Insurance Company or any of their U.S.-based affiliates and predecessors (collectively, and together with ESIS, Inc., solely in their capacities as insurers and third party administrators "**Chubb**"), to, or which provide coverage to, any of the Debtors (or any of their predecessors) at any time and for any line of coverage (collectively and together with any agreements, documents or instruments related thereto and each as amended, modified or supplemented and including any exhibit or addenda thereto, the "**Chubb Insurance Program**") (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature, and priority of any letters of credit, loss funds, trusts, cash collateral, credits, return premium, unearned premium and any and all other collateral and/or security (including any proceeds of any of the foregoing) provided now or at any time prior or after hereto, by or on behalf of the Debtors to Chubb, the "**Chubb Collateral**") except that as of the Effective Date, the Reorganized Debtors jointly and severally shall assume the Zurich Insurance Program and the Chubb Insurance Program in their entireties pursuant to sections 105 and 365 of the Bankruptcy Code;

b.  nothing therein releases or discharges (i) Zurich's security interests and liens on the Zurich Collateral or (ii) Chubb's security interests and liens on the Chubb Collateral;

c.  nothing therein releases or discharges the Zurich Claims or the claims of Chubb (including, without limitation any Cure Claim, claim for reimbursement of any deductible or self-insured retention that Chubb pays on behalf of the Debtors or Reorganized Debtors, as applicable, arising under the Chubb Insurance Program (regardless of whether all or any part of such claims arise or become liquidated before or after the Petition Date, effectiveness of the Plan or conversion of one or more of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, the "**Chubb Claims**")), and further, the Zurich Claims and the Chubb Claims are actual and necessary expenses of the Debtors' estates (or the Reorganized Debtors, as applicable) and shall be paid in full in the ordinary course of business, whether as an Allowed Administrative Claim under section 503(b)(1)(A) of the Bankruptcy Code or otherwise, regardless of when such amounts are or shall become liquidated, due or paid, without the need or requirement for either Zurich or Chubb to file or serve a request, motion, or application for payment of or proof of any Proof of Claim, Cure Claim (or any objection to

cure amounts/notices), or Administrative Claim (and further and for the avoidance of doubt, any claim bar date shall not be applicable to either Zurich or Chubb);

d.      the Debtors or the Reorganized Debtors, as applicable, shall not sell, assign, or otherwise transfer the Zurich Insurance Program or any portion thereof, or the Chubb Insurance Program or any portion thereof and/or any of the rights, benefits, interests, and proceeds under the Zurich Insurance Program or the Chubb Insurance Program except with the express written permission of Zurich or Chubb, respectively;

e.      the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in **Article VIII** of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against Zurich and/or Chubb under applicable non-bankruptcy law to proceed with their claims; (ii) Zurich and Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court, (a) all workers' compensation or direct action claims covered by the Zurich Insurance Program or the Chubb Insurance Program, (b) all claims where an order has been entered by the Court granting a claimant relief from the automatic stay or the injunctions set forth in **Article VIII** of the Plan to proceed with its claim, and (c) all costs in relation to each of the foregoing; (iii) Zurich or Chubb to draw against any or all of the Zurich Collateral or Chubb Collateral, as applicable, and to hold the proceeds thereof as security for the obligations of the Debtors (or the Reorganized Debtors, as applicable) to Zurich or Chubb, as applicable, and/or apply such proceeds to the obligations of the Debtors (or the Reorganized Debtors, as applicable) under the Zurich Insurance Program or Chubb Insurance Program, in such order as Zurich or Chubb, as applicable, may determine; and (iv) subject to the terms of the Zurich Insurance Program, the Chubb Insurance Program and/or applicable non-bankruptcy law, Zurich and Chubb to (a) cancel any policies under the Zurich Insurance Program or the Chubb Insurance Program, respectively, and (b) take other actions relating to the Zurich Insurance Program or the Chubb Insurance Program, respectively (including setoff);

f.      neither **Article VIII.F** of the Plan nor any corresponding paragraph of this Order shall apply to any claims covered by and/or asserted under the Zurich Insurance Program or Chubb Insurance Program; and

g.      without altering any of the foregoing, provided that there is no liquidated amount due to Zurich or Chubb as of the Effective Date, no Cure Claim in Cash shall be paid to Zurich or Chubb by the Reorganized Debtors.

Terms used in this paragraph but not defined in the Plan shall have the meaning attributed to them in that certain *Order (I) Authorizing the Debtors to Enter into the New Insurance Program, (II) Authorizing Assumption of the Existing Insurance Program, and (III) Granting Related Relief* entered by the Court on October 29, 2024 [Docket No. 1262] (the "**Zurich Order**"), except that the term Zurich Insurance Program used in this paragraph shall have the meaning given to the term "Insurance Program" in the Zurich Order.

168.    **Provisions Regarding Personal Injury Claims.**  Notwithstanding anything to the contrary in Plan Documents, the Plan Documents shall not impair any right of the Adams Plaintiffs,[4] Andres Plaintiffs,[5] or Martinez Plaintiffs[6] to litigate any timely filed, personal injury General Unsecured Claim to final judgment or settlement against the Debtors in name only, and, if successful, to recover on such Claim from any third-party that provides insurance coverage or indemnification to the Debtors, subject to applicable non-bankruptcy law and any applicable agreements governing such insurance coverage or indemnification between such third-parties and the Debtors; *provided*, *however*, the foregoing shall not apply to any Claim released pursuant to the Third-Party Release set forth in the Plan to the extent any Holder of a Claim elects not to opt-out of the Third-Party Release.  To the extent any such insurance coverage or indemnification is insufficient to provide the treatment to an Allowed Claim required by **Article III** of the Plan, the

---

[4]    The "**Adams Plaintiffs**" means any plaintiffs in the litigation styled as *Adams, et al. v. Zachry Industrial, Inc.*, Case No. 5:23-cv-01437-XR in the United States District Court for the Western District of Texas.

[5]    The "**Andres Plaintiffs**" means any plaintiffs in the litigation styled as *Ursula Andres v. Zachry Industrial, Inc., et al.*, Case No. E-0210871 in the 172nd Judicial District Court of Jefferson County, Texas.

[6]    The "**Martinez Plaintiffs**" means any plaintiffs in the litigation styled as *Yelina Martinez, Individually, and as the Estate Representative of Jaime Martinez, Deceased, et al, v. Zachry Industrial, Inc., et al.*, Case No. 23DCCV0129 in the 172nd Judicial District Court of Jefferson County, Texas.

Holder of such Allowed Claim shall have an Allowed General Unsecured Claim against the applicable Debtor's estate for the deficiency.

169. **Provisions Regarding CB&I and Chiyoda.** Notwithstanding anything to the contrary in the Plan Documents:

      a.    Pursuant to section 365 of the Bankruptcy Code, the applicable Reorganized Debtors shall assume: (a) that certain Joint Venture Agreement for the Freeport Liquefaction Project dated December 10, 2013, by and among ZII and CB&I LLC ("**CB&I**") (the agreement, as amended, the "**CZJV-FLNG Agreement**"), which formed a joint venture thereunder (the "**CZJV-FLNG**"); (b) that certain Joint Venture Agreement dated March 24, 2015, by and among ZII, CB&I, and Chiyoda International Corporation ("**CIC**," and together with ZII and CB&I, the "**FLNG JV Parties**") (such agreement, as amended, the "**CCZJV-FLNG Agreement**"), which formed a joint venture thereunder (the "**CCZJV-FLNG**," and together with the CZJV-FLNG, the "**FLNG JVs**"); and (c) any parent guarantees related to the CZJV-FLNG Agreement or the CCZJV-FLNG Agreement (collectively, (a) through (c), the "**FLNG JV Agreements**"). The Debtors are deemed to have cured all monetary defaults (if any) existing under the FLNG JV Agreements on account of any Cure Claim without the need for any cash payment, either into escrow or directly to CB&I, CIC, or the FLNG JVs on the Effective Date.

      b.    Upon assumption of the FLNG JV Agreements, the FLNG JV Parties shall continue to abide and be bound by all terms of the FLNG JV Agreements as if the Debtors had not filed any bankruptcy, without regard to whether any payment obligations arising under the FLNG JV Agreements accrued prepetition or postpetition, including, without limitation, any indemnities, cost-sharing or risk-sharing provisions, or parent company guaranties provided for under the FLNG JV Agreements, including with respect to any liabilities adjudicated or settled, whether in the past, present, or future, in accordance with the applicable FLNG JV Agreements, in connection with the following actions and any appeals thereof: (a) *FLNG Liquefaction, LLC, et al. v. CB&I Inc., et al.*, Adv. Pro. No. 24-03195 (MI) (the "**FLNG Motor Defect Claim**"); (b) *FLNG Liquefaction, LLC, et al. v. Zachry Industrial, Inc., et al.*, Adv. Pro. No. 24-03189 (MI) (the "**FLNG Subrogation Claim**"); and (c) *Allianz Global Risks US Insurance Co., et al. v. Zachry Industrial, Inc., et al.*, Adv. Pro. No. 24-03190 (MI) (the "**Allianz Subrogation Claim**," and together with the FLNG Motor Defect Claim and the FLNG Subrogation Claim, the "**FLNG Litigation Claims**").

      c.    By assuming the FLNG JV Agreements, the Debtors retain all rights under the FLNG JV Agreements, including with respect to the FLNG JVs'

property, and specifically, the FLNG JVs' insurance policies and the proceeds thereof, to the same extent as such rights existed prepetition.

    d.    Notwithstanding anything to the contrary in this Order, the Plan, the Disclosure Statement, or any other order of this Court in these chapter 11 cases, upon assumption of the FLNG JV Agreements, the Claims that CB&I (on behalf of itself and as successor to CB&I Inc.) [Claim Nos. 1524 and 1527] and CIC [Claim Nos. 1555 and 1559] have asserted against the Debtors shall be deemed withdrawn in their entirety, as if CB&I and CIC had not filed such Claims, and shall be discharged without any distributions under the Plan.

    e.    Notwithstanding anything to the contrary in this Order, the Plan, the Disclosure Statement, or any other order of this Court in these chapter 11 cases, the FLNG JV Parties acknowledge and agree that the applicable governing law, jurisdiction, and venue provisions set forth in the FLNG JV Agreements shall govern post-Effective Date and that any post-Effective Date disputes under applicable non-bankruptcy law among CB&I, CIC, the FLNG JVs, and the Debtors or the Reorganized Debtors, as applicable, shall not be subject to the jurisdiction of the Court, regardless of when such disputes first arose or accrued.  For the avoidance of doubt, this paragraph shall not affect this Court's jurisdiction with respect to any pre-Effective Date disputes, including with respect to the FLNG Litigation Claims, the Plan, the Order, and the GPX Settlement.

    f.    For the avoidance of doubt, upon entry of the GPX Final Settlement Order, the Debtors exited the MZJV-GPX and rejected all of their interests therein.

    g.    None of CIC, CB&I, the CCZJV-GPX, the MZJV-GPX, the CZJV-FLNG, or the CCZJV-FLNG are Releasing Parties or Released Parties, and all such parties are deemed to opt out of the Third-Party Release.

    h.    Nothing in this paragraph 169 modifies the terms of the GPX Settlement, including the releases by the GPX Settlement Parties under the GPX Settlement, or the terms of the GPX Settlement Dispute Opinion or GPX Settlement Dispute Order.  Notwithstanding anything to the contrary in this Order, the Plan, the Disclosure Statement, or any other order of this Court in these chapter 11 cases, to the extent there is any inconsistency between this Order and the GPX Settlement Documents, or between the Plan and the GPX Settlement Documents, with respect to the terms of the GPX Settlement, the GPX Settlement Documents shall control.

170.    **Effect of Conflict.**  This Order supersedes any Court order issued prior to the

Confirmation Date that may be inconsistent with this Order.  In the event of an inconsistency

between this Order and the Plan, the Disclosure Statement, or the Plan Supplement, this Order shall control.

171.   **Requests to Waive Stay of Order.**   The rights of the Debtors and Reorganized Debtors, as applicable, are fully reserved and preserved to request, including on an emergency basis, that the Court waive any stay of this Confirmation Order under any Bankruptcy Rule for good cause shown.

172.   **Waiver or Estoppel.**   Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court prior to the Confirmation Date.

173.   **Final Order.**   This Order is a Final Order, and the period in which an appeal must be filed shall commence upon the entry hereof.

174.   **Retention of Jurisdiction.**   The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and relating to, the Chapter 11 Cases, this Order, and the Plan, including the matters set forth in **Article XII** of the Plan and sections 105(a) and 1142 of the Bankruptcy Code.

Dated:  _____, 2025
       Houston, Texas

                                  _____
                                  THE HON. MARVIN ISGUR
                                  UNITED STATES
                                  BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ZACHRY HOLDINGS, INC., *et al.*[1] | ) | Case No. 24-90377 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FURTHER MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF ZACHRY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile:  (713) 496-9701
Email: charles.koster@whitecase.com

**WHITE & CASE LLP**
Bojan Guzina (admitted *pro hac vice*)
Andrew F. O'Neill (admitted *pro hac vice*)
William A. Guerrieri (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
Adam T. Swingle (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email:   bojan.guzina@whitecase.com
         aoneill@whitecase.com
         william.guerrieri@whitecase.com
         fhe@whitecase.com
         adam.swingle@whitecase.com
         barrett.lingle@whitecase.com

*Counsel to the Debtors and Debtors in Possession*

Dated: February 23, 2025
Houston, Texas

---

[1]   The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814.  A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' Claims and Noticing Agent at www.veritaglobal.net/ZHI.  The location of the Debtors' service address in these Chapter 11 Cases is: P.O. Box 240130, San Antonio, Texas 78224.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
        GOVERNING LAW ................................................................................................................1
    A.    Defined Terms. ...................................................................................................1
    B.    Rules of Interpretation. ....................................................................................12
    C.    Computation of Time. ......................................................................................13
    D.    Governing Law. ...............................................................................................13
    E.    Reference to Monetary Figures. .......................................................................13
    F.    Controlling Document. ....................................................................................13

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ..................................................14
    A.    Administrative Claims. ....................................................................................14
    B.    Professional Fee Claims. ..................................................................................14
    C.    Priority Tax Claims. .........................................................................................15
    D.    Restructuring Expenses. ...................................................................................15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................15
    A.    Classification of Claims and Interests. ............................................................15
    B.    Formation of Debtor Groups for Convenience Only ........................................16
    C.    Treatment of Claims and Interests. .................................................................16
    D.    Special Provision Governing Unimpaired Claims. ..........................................19
    E.    Elimination of Vacant Classes. .......................................................................19
    F.    Acceptance by Impaired Classes. ....................................................................19
    G.    Voting Classes, Presumed Acceptance by Non-Voting Classes. .....................19
    H.    Intercompany Interests. ...................................................................................19
    I.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................19
    J.    No Substantive Consolidation. ........................................................................20
    K.    Controversy Concerning Impairment. .............................................................20
    L.    Subordinated Claims. ......................................................................................20

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ...........................................20
    A.    General Settlement of Claims and Interests. ...................................................20
    B.    GPX Settlement. ..............................................................................................20
    C.    Restructuring Transactions. .............................................................................21
    D.    The Reorganized Debtors. ...............................................................................22
    E.    Vesting of Assets in the Reorganized Debtors. ................................................22
    F.    Sunbelt Promissory Note. ................................................................................22
    G.    GUC Promissory Notes. ..................................................................................22
    H.    Sources of Consideration for Plan Distributions. ............................................23
    I.    Cancellation of Existing Agreements and Interests. .........................................24
    J.    Corporate Action. ............................................................................................25
    K.    Directors and Officers of the Reorganized Debtors. ........................................25
    L.    Deferred Compensation Plan and Other Employee Obligations. .....................25
    M.    Indemnification Obligations. ...........................................................................25
    N.    Preservation of Causes of Action. ...................................................................26
    O.    Effectuating Documents; Further Transactions. ..............................................26
    P.    Certain Securities Law Matters. ......................................................................27
    Q.    Transferability of GUC Promissory Notes. .....................................................27
    R.    Section 1146 Exemption. .................................................................................27
    S.    Dissolution of Certain Debtors. .......................................................................28

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............28
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ....28
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases........29

C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.................................29
D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases...........30
E.      Insurance Policies. ....................................................................................................................30
F.      Workers' Compensation Program .............................................................................................30
G.      Reservation of Rights..................................................................................................................31
H.      Contracts and Leases Entered Into After the Petition Date........................................................31

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .......................................................................31

A.      Timing and Calculation of Amounts to Be Distributed.............................................................31
B.      Distributions to Holders of Disputed Claims and Interests. .....................................................31
C.      Distribution Agent. .....................................................................................................................31
D.      GUC Note Administrative Agent and GUC Note Collateral Agent...........................................32
E.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.................................32
F.      Compliance with Tax Requirements. .........................................................................................33
G.      No Postpetition or Default Interest on Claims. ..........................................................................33
H.      Allocations. ...............................................................................................................................33
I.      Foreign Currency Exchange Rate. ..............................................................................................33
J.      Setoffs and Recoupment. ............................................................................................................34
K.      Claims Paid or Payable by Third Parties.....................................................................................34

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED
         CLAIMS ..................................................................................................................................35

A.      Claims Administration Responsibilities......................................................................................35
B.      Allowance of Claims. .................................................................................................................36
C.      Estimation of Claims. .................................................................................................................36
D.      Adjustment to Claims Register Without Objection.....................................................................37
E.      Disallowance of Claims or Interests. ..........................................................................................37
F.      Reimbursement or Contribution. ................................................................................................37
G.      Amendments to Proofs of Claim. ...............................................................................................37
H.      No Distributions Pending Allowance. ........................................................................................38
I.      Distributions After Allowance. ..................................................................................................38
J.      Single Satisfaction of Claims. ....................................................................................................38

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............................38

A.      Discharge of Claims and Termination of Interests.....................................................................38
B.      Release of Liens...........................................................................................................................38
C.      Releases by the Debtors. .............................................................................................................39
D.      Releases by Third Parties. ...........................................................................................................40
E.      Exculpation. ...............................................................................................................................41
F.      Injunction. ..................................................................................................................................41
G.      Limitation of Liability of Officers, Directors, and Agents.........................................................43
H.      Waiver of Statutory Limitations on Releases..............................................................................43
I.      Special Provision Regarding the United States Government.......................................................43
J.      Protections Against Discriminatory Treatment. .........................................................................44
K.      Document Retention. ..................................................................................................................44

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN ....................................44

A.      Conditions Precedent to the Effective Date. ..............................................................................44
B.      Waiver of Conditions..................................................................................................................45
C.      Substantial Consummation. ........................................................................................................45
D.      Effect of Failure of Conditions. .................................................................................................45

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN .................................45

A.      Modification and Amendments. .................................................................................................45
B.      Effect of Confirmation on Modifications...................................................................................46
C.      Revocation or Withdrawal of Plan..............................................................................................46

ARTICLE XI. RETENTION OF JURISDICTION ................................................................................46

ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................................................48

    A.      Immediate Binding Effect. ...............................................................................48
    B.      Waiver of Stay. ................................................................................................49
    C.      Additional Documents. ....................................................................................49
    D.      Payment of Statutory Fees. .............................................................................49
    E.      Statutory Committee and Cessation of Fee and Expense Payment. ...............49
    F.      Reservation of Rights. .....................................................................................49
    G.      Successors and Assigns. ..................................................................................50
    H.      Notices. ............................................................................................................50
    I.      Term of Injunctions or Stays. .........................................................................51
    J.      Entire Agreement. ............................................................................................51
    K.      Exhibits. ...........................................................................................................52
    L.      Deemed Acts. ...................................................................................................52
    M.      Nonseverability of Plan Provisions. ...............................................................52
    N.      Votes Solicited in Good Faith. ........................................................................52
    O.      Request for Expedited Determination of Taxes. ............................................52
    P.      Closing of Chapter 11 Cases. ..........................................................................52
    Q.      Waiver or Estoppel. .........................................................................................53
    R.      Creditor Default. .............................................................................................53

## INTRODUCTION

Zachry Holdings, Inc. and the other above-captioned debtors and debtors in possession (collectively, the "**Debtors**") propose this Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in **Article I.A** of this Plan.  Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of this Plan, the Restructuring Transactions, and certain related matters.  The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.     <u>Defined Terms</u>.

As used in this Plan, capitalized terms have the meanings set forth below.

1.     "<u>A&R Credit Facility</u>" means the Prepetition Credit Facility as amended and restated in accordance with the terms of this Plan and the A&R Credit Facility Documents.

2.     "<u>A&R Credit Facility Agent</u>" means the Prepetition Credit Facility Agent, in its capacity as administrative agent under the A&R Credit Facility.

3.     "<u>A&R Credit Facility Documents</u>" means any documents governing the A&R Credit Facility, including the A&R Credit Facility Term Sheet, the Exit Intercreditor Agreement, and any amendments, modifications, and supplements thereto, and together with any related commitments, notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

4.     "<u>A&R Credit Facility Lenders</u>" means, collectively, the lenders under the A&R Credit Facility.

5.     "<u>A&R Credit Facility Term Sheet</u>" means the term sheet describing the material terms of the A&R Credit Facility, attached as Schedule 1 to Exhibit A of the *Notice of Filing of the Third Plan Supplement* [Docket No. 2316].

6.     "<u>Administrative Claim</u>" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; and (d) Adequate Protection Superpriority Claims (as defined in the Cash Collateral Order).

7.     "<u>Affiliate</u>" means, with respect to any Entity, all Entities that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code if such Entity was a debtor in a case under the Bankruptcy Code.

8. "Allowed" means, with respect to any Claim or Interest, a Claim or an Interest expressly allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable.

9. "Assumption List" means the list of Executory Contracts and Unexpired Leases that shall be assumed by the Debtors pursuant to the Plan attached as Exhibit B to the *Notice of Filing of the Second Plan Supplement* [Docket No. 2150] and as may be amended from time to time.

10. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

11. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas.

12. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

13. "Bar Date" means the applicable deadline set by the Bankruptcy Court pursuant to this Plan, the Bar Date Order, or other Final Order by which Proofs of Claim must be filed with respect to a Claim.

14. "Bar Date Order" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 636].

15. "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

16. "Cash" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

17. "Cash Collateral" has the meaning set forth in section 363(a) of the Bankruptcy Code.

18. "Cash Collateral Order" means either a further interim or final cash collateral order, based upon the *Seventh Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 2135].

19. "Cause of Action" means, without limitation, any Claim, Interest, claim, damage, remedy, cause of action, controversy, demand, right, right of setoff, action, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, contribution, reimbursement, guaranty, debt, suit, class action, third-party claim, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, direct or indirect, choate or inchoate, liquidated or unliquidated, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable or existing directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, statutory or otherwise, under the Bankruptcy Code or applicable non-bankruptcy law, or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code or similar non-U.S. or state law; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

20. "CB&I" means CB&I LLC, a wholly owned subsidiary of McDermott International, Inc.

21. "CCZJV-GPX" means the hybrid joint venture between ZII, CB&I, and Chiyoda with respect to the GPX Project.

22.     "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

23.     "Chiyoda" means Chiyoda International Corporation.

24.     "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

25.     "Claims and Noticing Agent" means Verita Global, LLC, formerly known as Kurtzman Carson Consultants, LLC, as claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

26.     "Claims Objection Deadline" means ninety (90) calendar days after the Effective Date, subject to extension as set forth in **Article VII.A** hereof.

27.     "Claims Register" means the official register of Claims against and Interests in the Debtors maintained by the Claims and Noticing Agent.

28.     "Class" means a class of Claims or Interests as set forth in **Article III** hereof pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

29.     "CM/ECF" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

30.     "Committee" means the Statutory Unsecured Claimholders' Committee, appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code on June 4, 2024 [Docket No. 176] and reconstituted by the U.S. Trustee on January 27, 2025 [Docket No. 2003].

31.     "Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

32.     "Confirmation Date" means the date upon which the Bankruptcy Court confirms this Plan pursuant to section 1129 of the Bankruptcy Code.

33.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court on the confirmation of this Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

34.     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably satisfactory to the Debtors and the Committee and consistent in all material respects with the terms and conditions of the Plan.

35.     "Consummation" means the occurrence of the Effective Date.

36.     "Convenience Claim" means any Claim that would otherwise be a General Unsecured Claim that is (a) Allowed in the Convenience Claim Amount or less, or (b) irrevocably reduced to the Convenience Claim Amount at the election of the Holder of an Allowed General Unsecured Claim as evidenced on the ballot timely and validly submitted by such Holder, pursuant to the solicitation procedures approved under the Disclosure Statement Order; *provided*, *however*, that General Unsecured Claims may not be subdivided into multiple Claims of the Convenience Claim Amount or less for purposes of receiving treatment as a Convenience Claim.

37.     "Convenience Claim Amount" means $25,000.00.

38.     "Cure Claim" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365

3

of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

39.     "<u>Debtor Release</u>" means the release set forth in **<u>Article VIII.C</u>** of this Plan.

40.     "<u>Debtors</u>" has the meaning set forth in the introduction hereof.

41.     "<u>Deferred Compensation Plan</u>" means the supplemental non-qualified deferred compensation plan providing tax deferred income for certain employees of the Debtors.

42.     "<u>Deferred Compensation Plan Claims</u>" means any Claim against any Debtor derived from, based upon, or arising under the Deferred Compensation Plan.

43.     "<u>Disallowed</u>" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which: (i) has been disallowed, in whole or in part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or Reorganized Debtors in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent, or unliquidated and in respect of which a Proof of Claim or a proof of Interest, as applicable, has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code, any Final Order, or other applicable law; (v) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the filed amount of any Proof of Claim or proof of Interest; (vi) is evidenced by a Proof of Claim or a proof of Interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court, or which is required to be filed by order of the Bankruptcy Court, but as to which such Proof of Claim or proof of Interest was not timely or properly filed; (vii) is unenforceable to the extent provided in sections 502(b) or 502(e) of the Bankruptcy Code, including because such Claim asserts a right of reimbursement or contribution that is contingent as of the Effective Date; or (viii) subject to the Debtor Release, where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity, or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

44.     "<u>Disclosure Statement</u>" means the disclosure statement in respect of this Plan, including all exhibits and schedules thereto, as approved or ratified by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

45.     "<u>Disclosure Statement Order</u>" means one or more orders entered by the Bankruptcy Court: (i) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, and (ii) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

46.     "<u>Disputed</u>" means, as to a Claim or an Interest, a Claim or an Interest that is (a) neither Allowed nor Disallowed under this Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; (b) subject to an objection or a request for estimation Filed by the Claims Objection Deadline by any party in interest, and such objection or request for estimation has not been withdrawn or determined by a Final Order; or (c) is contingent or unliquidated and not otherwise Allowed by a Final Order.

47.     "<u>Distribution Agent</u>" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, to make or facilitate distributions pursuant to this Plan for all Claims other than General Unsecured Claims.

48.     "<u>Distribution Record Date</u>" means the record date for purposes of making distributions under this Plan on account of Allowed Claims, which shall be the Effective Date.

4

49. "<u>Effective Date</u>" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in **Article IX.A** of this Plan have been satisfied or waived in accordance with **Article IX.B** of this Plan. Any action to be taken on the Effective Date may be taken on the Effective Date or as soon as reasonably practicable thereafter.

50. "<u>Employee Obligations</u>" means any existing obligations to employees, independent contractors, and retirees of the Debtors to be assumed, Reinstated, or honored, as applicable, in accordance with **Article IV.L** of this Plan, including the Deferred Compensation Plan.

51. "<u>Entity</u>" means any entity, as defined in section 101(15) of the Bankruptcy Code.

52. "<u>Equity Security</u>" means any equity security, as defined in section 101(16) of the Bankruptcy Code, in a Debtor.

53. "<u>Estate</u>" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

54. "<u>Exculpated Parties</u>" means, collectively, and in each case in its capacity as such, the Debtors, the Committee, and each member of the Committee.

55. "<u>Executory Contract</u>" means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

56. "<u>Exit Intercreditor Agreement</u>" means that certain junior lien intercreditor agreement (which shall be consistent in all material respects with the terms set forth in the term sheet attached as **Exhibit B** to the Confirmation Order), by and among the A&R Credit Facility Agent, as agent under the A&R Credit Facility, Sunbelt, as lender under the Sunbelt Promissory Note and the GUC Note Collateral Agent, as collateral agent under the GUC Note, as amended, restated, amended and restated, supplemented or otherwise modified from time to time.

57. "<u>Federal Judgment Rate</u>" means the federal judgment rate in effect as of the Petition Date.

58. "<u>File</u>" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.  "Filed" and "Filing" shall have correlative meanings.

59. "<u>Final Order</u>" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing has been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, for the avoidance of any doubt, an order or judgment that is subject to appeal shall not constitute a Final Order even if a stay of such order or judgment pending resolution of the appeal has not been obtained; *provided, further,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

60. "<u>General Unsecured Claim</u>" means any Unsecured Claim against the Debtors that is not: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a Restructuring Expense; (e) an Other Priority Claim; (f) a Deferred Compensation Plan Claim; (g) a Convenience Claim; or (h) an Intercompany Claim.  For the avoidance of doubt, General Unsecured Claims include (x) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (y) Claims resulting from litigation against one or more of the Debtors, arising prior to the Petition Date.

61.    "Golden Pass" means Golden Pass LNG Terminal LLC, f/k/a Golden Pass Products LLC.

62.    "Governing Body" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Reorganized Debtors, as applicable.

63.    "Governmental Unit" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

64.    "GPX Administrative Claims" means GPX Claims for amounts due in connection with the GPX Project incurred by ZII between May 21, 2024 and July 25, 2024 that constitute Administrative Claims.

65.    "GPX Claims" means Claims for ZII's obligations to vendors and subcontractors (including ZII's share of Pool A and Pool B obligations of CCZJV-GPX and MZJV-GPX, respectively, but excluding obligations to ZII and its affiliates) for amounts validly due for goods and/or services in respect of the GPX Project.

66.    "GPX Direct Payment Cap" means the Direct Payment Cap (as defined in the GPX Settlement Documents).

67.    "GPX Excess Claims Stipulation" means the joint stipulation of facts and agreed determination between the Debtors and Golden Pass determining the amount of Excess Claims (as defined in the GPX Settlement Term Sheet, attached as Exhibit A to the GPX Interim Settlement Order) under the GPX Settlement, attached as Exhibit G to the *Notice of Filing of the Second Plan Supplement* [Docket No. 2150].

68.    "GPX Final Settlement Order" means the *Final Order (I) Approving the Settlement By and Among the Debtors, Golden Pass LNG Terminal LLC, CB&I LLC, Chiyoda International Corporation, and CCZJV (II) Authorizing the Parties to Perform Any and All Obligations Contemplated By the Settlement, and (III) Granting Related Relief* [Docket No. 744].

69.    "GPX Interim Settlement Order" means the *Interim Order (I) Approving the Settlement By and Among the Debtors, Golden Pass LNG Terminal LLC, CB&I LLC, Chiyoda International Corporation, and CCZJV (II) Authorizing the Parties to Perform Any and All Obligations Contemplated By the Settlement, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket Nos. 610 (Sealed); 625 (Redacted)].

70.    "GPX L/C" means the *Irrevocable Standby Letter of Credit*, No. 3139428, dated February 25, 2019, as amended, issued by the GPX L/C Issuer.

71.    "GPX L/C Issuer" means the Prepetition Credit Facility Agent.

72.    "GPX L/C Permitted Draws" means Golden Pass's right, pursuant to the terms of the GPX Settlement, to make the GPX L/C Scheduled Draws; *provided*, *however*, that pursuant to **Article IV.B** hereof and the GPX Excess Claims Stipulation, the Debtors may wire Cash to Golden Pass in the amount of each Scheduled Draw on or before the date each Scheduled Draw is due under the GPX Settlement, in lieu of Golden Pass making each Scheduled Draw against the GPX L/C.

73.    "GPX L/C Scheduled Draws" means Golden Pass's right to draw on the GPX L/C in specified amounts on specified dates in accordance with the GPX Settlement; *provided*, *however*, that pursuant to **Article IV.B** hereof and the GPX Excess Claims Stipulation, the Debtors may wire Cash to Golden Pass in the amount of each Scheduled Draw on the date each Scheduled Draw is due under the GPX Settlement, in lieu of Golden Pass making each Scheduled Draw against the GPX L/C.

74.    "GPX Parent Guarantee" means that certain guarantee executed by ZHI in favor of Golden Pass (as amended, supplemented, or otherwise modified), related to the GPX Project.

75.     "GPX Project" means the Golden Pass liquefied natural gas project under construction in Sabine Pass, Texas.

76.     "GPX Settlement" means the settlement among the GPX Settlement Parties resolving disputes related to the GPX Project, as set forth in the GPX Settlement Documents, and approved on a final basis under the GPX Final Settlement Order.

77.     "GPX Settlement Dispute Opinion" means the *Memorandum Opinion* [Docket No. 1266], dated October 29, 2024.

78.     "GPX Settlement Dispute Order" means the *Order* [Docket No. 1267], dated October 29, 2024.

79.     "GPX Settlement Documents" means, collectively, the GPX Final Settlement Order, the GPX Interim Settlement Order, the GPX Settlement Term Sheet (attached as Exhibit A to the GPX Interim Settlement Order), the Confidential Settlement Agreement and Release in Connection with the Settlement Term Sheet [Docket No. 739], the GPX Excess Claims Stipulation, and all ancillary documents contemplated by and related to the foregoing documents.

80.     "GPX Settlement Parties" means the Debtors, Golden Pass, CCZJV-GPX, CB&I, and Chiyoda.

81.     "GUC Note Administrative Agent" means, solely in its capacity as such, an Entity selected by the Committee, reasonably acceptable to the Debtors, to serve as the administrative agent of the GUC Promissory Notes, and any successor thereto, on behalf of the Holders of Allowed General Unsecured Claims in accordance with the GUC Note Documents.  The identity of the initial GUC Note Administrative Agent shall be disclosed at or prior to the Confirmation Hearing.

82.     "GUC Note Collateral Agent" means, solely in its capacity as such, an Entity selected by the Committee and reasonably acceptable to the Debtors, to serve as the collateral agent of the GUC Promissory Notes, and any successor thereto, on behalf of the Holders of Allowed General Unsecured Claims in accordance with the GUC Note Documents.  The identity of the initial GUC Note Collateral Agent shall be disclosed at or prior to the Confirmation Hearing.

83.     "GUC Note Purchase Agreement" means that certain note purchase agreement to be entered into, on or before the Effective Date, by the Debtors and the GUC Note Administrative Agent on behalf of Holders of Allowed General Unsecured Claims, pursuant to which ZHI shall issue the GUC Promissory Notes on the terms set forth in the GUC Note Term Sheet.

84.     "GUC Note Documents" means any documents governing the GUC Promissory Notes, including the GUC Note Term Sheet, GUC Note Purchase Agreement, the Exit Intercreditor Agreement, and any amendments, modifications, and supplements thereto, and together with any related commitments, notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

85.     "GUC Note Term Sheet" means the term sheet describing the material terms of the GUC Promissory Notes, attached as Exhibit F to the *Notice of Filing of the Second Plan Supplement* [Docket No. 2150], and shall be acceptable to the Committee.

86.     "GUC Promissory Notes" means the secured promissory notes to be issued pursuant to the GUC Note Purchase Agreement and this Plan in a face amount equal to the aggregate Allowed amount of General Unsecured Claims (inclusive of postpetition interest accrued at the Federal Judgment Rate) and on the terms set forth in the GUC Note Term Sheet.

87.     "Holder" means a Person or an Entity holding a Claim against, or an Interest in, any Debtor, as applicable, including any Person or Entity that is the record or beneficial owner, nominee, investment advisor, sub-advisor, or manager of discretionary accounts that hold any Claim against or Interest in any Debtor.

88.     "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

89.     "Indemnification Obligation" means any existing indemnification obligations to be assumed, Reinstated, or honored, as applicable, in accordance with **Article IV.K** of this Plan.

90.     "Intercompany Claim" means any Claim against a Debtor held by another Debtor or a non-Debtor Affiliate.

91.     "Intercompany Interest" means any Interest in a Debtor held by another Debtor.

92.     "Interest" means, collectively, (a) any Equity Security in any Debtor and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor that existed immediately before the Effective Date.

93.     "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

94.     "Lien" means any lien, as defined in section 101(37) of the Bankruptcy Code.

95.     "MZJV-GPX" means the joint venture between ZII and CB&I with respect to the GPX Project.

96.     "Order" means any judgment, order, award, injunction, writ, permit, license, or decree of any Governmental Body or arbitrator of applicable jurisdiction.

97.     "Organizational Documents" means the organizational and governance documents for the Debtors, as may be amended to give effect to the Restructuring Transactions as contemplated by the Plan, including, without limitation, any applicable certificates of incorporation, certificates of formation, or certificates of limited partnership (or equivalent organizational documents), bylaws, and limited liability company agreements.

98.     "Other Priority Claim" means any Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

99.     "Other Secured Claim" means any Secured Claim against the Debtors other than the Prepetition Credit Facility Claims.

100.    "Parent Capital Contribution" means a capital contribution to be made on or prior to the Effective Date to ZHI by the immediate parent company of ZHI, totaling $53 million and comprised of (x) $30 million in Cash and (y) the cancellation of intercompany liabilities owed by the Debtors in an amount equal to $23 million.

101.    "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

102.    "Petition Date" means the date on which the Debtors commenced the Chapter 11 Cases, May 21, 2024.

103.    "Plan" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, supplemented, or otherwise modified from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments hereto, as may be altered, amended, supplemented, or otherwise modified from time to time in accordance with **Article IX.A** hereof, including the Plan Supplement (as altered, amended, supplemented, or otherwise modified from time to time), which is incorporated by reference herein and made part of the Plan as if set forth herein; *provided, however*, that the Debtors shall obtain the consent of the Committee (which consent shall not be unreasonably withheld) for any alterations, amendments, supplements, or modifications to the Plan impacting the treatment of Holders of General Unsecured Claims under the Plan.

104.    "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules), the initial drafts of certain of such documents to be Filed by the Debtors no later than seven (7) calendar days before the deadline to object to confirmation of this Plan to the extent available, or such later date as may be approved by the Bankruptcy Court, including the following, as applicable: (a) the Organizational Documents (solely to the extent that the Debtors determine, in their sole discretion, that any amendments to such Organizational Documents are necessary to effectuate the Restructuring Transactions on the Effective Date); (b) the Assumption List; (c) the Rejection List; (d) the Schedule of Retained Causes of Action; (e) the A&R Credit Facility Term Sheet; (f) the GUC Note Term Sheet; and (g) the GPX Excess Claims Stipulation; *provided, however,* that the Debtors shall obtain the consent of the Committee (which consent shall not be unreasonably withheld) for any alterations, amendments, supplements, or modifications to the Plan Supplement impacting the treatment of Holders of General Unsecured Claims under the Plan.

105.    "Prepetition Credit Agreement" means the *Third Amendment to Second Amended and Restated Credit Agreement*, dated as of May 2, 2023 (as amended, amended and restated, supplemented, or otherwise modified from time to time), among the Prepetition Loan Parties, the Prepetition Lenders, the Prepetition Credit Facility Agent, and each other party thereto.

106.    "Prepetition Credit Facility" means the senior secured credit facility, including the Prepetition Revolving Facility, Prepetition L/C Facility, and Prepetition Term Loan Facility, governed by the Prepetition Credit Agreement.

107.    "Prepetition Credit Facility Agent" means Bank of America, N.A., in its capacity as the administrative agent under the Prepetition Credit Agreement.

108.    "Prepetition Credit Facility Claims" means any Claim against any Debtor derived from, based upon, or arising under the Prepetition Credit Facility, including the Prepetition Revolver Claims, Prepetition L/C Claims, and Prepetition Term Loan Claims.

107.    "Prepetition Intercreditor Agreement" means that certain intercreditor agreement executed on January 25, 2013 by and between the Prepetition Credit Facility Agent and the Sureties.

109.    "Prepetition L/C Claims" means any Claim against any Debtor derived from, based upon, or arising under the Prepetition L/C Facility.

110.    "Prepetition L/C Facility" means the senior secured letter of credit facility provided under the Prepetition Revolving Facility.

111.    "Prepetition Lenders" means, collectively, the lenders under the Prepetition Credit Facility.

112.    "Prepetition Loan Parties" means ZHI, Zachry EPC Holdings, LLC, and Zachry Plan Services Holdings, Inc., as borrowers, and the guarantors party to that certain *Third Amended and Restated Continuing Guaranty*, dated as of May 2, 2023.

113.    "Prepetition Revolver Claims" means any Claim against any Debtor derived from, based upon, or arising under the Prepetition Revolving Facility.

114.    "Prepetition Revolving Facility" means the senior secured revolving credit facility, including a swing line facility and the Prepetition L/C Facility, provided under the Prepetition Credit Facility.

115.    "Prepetition Secured Parties" means, collectively, the Prepetition Credit Facility Agent and the Prepetition Lenders.

116.     "<u>Prepetition Term Loan Claims</u>" means any Claim against any Debtor derived from, based upon, or arising under the Prepetition Term Loan Facility.

117.     "<u>Prepetition Term Loan Facility</u>" means the senior secured term loan facility provided under the Prepetition Credit Facility.

118.     "<u>Priority Tax Claim</u>" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

119.     "<u>Professional</u>" means any Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

120.     "<u>Professional Fee Claim</u>" means any Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

121.     "<u>Proof of Claim</u>" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

122.     "<u>Reinstatement</u>" means, with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  "Reinstated" and "Reinstate" shall have correlative meanings.

123.     "<u>Rejection List</u>" means the list of Executory Contracts and Unexpired Leases that shall be rejected by the Debtors pursuant to the Plan attached as Exhibit C to the *Notice of Filing of the Second Plan Supplement* [Docket No. 2150] and as may be amended from time to time.

124.     "<u>Related Party</u>" means with respect to an Entity, collectively, (a) such Entity's current and former Affiliates and (b) such Entity's current and former Affiliates' respective directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including any disbursing agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, each solely in their capacities as such (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, and nominees of the foregoing.

125.     "<u>Released Avoidance Actions</u>" means any and all avoidance, recovery, subordination, or other Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or any other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable law.

126.     "<u>Released Party</u>" means, collectively, the following Entities, in each case in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each member of the Committee; (d) the Prepetition Credit Facility Agent; (e) the A&R Credit Facility Agent; (f) the Released Prepetition Lenders; (g) Golden Pass, but solely with respect to the Debtors, the Debtors' Related Parties, and Holders of Claims related to the GPX Project, consistent with the GPX Settlement; (h) the Sureties; (i) all Releasing Parties; and (j) each Related Party of each Entity in clause (a) through (i); *provided*, *however*, in each case, an Entity shall not be a Released Party if it: (i) elects to opt out of the Third-Party Release or (ii) Files with the Bankruptcy Court an objection to the Plan, including with respect to the

Third-Party Release, that is not consensually resolved before Confirmation or otherwise supports any such objection or objector.

127.    "<u>Released Prepetition Lenders</u>" means, collectively, the Prepetition Lenders that do not elect to opt-out of, or that do not object to, the Third-Party Release.

128.    "<u>Releasing Party</u>" means, collectively, the following Entities, in each case in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each member of the Committee; (d) the Prepetition Credit Facility Agent; (e) the A&R Credit Facility Agent; (f) the Released Prepetition Lenders; (g) Golden Pass, but solely with respect to the Debtors and the Debtors' Related Parties consistent with the GPX Settlement; (h) the Sureties; (i) all Holders of Claims who vote to accept the Plan and who do not affirmatively opt out of the Third-Party Release provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the Third-Party Release provided in the Plan; (j) all Holders of Claims or Interests who are deemed to accept the Plan and who do not affirmatively opt out of the Third-Party Release provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the Third-Party Release provided in the Plan; (k) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the Third-Party Release provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the Third-Party Release provided in the Plan; (l) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the Third-Party Release provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the Third-Party Release provided in the Plan; (m) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the Third-Party Release provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the Third-Party Release provided in the Plan; and (n) each Related Party of each Entity in clause (a) through (m) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided*, *however*, notwithstanding anything to the contrary in this Plan, current employees of the Debtors as of the Voting Record Date shall not be Releasing Parties under this Plan.

129.    "<u>Reorganized Debtor</u>" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, unless otherwise dissolved pursuant to this Plan.

130.    "<u>Restructuring Expenses</u>" means the actual, reasonable, and documented fees and expenses of the Prepetition Lenders, subject to the terms of the Prepetition Credit Facility or any applicable fee reimbursement letter between any Entity and the Debtors, as the case may be.

131.    "<u>Restructuring Transactions</u>" means the transactions described in **Article IV.C** of this Plan.

132.    "<u>Schedule of Retained Causes of Action</u>" means the schedule of certain Causes of Action of the Debtors (attached as Exhibit D to the *Notice of Filing of the Second Plan Supplement* [Docket No. 2150]) that, notwithstanding anything to the contrary in the Plan, are not released, waived, or transferred pursuant to this Plan, as the same may be amended, modified, or supplemented from time to time.

133.    "<u>Schedules</u>" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors on July 16, 2024 [Docket Nos. 511-52] pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as amended on August 30, 2024 [Docket Nos. 855-64], on December 2, 2024 [Docket No. 1564], and on December 20, 2024 [Docket Nos. 1770-75], and as the same may be further amended, modified, or supplemented from time to time.

134.    "<u>Secured Claim</u>" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

135.     "<u>Securities Act</u>" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

136.     "<u>SIR</u>" means any self-insured retention under the Debtors' insurance policies.

137.     "<u>Sunbelt</u>" means Sunbelt Rentals, Inc. or its duly authorized agent on behalf of itself and its affiliates.

138.     "<u>Sunbelt Promissory Note</u>" means that certain secured promissory note to be issued by Zachry Holdings, Inc. to Sunbelt on the terms set forth in the Sunbelt Term Sheet.

139.     "<u>Sunbelt Term Sheet</u>" means Exhibit A attached to the *Stipulation and Agreed Order Regarding Sunbelt Claims* [Docket No. 2284].

140.     "<u>Sureties</u>" means Travelers Casualty & Surety Company of America and Pacific Indemnity Company.

141.     "<u>Third-Party Release</u>" means the release set forth in **Article VIII.D** of this Plan.

142.     "<u>Unexpired Lease</u>" means a lease to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

143.     "<u>Unimpaired</u>" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

144.     "<u>Unsecured Claim</u>" means any Claim that is not a Secured Claim.

145.     "<u>U.S. Trustee</u>" means the Office of the United States Trustee.

146.     "<u>Voting Record Date</u>" means the record date for determining whether any Holder of an Impaired Claim is entitled to vote to accept or reject the Plan, as established pursuant to the Disclosure Statement Order.

148.     "<u>Workers' Compensation Program</u>" means the Debtors' (a) written contracts, agreements, and agreements of indemnity, in each case relating to workers' compensation, (b) self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation, and (c) workers' compensation insurance issued to or entered into at any time by any of the Debtors.

149.     "<u>Zachry Interests</u>" means the Interests in ZHI.

150.     "<u>ZHI</u>" means Zachry Holdings, Inc.

151.     "<u>ZII</u>" means Zachry Industrial, Inc.

B.     <u>Rules of Interpretation</u>.

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with this Plan or the Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and

assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits contained in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (8) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of this Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (15) unless otherwise specified, any action to be taken on the Effective Date may be taken on the Effective Date or as soon as reasonably practicable thereafter.

C.      Computation of Time.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If any payment, distribution, act, or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

D.      Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan, and the Confirmation Order (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or the Reorganized Debtor.

E.      Reference to Monetary Figures.

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided herein.

F.      Controlling Document.

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of any inconsistency between the Plan and the GPX Settlement Documents with respect to the terms of the GPX Settlement, the GPX Settlement Documents shall control.  In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

13

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Restructuring Expenses have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in **Article III** hereof.

A.      Administrative Claims.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, or otherwise provided for under the Plan, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code, and Restructuring Expenses) shall be paid in full an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in full and final satisfaction, compromise, settlement, release, and discharge of such Administrative Claim in accordance with the following: (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed on or prior to the Effective Date, the first Business Day after the date that is thirty (30) days after the date such Administrative Claim is Allowed, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court. Nothing in the foregoing or otherwise in this Plan shall prejudice the Debtors' or the Reorganized Debtors' rights and defenses regarding any asserted Administrative Claim.

For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, any Allowed Administrative Claims that are GPX Administrative Claims to the extent not satisfied prior to the Effective Date, if any, shall be paid by Golden Pass in accordance with the terms of the GPX Settlement Documents and this Plan.

B.      Professional Fee Claims.

1.      Final Fee Applications and Payment of Professional Fee Claims.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash as soon as practicable after such Professional Fee Claims are Allowed.

2.      Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Debtors (including for the avoidance of doubt the Committee's Professional fees and expenses). Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

14

C.      Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

D.      Restructuring Expenses.

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date (or, with respect to necessary post-Effective Date matters, after the Effective Date), shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein, without any requirement to File a fee application with the Bankruptcy Court, without the need for itemized time detail, or without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses.  On the Effective Date, invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.  After the Effective Date, the Debtors and Reorganized Debtors (as applicable) shall continue to pay when due and payable in the ordinary course of their business any unpaid Restructuring Expenses that were incurred on, before, or after the Effective Date.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.      Classification of Claims and Interests.

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in **Article II** of this Plan (or as otherwise set forth herein), all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Professional Fee Claims, Priority Tax Claims, or Restructuring Expenses, as described in **Article II**.

A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtors pursuant to this Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3 | Prepetition Credit Facility Claims | Impaired | Entitled to Vote |
| 4 | Deferred Compensation Plan Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 5 | Convenience Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |

15

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 7 | Intercompany Claims | Impaired/Unimpaired | Presumed to Accept / Presumed to Reject; Not Entitled to Vote |
| 8 | Intercompany Interests | Impaired/Unimpaired | Presumed to Accept / Presumed to Reject; Not Entitled to Vote |
| 9 | Zachry Interests | Unimpaired | Presumed to Accept; Not Entitled to Vote |

B.     <u>Formation of Debtor Groups for Convenience Only</u>.

This Plan is a separate plan of reorganization for each Debtor. This Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, Confirmation of this Plan, and making distributions in respect of Claims against and Interests in the Debtors under this Plan. Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets. Except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal entities. The Plan is not premised on, and does not provide for, the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, or otherwise.

C.     <u>Treatment of Claims and Interests</u>.

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Reorganized Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

      1.     <u>Class 1 – Other Secured Claims</u>.

          a.     <u>Classification</u>: Class 1 consists of all Other Secured Claims.

          b.     <u>Treatment</u>: In full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor, either:

               i.     payment in full in Cash of its Allowed Other Secured Claim;

               ii.     the collateral securing its Allowed Other Secured Claim;

               iii.     Reinstatement of its Allowed Other Secured Claim; or

               iv.     such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

          For the avoidance of doubt, and notwithstanding anything to the contrary in this Plan, the treatment provided to any Allowed Other Secured Claim that is a GPX Claim that has not been satisfied prior to the Effective Date, if any, shall be provided by Golden Pass in accordance with the terms of the GPX Settlement Documents and this Plan.

          c.     <u>Voting</u>: Allowed Other Secured Claims in Class 1 are Unimpaired. Each Holder of an Allowed Other Secured Claim shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and therefore shall not be entitled to vote to accept or reject this Plan.

2.    <u>Class 2 – Other Priority Claims</u>.

    a.    <u>Classification</u>: Class 2 consists of all Other Priority Claims.

    b.    <u>Treatment</u>: In full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

    c.    <u>Voting</u>: Allowed Other Priority Claims in Class 2 are Unimpaired.  Each Holder of an Allowed Other Priority Claim shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and therefore shall not be entitled to vote to accept or reject this Plan.

3.    <u>Class 3 – Prepetition Credit Facility Claims</u>.

    a.    <u>Classification</u>: Class 3 consists of all Prepetition Credit Facility Claims.

    b.    <u>Allowance</u>: On the Effective Date, all Prepetition Credit Facility Claims shall be deemed Allowed, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount not less than $281,250,000, *plus* any obligations, unpaid fees, unpaid premiums, and accrued and unpaid interest as of the Petition Date due and owing to Holders of Prepetition Credit Facility Claims under the Prepetition Credit Facility.

    c.    <u>Treatment</u>: In exchange for full and final satisfaction, settlement, release, and discharge of (including any Liens related thereto) each Allowed Prepetition Credit Facility Claim, each Holder of an Allowed Prepetition Credit Facility Claim shall, on the Effective Date, become party to, and bound by, the A&R Credit Facility on account of such Holder's Allowed Prepetition Credit Facility Claim, on the terms set forth in the A&R Credit Facility Documents.

    d.    <u>Voting</u>: Allowed Prepetition Credit Facility Claims in Class 3 are Impaired.  Each Holder of an Allowed Prepetition Credit Facility Claim shall be entitled to vote to accept or reject this Plan.

4.    <u>Class 4 – Deferred Compensation Plan Claims</u>.

    a.    <u>Classification</u>: Class 4 consists of all Deferred Compensation Plan Claims.

    b.    <u>Treatment</u>: Except to the extent that a Holder of an Allowed Deferred Compensation Plan Claim agrees to less favorable treatment, each Allowed Deferred Compensation Plan Claim shall be Reinstated pursuant to section 1124 of the Bankruptcy Code, and each such Holder's rights under the Deferred Compensation Plan shall be honored by the Reorganized Debtors in accordance with the terms of the Deferred Compensation Plan.

    c.    <u>Voting</u>: Allowed Deferred Compensation Plan Claims in Class 4 are Unimpaired.  Each Holder of an Allowed Deferred Compensation Plan Claim shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and therefore shall not be entitled to vote to accept or reject this Plan.

5.    <u>Class 5 – Convenience Claims</u>.

    a.    <u>Classification</u>: Class 5 consists of all Convenience Claims.

    b.    <u>Treatment</u>: Except to the extent that a Holder of an Allowed Convenience Claim agrees to less favorable treatment, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Convenience Claim, on

the Effective Date or as soon as practicable thereafter, Cash in an amount equal to such Holder's Allowed Convenience Claim (excluding any interest that may be owed on such Claim), but in no event shall distributions on account of any Allowed Convenience Claim exceed the Convenience Claim Amount.

c.   <u>Voting</u>: Allowed Convenience Claims in Class 5 are Unimpaired.  Each Holder of an Allowed Convenience Claim shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and therefore shall not be entitled to vote to accept or reject this Plan.

6.   <u>Class 6 – General Unsecured Claims</u>.

a.   <u>Classification</u>: Class 6 consists of all General Unsecured Claims.

b.   <u>Treatment</u>: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, a GUC Promissory Note in the principal amount of its Allowed General Unsecured Claim, inclusive of postpetition interest accrued at the Federal Judgment Rate from the Petition Date through the Effective Date; *provided*, *however*, notwithstanding anything to the contrary in this Plan, all Allowed General Unsecured Claims that are GPX Claims, to the extent not satisfied prior to the Effective Date shall be paid by Golden Pass in accordance with the terms of the GPX Settlement Documents and this Plan.

c.   <u>Voting</u>: Allowed General Unsecured Claims in Class 6 are Impaired.  Each Holder of an Allowed General Unsecured Claim shall be entitled to vote to accept or reject this Plan.

7.   <u>Class 7 – Intercompany Claims</u>.

a.   <u>Classification</u>: Class 7 consists of all Intercompany Claims.

b.   <u>Treatment</u>: On the Effective Date, or as soon as reasonably practicable thereafter, Allowed Intercompany Claims shall be, at the option of the applicable Debtor, Reinstated, converted to equity, or otherwise set off, settled, distributed, contributed, canceled, or released to the extent reasonably determined to be appropriate by the Debtors or Reorganized Debtors, as applicable.

c.   <u>Voting</u>: Allowed Intercompany Claims in Class 7 are either (i) Unimpaired and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or (ii) Impaired and are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders of Intercompany Claims are not entitled to vote to accept or reject this Plan.

8.   <u>Class 8 – Intercompany Interests</u>.

a.   <u>Classification</u>: Class 8 consists of all Intercompany Interests.

b.   <u>Treatment</u>: On the Effective Date, Intercompany Interests shall, at the option of the applicable Debtor, be:

i.   Reinstated; or

ii.   set off, settled, addressed, distributed, contributed, merged, cancelled, or released.

c.   <u>Voting</u>: Allowed Intercompany Interests in Class 8 are either (i) Unimpaired and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy

18

Code, or (ii) Impaired and are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders of Intercompany Interests are not entitled to vote to accept or reject this Plan.

9.     <u>Class 9 – Zachry Interests</u>.

    a.    <u>Classification</u>: Class 9 consists of all Zachry Interests.

    b.    <u>Treatment</u>: Zachry Interests shall be Reinstated on the Effective Date, and the legal, equitable, and contractual rights to which Holders of Zachry Interests are entitled shall remain unaltered.

    c.    <u>Voting</u>: Allowed Zachry Interests in Class 9 are Unimpaired. Holders of Zachry Interests shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and therefore shall not be entitled to vote to accept or reject this Plan.

D.     <u>Special Provision Governing Unimpaired Claims</u>.

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

E.     <u>Elimination of Vacant Classes</u>.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.     <u>Acceptance by Impaired Classes</u>.

An Impaired Class of Claims shall have accepted this Plan, if not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code, (i) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan, and (ii) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan.

G.     <u>Voting Classes, Presumed Acceptance by Non-Voting Classes</u>.

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject this Plan, the Holders of such Claims in such Class shall be deemed to have accepted this Plan.

H.     <u>Intercompany Interests</u>.

To the extent Reinstated under this Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Holders of Zachry Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under this Plan to make certain distributions to the Holders of Allowed Claims.

I.     <u>Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code</u>.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more of the Classes entitled to vote pursuant to **Article III.C** of this Plan. The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify this Plan in accordance with **Article X** of this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification,

including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

J.      No Substantive Consolidation.

Although this Plan is presented as a joint plan of reorganization for administrative purposes, this Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Except as expressly provided herein, nothing in this Plan, the Confirmation Order, or the Disclosure Statement shall constitute or be deemed to constitute a representation that any one or all of the Debtors is subject to or liable for any Claims against or Interests in any other Debtor. A Claim against or Interest in multiple Debtors will be treated as a separate Claim against or Interest in each applicable Debtor's Estate for all purposes, including voting and distribution; *provided*, *however*, that no Claim will receive value in excess of one hundred percent (100.0%) of the Allowed amount of such Claim (inclusive of postpetition interest, if applicable and if owed under this Plan) under the Plan for all such Debtors.

K.      Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired or is properly classified under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

L.      Subordinated Claims.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to this Plan.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

A.      General Settlement of Claims and Interests.

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan, including all General Unsecured Claims and GPX Claims, and any challenge to the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Credit Facility Claims, whether under any provision of chapter 5 of the Bankruptcy Code, based on any equitable theory, or otherwise. This Plan shall be deemed a motion to approve the good faith compromise and settlement of all Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to **Article VI** hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

B.      GPX Settlement.

The terms of the GPX Settlement, as approved by the GPX Final Settlement Order, are incorporated into, and are an integral part of, this Plan. Nothing herein modifies the terms of the GPX Settlement or the rights, obligations, and interests of the GPX Settlement Parties under the GPX Settlement Documents. For the avoidance of doubt, the GPX Settlement Parties, as applicable, shall comply with the terms of the GPX Final Settlement Order through and following the Effective Date. Notwithstanding anything to the contrary herein, including **Article VIII**

hereof, the terms of the GPX Settlement and the GPX Final Settlement Order remain binding on the GPX Settlement Parties and, as applicable, the A&R Credit Facility Agent and A&R Credit Facility Lenders.  In the event of any inconsistency between the Plan and the GPX Settlement Documents with respect to the terms of the GPX Settlement, the GPX Settlement Documents shall control.

For the avoidance of doubt, Golden Pass is a Released Party as set forth in this Plan and shall be entitled to the protections of this Plan's release and injunction provisions, including the Third-Party Release, to the fullest extent provided herein and under applicable law.  Further, and for the avoidance of doubt, Golden Pass and any property interest of Golden Pass shall be entitled to the protections of this Plan's release and injunction provisions with respect to all Claims that constitute GPX Claims that are satisfied, discharged, and/or released in connection with the GPX Settlement and this Plan, and no Holder of a satisfied GPX Claim shall have any recourse against any Entity, including Golden Pass and its property, on account of such satisfied GPX Claim regardless of whether such Holder is a Releasing Party under this Plan.

In addition, notwithstanding anything to the contrary in this Plan, neither this Plan nor any Restructuring Transaction contemplated herein shall impair Golden Pass's right to make the GPX L/C Permitted Draws, pursuant to the terms of the GPX Settlement and GPX Excess Claims Stipulation.  However, pursuant to the GPX Excess Claims Stipulation, the Debtors may wire Cash to Golden Pass in the amount of each Scheduled Draw on or before the date each Scheduled Draw is due under the GPX Settlement, in lieu of Golden Pass making each Scheduled Draw against the GPX L/C.  If the Debtors fail to make such Cash payments when due, Golden Pass may make the corresponding Scheduled Draw(s) against the GPX L/C, as contemplated under the GPX Settlement.  Upon Golden Pass's receipt of the final GPX L/C Permitted Draw (or the corresponding Cash amounts from the Debtors pursuant to this section), the remaining GPX L/C shall be deemed cancelled, null, and void, without any further notice to or action, order, or approval of the Bankruptcy Court, consistent with the GPX Settlement; Golden Pass shall not be permitted to request any other or additional draws thereunder; and Golden Pass shall be deemed to release, waive, and discharge any and all rights it has or may have in respect of the GPX L/C, the GPX L/C Issuer, and the GPX Parent Guarantee.  Until Golden Pass receives the final GPX L/C Permitted Draw (or the corresponding Cash amounts from the Debtors), the Debtors, GPX L/C Issuer, and A&R Credit Facility Lenders, as applicable, shall renew the GPX L/C as necessary, and shall not take any action that would impair, affect, or prejudice Golden Pass's rights to the GPX L/C Permitted Draws.  The A&R Credit Facility Agent and A&R Credit Facility Lenders have consented to the GPX L/C Permitted Draws in accordance with the GPX Settlement; the Debtors and/or Reorganized Debtors, the A&R Credit Facility Agent, and the A&R Credit Facility Lenders further have waived, released, and extinguished any claims, defenses, or disputes with respect to the GPX L/C Permitted Draws, and stipulate and agree that all conditions and prerequisites for the GPX L/C Permitted Draws in accordance with the GPX L/C have been met, *provided that,* for each GPX L/C Permitted Draw actually drawn by Golden Pass against the GPX L/C, Golden Pass shall notify the A&R Credit Facility Agent of the GPX L/C Permitted Draw in the manner set forth in Annex A to the GPX L/C, as amended by the parties pursuant to the GPX Settlement.

C.    Restructuring Transactions.

Before, on, and after the Effective Date, the Debtors, the Reorganized Debtors, the GUC Note Administrative Agent, or the GUC Note Collateral Agent, as applicable, shall consummate the Restructuring Transactions and may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan that are consistent with and pursuant to the terms and conditions of this Plan, including:  (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of this Plan, the Plan Supplement, and the Confirmation Order; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, the Plan Supplement, and the Confirmation Order, and having other terms to which the applicable Entities may agree; (3) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (4) the execution and/or delivery of the A&R Credit Facility Documents and effectiveness of the A&R Credit Facility; (5) the execution and delivery of the GUC Note Documents; (6) the issuance of the GUC Promissory Notes on account of Allowed General Unsecured Claims; (7) the issuance of the Sunbelt Promissory Note; (8) the execution of the Exit Intercreditor Agreement; (9) the Parent Capital Contribution; (10) such other transactions that are required to effectuate the Restructuring Transactions; and (11) all

other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan.

D.      The Reorganized Debtors.

Except as otherwise provided herein or as may be provided in the Plan Supplement or the Confirmation Order, each of the Reorganized Debtors shall continue its existence as a separate Entity after the Effective Date, with all the powers thereof, pursuant to the applicable law in the jurisdiction in which each Reorganized Debtor is incorporated and pursuant to the Organizational Documents.  On the Effective Date, all Zachry Interests shall be Reinstated and the Reorganized Debtors shall be deemed to adopt and re-affirm the Organizational Documents without any further action, notice, or approval.  The Reorganized Debtors shall be authorized to adopt any agreements, documents, and instruments, and to take any other action contemplated under this Plan as necessary to consummate this Plan.

E.      Vesting of Assets in the Reorganized Debtors.

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, including all Causes of Action and any property acquired by any of the Debtors pursuant to this Plan, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in this Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.      Sunbelt Promissory Note.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Sunbelt Promissory Note shall: (a) be deemed to be granted; (b) be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Sunbelt Promissory Note and the Exit Intercreditor Agreement; (c) be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Sunbelt Promissory Note; and (d) not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors, Sunbelt and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

G.      GUC Promissory Notes.

On or prior to the Effective Date, the Debtors and the GUC Note Administrative Agent shall execute the GUC Note Documents and the Debtors shall take all steps necessary to issue the GUC Promissory Notes in accordance with the Plan and the GUC Note Documents.  If any General Unsecured Claims are Allowed after the Effective Date, within ten (10) Business Days of such Allowance, the Reorganized Debtors shall issue additional GUC Promissory Notes in the amount of such Allowed Claims to ensure that each Holder of an Allowed General Unsecured Claim receives the treatment specified in **Article III.C.6** of this Plan.  If any General Unsecured Claims Allowed as of the Effective Date are, after the Effective Date, Allowed in a different amount, Disallowed, reclassified, withdrawn, or otherwise altered, the GUC Note Administrative Agent shall update the debt register maintained pursuant to the GUC

22

Note Documents to account for any such changes to any such General Unsecured Claim, and any GUC Promissory Notes issued on account of a General Unsecured Claim that is subsequently Disallowed, reclassified, or withdrawn shall be deemed cancelled.  As set forth in **Article VII.A** of the Plan, the Reorganized Debtors shall retain sole authority to reconcile and object to Claims after the Effective Date.

Confirmation of the Plan and execution of the GUC Note Documents by the GUC Note Administrative Agent and/or GUC Note Collateral Agent shall be deemed to bind all Holders of Allowed General Unsecured Claims receiving the GUC Promissory Notes under the Plan as if each such party had executed the GUC Note Documents with appropriate authorization.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the GUC Note Documents shall: (a) be deemed to be granted; (b) be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the GUC Promissory Notes; (c) be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the GUC Note Documents and the Exit Intercreditor Agreement; and (d) not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors, the GUC Note Administrative Agent, the GUC Note Collateral Agent, and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

H.      Sources of Consideration for Plan Distributions.

Each distribution and issuance referred to in **Article VI** of this Plan shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The Debtors and the Reorganized Debtors, as applicable, shall fund distributions under this Plan with (a) Cash on hand; (b) proceeds from the A&R Credit Facility; (c) the issuance of the Sunbelt Promissory Note; (d) the issuance of the GUC Promissory Notes; and (e) proceeds from the Parent Capital Contribution.

1.      Use of Cash.

The Debtors, Reorganized Debtors, and Distribution Agent, as applicable, shall use Cash on hand for working capital purposes and to fund distributions to certain Holders of Allowed Claims, consistent with the terms of this Plan.  The Debtors and Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

2.      A&R Credit Facility.

On the Effective Date, the Reorganized Debtors shall enter into the A&R Credit Facility, the terms of which will be set forth in the A&R Credit Facility Documents.  Confirmation of this Plan shall be deemed final approval of the A&R Credit Facility, the A&R Credit Facility Documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization for the Reorganized Debtors to enter into and execute the A&R Credit Facility Documents and such other documents as may be required to effectuate the financings and treatment provided by this Plan.

Confirmation of this Plan, and the occurrence of the Effective Date, shall bind each A&R Credit Facility Lender to the A&R Credit Facility Documents as if each such party had executed the A&R Credit Facility Documents with appropriate authorization.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the A&R Credit Facility Documents shall: (a) be deemed to be granted; (b) be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the A&R Credit Facility Documents; (c) be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the A&R Credit Facility Documents; and (d) not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

       3.     <u>Sunbelt Promissory Note</u>.

On the Effective Date, the Reorganized Debtors shall issue the Sunbelt Promissory Note on the terms set forth in the Sunbelt Term Sheet.  The issuance of the Sunbelt Promissory Note under the Plan is duly authorized without the need for any further action, authorization, or consent by the Debtors, the Reorganized Debtors, or any other Entity.  The Sunbelt Promissory Note issued pursuant to the Plan shall be duly authorized, validly issued, and non-assessable.

       4.     <u>GUC Promissory Notes</u>.

On the Effective Date, and from time to time thereafter in accordance with **Article IV.G** of this Plan, the Reorganized Debtors shall issue the GUC Promissory Notes as set forth in the GUC Note Documents and the GUC Promissory Notes shall vest in the GUC Note Administrative Agent for distribution to Holders of Allowed General Unsecured Claims.  The issuance of the GUC Promissory Notes under the Plan is duly authorized without the need for any further action, authorization, or consent by the Debtors, the Reorganized Debtors, the GUC Note Administrative Agent, or any other Entity.  Confirmation of this Plan shall be deemed final approval of each of the GUC Promissory Notes, the GUC Note Purchase Agreement, the GUC Note Documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization for the Reorganized Debtors to enter into and execute the GUC Note Documents, and such other documents as may be required to effectuate the GUC Promissory Notes.  The GUC Promissory Notes issued pursuant to the Plan shall be duly authorized, validly issued, and non-assessable.

       5.     <u>Parent Capital Contribution</u>.

On or prior to the Effective Date, the Parent Capital Contribution shall be contributed to ZHI.  The Debtors, Reorganized Debtors, and the Distribution Agent, as applicable, shall use the Cash proceeds from the Parent Capital Contribution for working capital purposes and to fund distributions to certain Holders of Allowed Claims, consistent with the terms of this Plan.

I.     <u>Cancellation of Existing Agreements and Interests</u>.

On the Effective Date, except with respect to the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory Notes, the Parent Capital Contribution, the Zachry Interests, the Prepetition Intercreditor Agreement, the GPX Settlement Documents, the GPX L/C (subject to **Article IV.B** hereof), the GPX Parent Guarantee (subject to **Article IV.B** hereof), all Employee Obligations (including the Deferred Compensation Plan) assumed pursuant to **Article IV.K** hereof, all Indemnification Obligations assumed pursuant to **Article IV.L** hereof, and all Executory

Contracts and Unexpired Leases assumed pursuant to **Article V.A** hereof, or to the extent otherwise provided in this Plan or the Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements and indentures, shall be canceled and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect.  Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan.

J.  Corporate Action.

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtors, including, but not limited to, actions requiring a vote of the boards of directors or shareholders and execution of all documentation incident to the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the officers or directors of the Debtors, any Governing Body, or the Bankruptcy Court.

K.  Directors and Officers of the Reorganized Debtors.

On the Effective Date, the directors and officers of each Reorganized Debtor shall consist of the current directors and officers of each respective Debtor.

L.  Deferred Compensation Plan and Other Employee Obligations.

All written employment, confidentiality, non-competition agreements, bonus, gainshare and incentive programs, discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees, vacation, holiday pay, severance, retirement, retention, supplemental retirement, executive retirement, pension, deferred compensation (including the Deferred Compensation Plan), indemnification, other similar employee-related agreements or arrangements, retirement income plans, medical, dental, vision, life and disability insurance, flexible spending account, and other health and welfare benefit plans, programs, and arrangements, and collective bargaining agreements that are in effect immediately prior to the Effective Date with the Debtors, shall be assumed by the Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans as of the Effective Date, unless otherwise provided herein or in the Confirmation Order, specifically rejected pursuant to a separate order of the Bankruptcy Court, specifically designated as a contract or lease to be rejected on the Rejection List, or specifically identified in a separate rejection motion Filed by the Debtors.  For the avoidance of doubt, the Debtors' assumption of all obligations related to the Deferred Compensation Plan shall include any amounts due and owing to participants that have accrued under the Deferred Compensation Plan following the Petition Date.

The Debtors' assumption of such compensation and benefits plans, including the Deferred Compensation Plan, pursuant to the terms of this Plan shall be deemed not to trigger any applicable change of control, immediate vesting, termination, or similar provisions in any applicable plan or program, or an event of "Good Reason" (or a term of like import), in each case as a result of the consummation of the Restructuring Transactions.  No counterparty shall have rights under a compensation and benefit plan or program, including the Deferred Compensation Plan, assumed pursuant to the Plan other than those applicable immediately prior to such assumption.

Nothing in this Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, as of the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable orders of the Bankruptcy Court and applicable law.

M.  Indemnification Obligations.

All indemnification provisions in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational

documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for (each in their capacities as such) the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, financial advisors, restructuring advisors, consultants, other professionals of, or acting on behalf of, the Debtors, and the Sureties, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, other professionals of, or acting on behalf of, the Debtors, and the Sureties, as provided under the indemnification obligations in place prior to the Effective Date; *provided*, *however*, nothing herein shall expand any of the Debtors' indemnification obligations in place as of the Petition Date.

N.      Preservation of Causes of Action.

        In accordance with section 1123(b) of the Bankruptcy Code, but subject to **Article VIII** hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the GPX Final Settlement Order and the releases and exculpations contained in this Plan, including in **Article VIII**.

        The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the GPX Final Settlement Order and this Plan, including Article VIII of this Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation, Consummation, or the occurrence of the Effective Date.

        The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the corresponding Reorganized Debtor, except as otherwise expressly provided in the GPX Final Settlement Order and this Plan, including **Article VIII** of this Plan. The Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

O.      Effectuating Documents; Further Transactions.

        On and after the Effective Date, the Reorganized Debtors, and their respective officers and boards of directors and managers, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, notes, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of this Plan in the name of and on behalf of the Reorganized Debtors without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

P.     Certain Securities Law Matters.

No registration statement will be filed under the Securities Act, or pursuant to any state securities laws, with respect to the offer and distribution of any Securities under the Plan. The offering, issuance, and distribution of any Securities pursuant to the Plan, including the Sunbelt Promissory Note and the GUC Promissory Notes to the extent considered to be Securities, will be exempt from the registration requirements of section 5 of the Securities Act or any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code.

Specifically, the offer, sale, issuance, and distribution of the GUC Promissory Notes will be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act and the Notes will be freely transferable and resaleable by non-affiliates of the Debtors and Reorganized Debtors, subject to any contractual limitations or restrictions under U.S. securities laws, if applicable. The Debtors and Reorganized Debtors shall cooperate with each of the holders in determining the status of any holder as an "affiliate" of the Reorganized Debtors.

The Debtors and the Committee will negotiate in good faith to implement a structure that will provide for the transferability of the GUC Promissory Notes through the GUC Note Administrative Agent, including, but not limited to, structures that would assist any Holder of an Allowed General Unsecured Claim receiving a GUC Promissory Note from being deemed an "affiliate" of the Company or any of its subsidiaries, as such term is defined under the Securities Act.

Q.     Transferability of GUC Promissory Notes.

Holders of Allowed General Unsecured Claims receiving a GUC Promissory Note may freely assign their GUC Promissory Note, without the consent of the GUC Note Administrative Agent but after providing notice to the GUC Note Administrative Agent, to any (i) existing holder of GUC Promissory Notes, (ii) financial institution (including hedge funds) or (iii) to any Person following and during the continuation of a Breach (as defined in the GUC Note Term Sheet), *provided, however,* that any transfer or assignment of any GUC Promissory Note to any of the Reorganized Debtors' competitors or vendors (or affiliates of such competitors or vendors) shall require the prior written consent of the Reorganized Debtors in their sole discretion. The GUC Note Administrative Agent shall not provide confidential information concerning the Reorganized Debtors or their subsidiaries to any assignee or potential assignee except pursuant to a non-disclosure agreement (in a form reasonably acceptable to the Reorganized Debtors and naming the Reorganized Debtors and their subsidiaries as express third-party beneficiaries), between the GUC Note Administrative Agent and such assignee or potential assignee.

R.     Section 1146 Exemption.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Plan or pursuant to: (1) the issuance, reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for any or all of the A&R Credit Facility; (6) the issuance of the GUC Promissory Notes; (7) the issuance of the Sunbelt Promissory Note; or (8) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

S.      Dissolution of Certain Debtors.

On or after the Effective Date, certain of the Debtors may be dissolved without further action under applicable law, regulation, Order, or rule, including any action by the stockholders, members, the board of directors, or similar Governing Body of the Debtors or the Reorganized Debtors; *provided*, *however*, subject in all respects to the terms of this Plan, the Reorganized Debtors shall have the power and authority to take any action necessary to wind down and dissolve the foregoing Debtors, and may, to the extent applicable: (1) file a certificate of dissolution for such Debtors, together with all other necessary corporate and company documents, to effect such Debtors' dissolution under the applicable laws of their states of formation; (2) complete and file all final or otherwise required federal, state, and local tax returns and pay taxes required to be paid for such Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any such Debtors or their Estates, as determined under applicable tax laws; and (3) represent the interests of the Debtors or their Estates before any taxing authority in all tax matters, including any action, proceeding, or audit.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.

On the Effective Date, all Executory Contracts and Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Debtor in accordance with sections 365 and 1123 of the Bankruptcy Code, other than any Executory Contract or Unexpired Lease that: (1) is identified on the Rejection List; (2) previously expired or terminated pursuant to its own terms; (3) was previously assumed or rejected by the Debtors, including pursuant to the GPX Settlement; (4) is the subject of a motion or notice to reject pending as of the Effective Date; or (5) has an effective date of rejection that is after the Effective Date.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates of the Debtors or Reorganized Debtors.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumption List, and the Rejection List, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by this Plan or order of the Bankruptcy Court.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease or the execution of any other Restructuring Transaction (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  For the avoidance of doubt, consummation of the Restructuring Transactions shall not be deemed an assignment of any Executory Contract or Unexpired Lease of the Debtors, notwithstanding any change in name, organizational form, or jurisdiction of organization of any Debtor in connection with the occurrence of the Effective Date.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith, unless otherwise ordered by the Bankruptcy Court.

28

Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to amend or supplement the Assumption List and Rejection List in their discretion prior to the Effective Date (or such later date as may be permitted by this **Article V**); *provided*, *however*, the Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have no less than seven (7) days to object thereto on any grounds.

B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejections, if any, of any Executory Contracts or Unexpired Leases as provided for in this Plan or the Rejection List, as applicable. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Claims and Noticing Agent at the address specified in any notice of entry of the Confirmation Order and served on the Reorganized Debtors no later than thirty (30) days after the effective date of such rejection. **Any Proofs of Claim arising from the rejection of an Executory Contract or Unexpired Lease not timely Filed with the Claims and Noticing Agent shall be automatically Disallowed without further order of the Bankruptcy Court, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their respective property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.F of this Plan, notwithstanding anything in a Proof of Claim to the contrary.** All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim, as applicable, pursuant to **Article III.C** of this Plan and may be objected to in accordance with the provisions of **Article VII** of this Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. In such a scenario, the GUC Note Administrative Agent in coordination with the Reorganized Debtors shall issue a GUC Promissory Note to each Holder of an Allowed General Unsecured Claim for rejection damages, as if the GUC Promissory Note was issued on the Effective Date. Notwithstanding anything to the contrary in this Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejection List at any time through and including thirty days after the Effective Date.

C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure Claims that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such request that is not timely Filed shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, nothing herein shall prevent the Reorganized Debtors, in their sole discretion, from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure Claim. The Reorganized Debtors also may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing, or such other setting as requested by the Debtors or Reorganized Debtors, for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

Notwithstanding anything to the contrary herein, if there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning

of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, and if such dispute is not resolved in a manner acceptable to the Reorganized Debtors in their sole discretion, the Reorganized Debtors shall have the right to add the applicable Executory Contract or Unexpired Lease to the Rejection List, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as of the Effective Date and no Cure Claim shall be owed in respect of such Executory Contract or Unexpired Lease.  The Reorganized Debtors may determine to add an Executory Contract or Unexpired Lease to the Rejection List pursuant to this paragraph before or after the Bankruptcy Court rules on any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption.  Following the resolution of any dispute regarding any Cure Claim, provided that the Reorganized Debtors do not elect to add the applicable Executory Contract or Unexpired Lease to the Rejection List, payment of the Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute or as may be agreed upon by the Reorganized Debtors and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure Claim pursuant to this **Article V.C** shall result in the full release and satisfaction of any Cure Claims, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure Claim has been fully paid pursuant to this Article V.C, shall be deemed Disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.     Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or to the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to any rejected Executory Contracts or Unexpired Leases.

E.     Insurance Policies.

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under this Plan.  Unless otherwise provided in this Plan or listed on the Rejection List, on the Effective Date: (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

F.     Workers' Compensation Program.

As of the Effective Date, the Debtors and Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation laws in all applicable states and (b) the Workers' Compensation Program.  **All Proofs of Claim on account of workers' compensation, including the Workers' Compensation Program, shall be deemed withdrawn and expunged without any further notice to or action, order, or approval of the Bankruptcy Court**; *provided*, *however*, that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Workers' Compensation Program, and nothing herein shall be deemed to impose any obligations on the Debtors or their insurers in addition to what is provided for under the terms of the Workers' Compensation Program and applicable state law.

G.      Reservation of Rights.

Nothing contained in this Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease. If there is a dispute regarding a Debtor's or Reorganized Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Reorganized Debtors shall be authorized to move to have such dispute heard by the Bankruptcy Court pursuant to **Article XI** of this Plan.

H.      Contracts and Leases Entered Into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      Timing and Calculation of Amounts to Be Distributed.

The Distribution Agent and the GUC Note Administrative Agent, as applicable, shall make distributions under the Plan on account of each Allowed Claim in the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. Unless the Bankruptcy Court orders otherwise, if, after an initial distribution in respect of a Claim, additional amounts are Allowed in respect of such Claim, the Distribution Agent and GUC Note Administrative Agent, as applicable, shall make distributions in respect of such additional Allowed amounts no later than thirty (30) days after such additional amounts are Allowed; *provided, however*, for General Unsecured Claims that are Disputed as of the Effective Date and become Allowed after the Effective Date, the Reorganized Debtors shall issue a GUC Promissory Note to the GUC Note Administrative Agent within ten (10) Business Days after any such Allowance to provide the Holder of such Claim the treatment provided in **Article III.C.6** of this Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

B.      Distributions to Holders of Disputed Claims and Interests.

Except as otherwise set forth in the Plan or as otherwise deemed appropriate by the Debtors or the Reorganized Debtors (in each of their sole discretion): (i) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved as set forth in **Article VII** hereof; and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on account of the Allowed Claim unless and until all objections to the Disputed Claim have been resolved as set forth in **Article VII** hereof or the Disputed Claim has been Allowed or expunged.

C.      Distribution Agent.

        1.      Powers of the Distribution Agent.

Except with respect to General Unsecured Claims, all distributions under this Plan shall be made by the Distribution Agent. The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof. The Distribution

Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

        2.        <u>Expenses Incurred On or After the Effective Date</u>.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement obligation (including reasonable attorneys' fees and expenses) shall be paid in Cash by the Reorganized Debtors.

D.        <u>GUC Note Administrative Agent and GUC Note Collateral Agent</u>.

        1.        Powers of the GUC Note Administrative Agent.

All distributions under this Plan to General Unsecured Claims shall be made by the GUC Note Administrative Agent.  The GUC Note Administrative Agent and GUC Note Collateral Agent shall be empowered to take all actions pursuant to the GUC Note Documents.

E.        <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions</u>.

        1.        <u>Record Date for Distribution</u>.

On the Distribution Record Date, the Claims Register shall be deemed closed and the Distribution Agent shall be authorized and entitled, but not required, to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

        2.        <u>Delivery of Distributions in General</u>.

Except as otherwise provided herein, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records (including the address set forth in a Filed Proof of Claim, a written notice of address change delivered to the Reorganized Debtors, or the Debtors' Schedules) as of the date of any such distribution.

        3.        <u>Manner of Payment</u>.

At the option of the Distribution Agent, any Cash distribution to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise required or provided in any applicable agreements.

        4.        <u>Minimum Distributions</u>.

No Cash payment of less than $100.00 in the aggregate shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

        5.        <u>Undeliverable Distributions and Unclaimed Property</u>.

In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding

any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property shall be discharged and forever barred. The Reorganized Debtors, and the Distribution Agent, as applicable, shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings, including reviewing any Filed Proof of Claim, written notice of address change delivered to the Reorganized Debtors, or the Debtors' Schedules.

A distribution shall be deemed unclaimed if a Holder has not: (i) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (ii) given notice to the Reorganized Debtors or Distribution Agent, as applicable, of an intent to accept a particular distribution; (iii) responded to the Reorganized Debtors' or Distribution Agent's, as applicable, requests for information necessary to facilitate a particular distribution; or (iv) taken any other action necessary to facilitate such distribution.

F.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Debtors, Reorganized Debtors, Distribution Agent, GUC Note Administrative Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, Reorganized Debtors, and Distribution Agent, as applicable, reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

The Distribution Agent may require, as a condition to receipt of a distribution, that the Holder of an Allowed Claim provide any information necessary to allow the Distribution Agent to comply with any such withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority. If the Distribution Agent makes such a request and the Holder fails to comply before the date that is one hundred and eighty (180) days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.

G.      No Postpetition or Default Interest on Claims.

Except as specified in **Article III.C.6** of this Plan or as otherwise specifically provided for in this Plan, the Cash Collateral Order, the Confirmation Order, the Plan Supplement, or applicable bankruptcy or non-bankruptcy law, postpetition and default interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to non-default or default interest accruing on or after the Petition Date on any such prepetition Claim.

H.      Allocations.

To the extent this Plan, the Cash Collateral Order, the Confirmation Order, or applicable bankruptcy or non-bankruptcy law requires the payment of accrued but unpaid interest on prepetition Allowed Claims, distributions in respect of such Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.      Foreign Currency Exchange Rate.

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the

exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

J.      Setoffs and Recoupment.

Except as otherwise provided herein, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the applicable Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised, settled, or assigned on or before the Effective Date (whether pursuant to this Plan, a Final Order, or otherwise); *provided*, *however*, that neither the failure to effect such a set off or recoupment nor the allowance of any Claim pursuant to this Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action.

In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless (i) the Debtors have consented; and (ii) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

K.      Claims Paid or Payable by Third Parties.

1.      Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Reorganized Debtor, the Distribution Agent, or the GUC Note Administrative Agent, as applicable. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Reorganized Debtor, the Distribution Agent, or the GUC Note Administrative Agent, as applicable, on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Allowed Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      GPX Claims.

Nothing herein modifies the obligations of Golden Pass and the Debtors under the GPX Settlement Documents with respect to the payment of GPX Claims. To the extent not satisfied prior to the Effective Date, Golden Pass and the Reorganized Debtors shall pay Allowed Claims that constitute GPX Claims, if any, pursuant to the terms of the GPX Settlement Documents and this Plan. Such valid Claims that constitute GPX Claims and that are satisfied by Golden Pass in accordance with the GPX Settlement Documents and this Plan shall not be the obligation of the Debtors, the Estates, the Reorganized Debtors, the Distribution Agent, or any of their Related Parties, subject to the terms of the GPX Settlement Documents and this Plan.

Any dispute between Golden Pass and the Debtors and/or Reorganized Debtors regarding whether any Claim, including any Administrative Claim, constitutes a valid GPX Claim subject to payment by Golden Pass under the GPX Settlement Documents shall be determined by the Bankruptcy Court.

Notwithstanding anything to the contrary herein, to the extent Golden Pass pays a transferee that has acquired a GPX Claim from the original Holder, such payments shall count against the GPX Direct Payment Cap to the extent

set forth in the GPX Settlement Documents, and the Debtors, the Reorganized Debtors, and Golden Pass shall have no obligations to the original Holder.  To the extent Golden Pass paid an original Holder of a GPX Claim prior to any transfer of such Claim becoming effective, such payments shall count against the GPX Direct Payment Cap to the extent set forth in the GPX Settlement Documents, and the Debtors, the Estates, the Reorganized Debtors, the Distribution Agent, Golden Pass, and any of their Related Parties shall have no obligations to the transferee.

For the avoidance of doubt, Golden Pass shall have no obligation to pay any Disputed Claim or otherwise pay any GPX Claim inconsistent with the terms of the GPX Settlement Documents.

3.      Claims Payable by Insurers.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim shall be Disallowed and expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

To the extent that applicable insurance coverage is insufficient to provide the treatment to an Allowed Claim required by **Article III** of this Plan, the Holder of such Allowed Claim shall have an Allowed General Unsecured Claim against the applicable Debtor's Estate for the deficiency.  To the extent that any insurer reduces the amount payable to the Holder of an Allowed Claim on account of a SIR or deductible under any applicable insurance policy, such Holder shall have an Allowed General Unsecured Claim against the applicable Debtor's Estate equal to the amount of such reduction.

Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding liquidating any Claim payable pursuant to an insurance policy.

4.      Applicability of Insurance Policies.

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      Claims Administration Responsibilities.

After the Effective Date, the Reorganized Debtors shall have the sole authority (i) to File, withdraw, or litigate to judgment objections to Claims; (ii) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, after the Effective Date, each of the Reorganized Debtors shall have the right to object to Claims and shall retain any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date, including the Causes of Action retained pursuant to **Article IV.L** of this Plan.

**Any objections to, or requests for estimation of, General Unsecured Claims (excluding General Unsecured Claims that are contingent or unliquidated) must be Filed on or before the Claims Objection Deadline.  If an objection or request for estimation is not Filed with respect to a General Unsecured Claim by the Claims Objection Deadline, such Claim shall be deemed Allowed, unless (i) such Claim is otherwise Disputed or Disallowed under this Plan or Final Order; (ii) such Claim is contingent or unliquidated as of the Claims Objection Deadline; or (iii) the Claims Objection Deadline is extended with respect to specific Claims**

by the Bankruptcy Court for good cause shown by the Debtors.  If the Bankruptcy Court orders the Claim Objection Deadline extended with respect to specific Claims and an objection or request for estimation is not Filed with respect to any such specific Claim by the extended Claims Objection Deadline, such Claim shall be deemed Allowed, unless (i) such Claim is otherwise Disputed or Disallowed under this Plan or Final Order or (ii) such Claim is contingent or unliquidated as of the extended Claims Objection Deadline.

Any Holder of a General Unsecured Claim that is contingent or unliquidated as of the Claims Objection Deadline shall provide prompt notice to the Reorganized Debtors if such Claim later becomes non-contingent and liquidated.  The Reorganized Debtors may object to, or request estimation of, such Claim by no later than one hundred and eighty (180) days after receiving such notice and may withhold any distributions on such Claim until the expiration of such 180-day period or the resolution of any objection or request for estimation, whether by Final Order or agreement between the Reorganized Debtor and the Holder of such Claim.  The Reorganized Debtors may seek an extension of the deadline to object to, or request estimation of, such Claim for good cause shown.

Notwithstanding anything to the contrary herein, if any General Unsecured Claim is Allowed after the GUC Promissory Notes are satisfied and discharged, the Reorganized Debtors, the Distribution Agent, the GUC Note Administrative Agent, or their successors, as applicable, shall distribute to the Holder of such General Unsecured Claim Cash in an amount equal to the value of the property such Holder is otherwise entitled to receive under **Article III.C.6** of this Plan on the Effective Date, inclusive of any interest such Holder would have received under the GUC Promissory Notes from the Effective Date through Maturity (as defined in the GUC Note Term Sheet).

B.     Allowance of Claims.

Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.  The Debtors or Reorganized Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

C.     Estimation of Claims.

Before, on, or after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  A Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim; *provided*, *however*, such limitation shall not apply to Claims against any of the Debtors requested by the Debtors to be estimated for voting purposes only.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) calendar days after the date on which such Claim is estimated.  All of the Claims and objection, estimation, and resolution procedures set forth in this Plan are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      Adjustment to Claims Register Without Objection.

Any duplicate Claim, any Claim (filed or scheduled) that has been paid or satisfied, or any Claim that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan or the Confirmation Order), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Debtors or the Reorganized Debtors, as applicable, upon stipulation or any agreement in writing, including, without limitation, email correspondence, between the Debtors and the Holder of the applicable Claim without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      Disallowance of Claims or Interests.

**Except as otherwise agreed to by the Debtors or the Reorganized Debtors, as applicable, any and all Proofs of Claim filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, Order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless the Bankruptcy Court shall have determined by a Final Order, on or before the Confirmation Hearing, that cause exists to extend the Claims Bar Date as to such Proof of Claim on the basis of excusable neglect.**

All Claims Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed by the Reorganized Debtors, or honored or reaffirmed, as the case may be, pursuant to this Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

All Proofs of Claim Filed on account of an Employee Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such Obligation, without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in exchange for the Debtors' assumption of all obligations under the Deferred Compensation Plan and the Reinstatement of all Deferred Compensation Plan Claims pursuant to **Article III.C.4** of this Plan, any and all Proofs of Claim asserting Deferred Compensation Plan Claims shall be deemed satisfied and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.  The rights of the Debtors, the Reorganized Debtors, and the Holders of Deferred Compensation Plan Claims with respect to such Deferred Compensation Plan Claims shall be fully reserved, and any disputes relating to amounts owed in connection with such Deferred Compensation Plan Claims shall be resolved by the Reorganized Debtors and the applicable Holder(s) in the ordinary course of business after the Effective Date.

F.      Reimbursement or Contribution.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim is no longer contingent.

G.      Amendments to Proofs of Claim.

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim or Proof of Claim Filed after the Effective Date shall be deemed Disallowed in full and expunged without any further action or notice to the Bankruptcy Court; *provided*, *however*, the filing of an unauthorized amendment shall not affect the underlying Claim or Proof of Claim.  Nothing in this paragraph shall impair any claimant's ability to seek leave from the Bankruptcy Court to amend a Claim or Proof of Claim.

H.      No Distributions Pending Allowance.

        Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim becomes an Allowed Claim.

I.      Distributions After Allowance.

        To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with **Article VI** of this Plan.

J.      Single Satisfaction of Claims.

        In no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Interest exceed 100 percent of the underlying Allowed Claim or Interest plus applicable interest required to be paid under this Plan, if any, and the Allowed amount of any Claim or Interest shall be automatically reduced dollar-for-dollar on account of any payments made by any third parties on account of such Claim or Interest (including as set forth in **Article VI.J** of this Plan).

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      Discharge of Claims and Termination of Interests.

        Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims or Interests, and GPX or any of its assets or properties with respect to any Claims that constitute GPX Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted this Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date. For the avoidance of doubt, the discharge provided herein shall discharge, release, and extinguish any right of any Holder of any Claim to file, assert, levy, or attach any Liens or initiate any claim against any bonds or the Sureties on account of any Claims against any of the Debtors that are discharged, satisfied, or released pursuant to this Plan, including on account of General Unsecured Claims that are satisfied in full under this Plan, or otherwise enforce, collect, or recover on account of any such Claims other than as expressly permitted under this Plan.  Further, and for the avoidance of doubt, the discharge provided herein shall discharge, release, and extinguish any right of any Holder of any GPX Claim to file, assert, levy, or attach any Liens against property of Golden Pass on account of any GPX Claims against any of the Debtors that are discharged, satisfied, or released pursuant to this Plan, or otherwise enforce, collect, or recover on account of any such GPX Claims against Golden Pass or any property interest of Golden Pass.

B.      Release of Liens.

        **Except as otherwise provided in this Plan, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective**

Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with <u>Article III.C</u> hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, including any bonds related to the Debtors, shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The foregoing direction to release Liens shall be considered a direction in accordance with, as applicable, the Prepetition Credit Agreement, as if such direction included the signatures of the necessary lenders thereunder to direct the applicable agent to take the actions contemplated thereby. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, including with respect to any bonds related to the Debtors, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.      <u>Releases by the Debtors.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, and except as expressly provided in this Plan, the Schedule of Retained Causes of Action, or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor and its Estate, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the GPX Settlement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Released Avoidance Actions, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, Filing, or consummation of the Plan, the Plan Supplement, the Confirmation Order, the Restructuring Transactions, the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory Notes, the GUC Note Documents, the Parent Capital Contribution, the

GPX Settlement Documents, the Cash Collateral Order, the Disclosure Statement, and all related agreements, instruments, and other documents, and the solicitation of votes with respect to this Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any Claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in this Article VIII.C, the Debtors shall maintain all rights to object to Filed Claims and shall not release any claims or Causes of Action (i) identified in the Schedule of Retained Causes of Action, or (ii) related to the GPX Settlement that are preserved by the GPX Settlement Documents, the GPX Settlement Dispute Opinion, or the GPX Settlement Dispute Order.  Any and all such rights, claims, and Causes of Action set forth in this paragraph shall be fully preserved and revest in the Reorganized Debtors pursuant to this Plan and the Confirmation Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (3) a good faith settlement and compromise of the Claims released by the Debtor Release; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.      Releases by Third Parties.

Except as otherwise expressly set forth in this Plan or the Confirmation Order, and except for the rights that remain in effect from and after the Effective Date to enforce this Plan, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the GPX Settlement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, Filing, or consummation of the Plan, the Plan Supplement, the Confirmation Order, the Restructuring Transactions, the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory

Notes, the GUC Note Documents, the Parent Capital Contribution, the GPX Settlement Documents, the Cash Collateral Order, the Disclosure Statement, and all related agreements, instruments, and other documents, and the solicitation of votes with respect to this Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party (other than a Released Party that is a Reorganized Debtor, Debtor, or a director, officer, or employee of any Debtor as of the Petition Date), from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

E.      Exculpation.

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivative related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date to the Effective Date, the negotiation, formulation, preparation, Filing, or consummation of the Plan, the Plan Supplement, the Confirmation Order, the Restructuring Transactions, the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory Notes, the GUC Note Documents, the Parent Capital Contribution, the GPX Settlement Documents, the Cash Collateral Order, the Disclosure Statement, all related agreements, instruments, and other documents, or any transaction related to the Restructuring Transactions, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes for the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

F.      Injunction.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan in relation to any Claim or Interest that is extinguished, discharged, satisfied, or released pursuant to this Plan.

Except as otherwise expressly provided in this Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, discharged, satisfied, released, or are subject to exculpation pursuant to Article VIII, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties and/or the Released Parties:

1.  commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

2.  enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

3.  creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

4.  filing, asserting, levying, or attaching any Liens against any property of the Debtors or Reorganized Debtors on account of any Claims arising under or related to Executory Contracts or Unexpired Leases that are assumed and cured pursuant to this Plan;

5.  filing, asserting, levying, or attaching any Liens against any bonds or the Sureties on account of any Claims against any of the Debtors that are discharged, satisfied, or released pursuant to this Plan, including on account of General Unsecured Claims that are satisfied in full under this Plan, and enforcing, collecting, or recovering on account of any such Liens;

6.  filing, asserting, levying, or attaching any Liens against any property of Golden Pass on account of any GPX Claims against any of the Debtors that are discharged, satisfied, or released pursuant to the Plan, and enforcing, collecting, or recovering on account of any such Liens, or otherwise enforcing, collecting, or recovering on account of any such GPX Claims against Golden Pass;

7.  filing, asserting, levying, or attaching any Claims or Liens on account of GPX Claims satisfied (or to be satisfied) by Golden Pass under the GPX Settlement, whether against the Released Parties, Exculpated Parties, Golden Pass, Chiyoda, CB&I, or CCZJV-GPX;

8.  except as otherwise provided under this Plan, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

9.  commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Order.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the negotiation, formulation, preparation, Filing, or consummation of the Plan, the Plan Supplement, the Confirmation Order, the

42

Restructuring Transactions, the A&R Credit Facility, the Sunbelt Promissory Note, the GUC Promissory Notes, the GUC Note Documents, the Parent Capital Contribution, the GPX Settlement Documents, the Cash Collateral Order, the Disclosure Statement, the solicitation of votes with respect to this Plan, or any transaction related to the Restructuring, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without regard to whether such Person or Entity is a Releasing Party, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action. The injunction in this Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under this Plan, the Confirmation Order, or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Order from bringing an action to enforce the terms of this Plan, the Confirmation Order, or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Order.

G.      Limitation of Liability of Officers, Directors, and Agents.

The provisions of section 1125(e) of the Bankruptcy Code govern the protection from liability with respect to all matters governed by section 1125(e). The Debtors and their successors (and the officers, directors or agents of the Debtors or their successors) have no liability for conduct that was authorized by an order of the Bankruptcy Court. With respect to conduct during the period from the Petition Date through the Effective Date, the Debtors and their successors (and the officers, directors or agents of the Debtors or their successors) may be subject to liability only for conduct that constituted actual fraud, gross negligence, or willful misconduct, provided that such limitations on liability exist under applicable non-bankruptcy law. Notwithstanding the foregoing, this Plan does not limit liability for conduct for which the Bankruptcy Court's approval was required by applicable law, but for which approval was not granted.

H.      Waiver of Statutory Limitations on Releases.

Each Releasing Party in each of the releases contained in this Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party. The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

I.      Special Provision Regarding the United States Government.

Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States government or any of its agencies or any state and local authority whatsoever, including without limitation any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United

**States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.**

J.        Protections Against Discriminatory Treatment.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

K.        Document Retention.

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policies, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

A.        Conditions Precedent to the Effective Date.

It shall be a condition to the Effective Date of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of **Article IX.B** hereof:

1.    The Bankruptcy Court shall have entered the Confirmation Order which shall be in form and substance reasonably satisfactory to the Debtors and the Committee and consistent in all material respects with the terms and conditions of the Plan;

2.    The Confirmation Order shall be in full force and effect;

3.    The settlements embodied in the Plan shall have been approved by the Bankruptcy Court and incorporated in the Confirmation Order;

4.    The A&R Credit Facility Documents, in form and substance consistent with the A&R Credit Facility Term Sheet, shall have been executed and delivered by the Debtors and the A&R Credit Facility Agent;

5.    The Sunbelt Promissory Note, in form and substance consistent with the Sunbelt Term Sheet, shall have been executed and delivered by the Debtors and Sunbelt;

6.    The Debtors and the GUC Note Administrative Agent shall have executed the GUC Promissory Notes, and the GUC Promissory Notes shall have vested in the GUC Note Administrative Agent, for the benefit of, and distributions to, Holders of Allowed General Unsecured Claims;

7.      The Parent Capital Contribution shall have been contributed to, and vested in, ZHI;

8.      The Exit Intercreditor Agreement shall be executed in form and substance consistent with the Plan; and

9.      The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, actions, documents, and other agreements that are necessary to implement and effectuate the Plan and each of the other Restructuring Transactions.

B.      Waiver of Conditions.

The conditions to the Effective Date set forth in this **Article IX** may be waived, in whole or in part, by the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan; *provided, however*, the Debtors shall obtain the consent of the Prepetition Credit Facility Agent with respect to any waiver (in whole or in part) of the condition set forth in **Article IX.A.4**, and the consent of the Committee with respect to any waiver (in whole or in part) of the condition set forth in **Article IX.A.6**.

C.      Substantial Consummation.

Consummation of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.      Effect of Failure of Conditions.

If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity, respectively.

### ARTICLE X.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

A.      Modification and Amendments.

Except as otherwise specifically provided in this Plan, subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors reserve the right to modify this Plan without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan; *provided, however,* that the Debtors shall obtain the consent of the Committee (which consent shall not be unreasonably withheld) for any alterations, amendments, supplements, or modifications to the Plan impacting the treatment of Holders of General Unsecured Claims under the Plan.  After the Confirmation Date and before substantial consummation of the Plan, the Debtors may initiate proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan.

After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan (including the Plan Supplement) without further order or approval of the Bankruptcy Court; *provided*, *however*, that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests.

B.      Effect of Confirmation on Modifications.

Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of Plan.

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or relating to, the Chapter 11 Cases, the Confirmation Order, and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or Allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan;

3.      resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Claims; (ii) any dispute regarding whether a contract or lease is or was executory, expired, or terminated; (iii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iv) any other issue related to any Executory Contracts and Unexpired Leases; or (v) any dispute regarding whether the Plan or any Restructuring Transactions trigger any cross-default or change of control provision in any contract or agreement;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan or the Confirmation Order;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action that may arise from or in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

46

7. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan, the Confirmation Order, or the Disclosure Statement;

9. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan or the Confirmation Order and the administration of the Estates;

11. hear and determine disputes arising in connection with the interpretation, implementation, effect, or enforcement of this Plan or the Plan Supplement, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

12. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan or the Confirmation Order;

13. adjudicate, decide, or resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in **Article VIII** hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

14. adjudicate, decide, or resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to **Article VI** hereof;

15. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16. determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan, the Plan Supplement, or the Disclosure Statement;

17. enter an order concluding or closing the Chapter 11 Cases;

18. consider any modifications of this Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19. determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20. adjudicate, decide, or resolve disputes as to the ownership of any Claim or Interest;

21. adjudicate, decide, or resolve all matters related to any subordinated Claim;

22. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

23. adjudicate, decide, or resolve matters concerning state, local, and U.S. federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

24.     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

25.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under **Article VIII** hereof;

26.     hear and determine all disputes involving the obligations under, or the terms of, the GPX Final Settlement Order;

27.     enforce all orders previously entered by the Bankruptcy Court in connection with the Chapter 11 Cases;

28.     hear any other matter not inconsistent with the Bankruptcy Code; and

29.     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Person or Entity's rights arising from or obligations incurred in connection with the Plan.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this **Article XI**, the provisions of this **Article XI** shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior Order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

As of the Effective Date, notwithstanding anything in this **Article XI** to the contrary, the A&R Credit Facility Documents shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain any jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     <u>Immediate Binding Effect</u>.

Subject to **Article IX.A** hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted or rejected this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan or the Confirmation Order, each Entity acquiring property under this Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan and the Confirmation Order, regardless of whether any such Holder of a Claim or Interest has voted on this Plan.

B.      Waiver of Stay.

The requirement under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order shall be waived by the Confirmation Order. The Confirmation Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

C.      Additional Documents.

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan or the Confirmation Order. The Debtors, the Reorganized Debtors, the GUC Note Administrative Agent, or the GUC Note Collateral Agent, as applicable, and all Holders of Claims receiving distributions pursuant to this Plan and all other parties in interest, shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan and the Confirmation Order.

D.      Payment of Statutory Fees.

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Debtors or the Reorganized Debtors (or the Distribution Agent on behalf of each of the Reorganized Debtors), as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

The Debtors shall file all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made during the applicable period, attested to by the Reorganized Debtors. The obligation to file quarterly reports shall continue until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

E.      Statutory Committee and Cessation of Fee and Expense Payment.

On the Effective Date, the Committee shall dissolve automatically and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except with respect to (i) final fee applications of the Professionals asserting Professional Fee Claims, including any appeals in connection therewith, or (ii) for purposes of participating in any appeals of the Confirmation Order. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committee, other than such fees and expenses incurred in connection with any appeals of the Confirmation Order. Any reasonable and documented fees or expenses of the Committee or its advisors incurred between the Confirmation Date and the Effective Date (or after the Effective Date with respect to any appeals of the Confirmation Order) shall be paid by the Debtors or Reorganized Debtors, as applicable, without the necessity of the filing of a fee application for such fees and expenses.

F.      Reservation of Rights.

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any Entity unless and until the Effective Date occurs.

G.      Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

H.      Notices.

To be effective, all notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.      if to the Debtors or the Reorganized Debtors, to:
            Zachry Holdings, Inc.
            P.O. Box 240130
            San Antonio, TX 78224
            Attention: Jay Old

            with copies (which shall not constitute notice) to:

            White & Case LLP
            609 Main Street, Suite 2900
            Houston, Texas 77002
            Attention:  Charles R. Koster
            Email:      charles.koster@whitecase.com

            -and-

            White & Case LLP
            111 South Wacker Drive
            Chicago, IL 60606
            Attention:  Bojan Guzina, Andrew F. O'Neill, William A. Guerrieri, Adam T. Swingle
            Email:      bojan.guzina@whitecase.com;
                        aoneill@whitecase.com;
                        william.guerrieri@whitecase.com;
                        adam.swingle@whitecase.com

    2.      if to the Committee, to:
            Jason Brookner
            Gray Reed LLP
            1300 Post Oak Blvd., Suite 2000
            Houston, TX 77056
            Attention: Jason S. Brookner
            Email:      jbrookner@grayreed.com

            -and-

            Ehud Barak
            Daniel Desatnik
            Proskauer LLP
            Eleven Times Square
            New York, NY 10036-8299
            Attention:  Ehud Barak, Daniel Desatnik
            Email:      ebarak@proskauer.com;
                        ddesatnik@proskauer.com

Paul V. Possinger
Proskauer LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Attention: Paul V. Possinger
Email:      ppossinger@proskauer.com

3.      if to the Prepetition Credit Facility Agent, to:
Bank of America, N.A.
Agency Management
900 W. Trade St.
Gateway Village – 900 Building
NC1-026-06-03
Charlotte, NC 28255
Attention: Dianna (Dottie) Benner

with copies (which shall not constitute notice) to:

McGuireWoods LLP
845 Texas Ave., 24th Floor
Houston, TX 77002
Attention: Demetra Liggins, Andrew C. Papa
Email:      dliggins@mcguirewoods.com;
            apapa@mcguirewoods.com

-and-

McGuireWoods LLP
1251 Avenue of Americas, 20th Floor
New York, New York 10020-1104
Attention: Shawn R. Fox
Email:      sfox@mcguirewoods.com

After the Effective Date, the Debtors have authority to send a notice to Entities receiving documents pursuant to Bankruptcy Rule 2002 that such Entities must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

I.      Term of Injunctions or Stays.

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.      Entire Agreement.

Except as otherwise indicated, and without limiting the effectiveness of this Plan (including, for the avoidance of doubt, the Plan Supplement), the Confirmation Order supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan, the Confirmation Order, the Plan Supplement, and the documents related thereto.

K.    Exhibits.

All exhibits and documents included in this Plan, the Confirmation Order, and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at www.veritaglobal.net/ZHI or the Bankruptcy Court's website at http://www.txs.uscourts.gov/.

L.    Deemed Acts.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of this Plan and the Confirmation Order.

M.    Nonseverability of Plan Provisions.

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) non-severable and mutually dependent.

N.    Votes Solicited in Good Faith.

Upon entry of the Confirmation Order, each of the Released Parties and Exculpated Parties will be deemed to have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and in a manner consistent with the Disclosure Statement, the Plan, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Plan and are entitled to the protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan.  Without limiting the generality of the foregoing, upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and other applicable law.

O.    Request for Expedited Determination of Taxes.

The Debtors and Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

P.    Closing of Chapter 11 Cases.

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to (1) close all of the Chapter 11 Cases except for one of the Chapter 11 Cases as determined by the Reorganized Debtors, and all contested matters relating to each of the Debtors, including objections to Claims, and enforcement of this Plan shall be administered and heard in such Chapter 11 Case and (2) change the name of the remaining Debtor and case caption of the remaining open Chapter 11 Case as desired, in the Reorganized Debtors' sole discretion.

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, including full satisfaction of all obligations of the Reorganized Debtors under this Plan, File with the Bankruptcy Court all

documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

Q.      Waiver or Estoppel.

Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

R.      Creditor Default.

An act or omission by a Holder of a Claim in contravention of the provisions of this Plan shall be deemed an event of default under this Plan.  Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Reorganized Debtors in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Reorganized Debtors in an amount, including interest, to compensate the Reorganized Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of this Plan.

*[Remainder of Page Intentionally Left Blank]*

Dated:  February 23, 2025

ZACHRY HOLDINGS, INC.
(for itself and on behalf of each of the other Debtors
and Debtors in Possession)

By:  _/s/ Mohsin Y. Meghji_
Name: Mohsin Y. Meghji
Title:   Chief Restructuring Officer

## Exhibit B

**Exit ICA Term Sheet**

INTERCREDITOR AGREEMENT

Summary of Terms and Conditions

Reference is made to (i) that certain amended and restated credit agreement, to be entered into by and among Zachry Holdings, Inc., a Delaware corporation (the "Company"), Zachry EPC Holdings, LLC, a Texas limited liability company and Zachry Plant Services Holdings, Inc., a Texas corporation (collectively, the "Borrowers" and, each individually, a "Borrower"), the Company, as holdings, the several lenders from time to time parties thereto (the "First Lien Lenders"), Bank of America, N.A., as administrative agent and collateral agent (the "First Lien Agent") and each other party thereto, (ii) that certain second lien secured promissory note(the "Sunbelt Note") to be entered into by and among the Company and Sunbelt Rentals, Inc. (the "Second Lien Holder") and (iii) that certain third lien secured promissory note (the "GUC Promissory Note") to be entered into by and among the Company, Holders of General Unsecured Claims (the "Third Lien Holders") and the administrative agent under the GUC Promissory Note (the "Third Lien Agent"). The relative rights of the First Lien Lenders, the Second Lien Holder and the Third Lien Holders in the Loan Party Collateral (as defined in the A&R Credit Facility Term Sheet) will be governed by an intercreditor agreement to be entered into by and between the First Lien Agent, the Second Lien Holder and the Third Lien Agent on the terms set forth below and otherwise on terms and conditions mutually agreed to by the First Lien Agent, the Second Lien Holder and the Third Lien Agent. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and Its Debtor Affiliates* [Docket No. 1978].

SUBORDINATION

Priority of Liens:

The priority of liens on the Collateral is in the following order:

(1) Liens securing all obligations outstanding under the A&R Credit Facility Documents, certain hedging agreements or cash management agreements, and documentation (the "Additional First Lien Documentation") with respect to any other indebtedness issued or guaranteed by any Loan Party which are secured by any or all of the Collateral on a basis that is senior to the Second Lien Obligations (as defined below), including all interest, fees, costs and expenses accrued or accruing (or which would, absent commencement of an insolvency proceeding, accrue) after commencement of an insolvency proceeding (the "First Lien Obligations");

(2) Liens securing all obligations outstanding under the Sunbelt Note, including all interest, fees, costs and expenses accrued or accruing (or which would, absent commencement of an insolvency proceeding, accrue) after commencement of an insolvency proceeding (the "Second Lien Obligations"); and

(3) Liens securing all obligations outstanding under the GUC Promissory Note, including all interest, fees, costs and expenses accrued or accruing (or which would, absent commencement of an insolvency proceeding, accrue) after commencement of an insolvency proceeding (the "Third Lien Obligations").

There will be no cap on the maximum principal amount of loans and commitments under the First Lien Documentation and under the Additional First Lien Documentation. The amount of Second Lien Obligations shall be capped at an amount to be agreed between the Second Lien Holder and the Third Lien Agent.  The amount of Second Lien Obligations and Third Lien Obligations shall be capped at an amount set forth in the A&R Credit Facility Documents.

The Collateral granted to the First Lien Agent on behalf of the First Lien Holders, the Second Lien Holder and the Third Lien Agent on behalf of the Third Lien Holders shall not include any assets that are not Collateral granted to each of such other persons.   No person shall guaranty any of the First Lien Obligations, Second Lien Obligations or Third Lien Obligations that is not a guarantor or borrower, as applicable, of the First Lien Obligations, the Second Lien Obligations and the Third Lien Obligations.

The priority of liens shall remain in full force and effect irrespective of the time, manner, or order of the grant, attachment, or perfection of a lien.

Application of Payments:

Until (a) the payment in full in cash of the principal  of, interest on (including postpetition interest, fees, expenses and costs), and other outstanding amounts of First Lien Obligations, termination of all commitments constituting First Lien Obligations, termination/cash collateralization of all letters of credits issued and constituting First Lien Obligations, and termination/cash collateralization of any applicable hedging agreements or cash management agreements (the "Discharge of First Lien Obligations"), (b) the payment in full in cash of the principal  of, interest on (including postpetition interest, fees, expenses and costs), and other outstanding amounts of Second Lien Obligations (the "Discharge of Second Lien Obligations") and (c) the payment in full in cash of the principal  of, interest on (including postpetition interest, fees, expenses and costs), and other outstanding amounts of Third Lien Obligations (the "Discharge of Third Lien Obligations"), Collateral, proceeds or other distributions with respect to the Collateral received in connection with an enforcement action as a secured creditor

pertaining to the Collateral (an "<u>Enforcement Action</u>") or an insolvency proceeding will be applied:

    (a)  first, to the First Lien Obligations (including permanent reduction of Exit Revolving Commitments under the Exit Revolving Facility);

    (b)  second, upon the Discharge of First Lien Obligations, to the Second Lien Obligations;

    (c)  third, upon the Discharge of First Lien Obligations and the Discharge of Second Lien Obligations, to the Third Lien Obligations; and

    (d)  fourth, upon the Discharge of First Lien Obligations, the Discharge of Second Lien Obligations and the Discharge of Third Lien Obligations, to the applicable ZHI Entity Guarantor (as defined in the A&R Credit Facility Term Sheet) or as otherwise required by law.

**Payment Turnover:**

Until the Discharge of First Lien Obligations has occurred, Collateral or proceeds thereof received by either (i) an agent or trustee with respect to the Second Lien Obligations or any other holders of the Second Lien Obligations (a "<u>Second Lien Claimholder</u>") or (ii) an agent or trustee with respect to the Third Lien Obligations or any other holders of the Third Lien Obligations (a "<u>Third Lien Claimholder</u>"), in each case in connection with an Enforcement Action, otherwise in contravention of the Intercreditor Agreement, or in connection with an insolvency proceeding will be paid over to a designated First Lien Claimholder (as defined below).

Following the Discharge of First Lien Obligations and until the Discharge of Second Lien Obligations, Collateral or proceeds thereof received by an agent or trustee with respect to First Lien Obligations or the Third Lien Obligations or any other holders of the First Lien Obligations (a "<u>First Lien Claimholder</u>") or any Third Lien Claimholder in connection with an Enforcement Action, otherwise in contravention of the Intercreditor Agreement, or in connection with an insolvency proceeding will be paid over to a designated Second Lien Claimholder.

Following the Discharge of First Lien Obligations and the Discharge of Second Lien Obligations and until the Discharge of Third Lien Obligations, Collateral or proceeds thereof received by an agent or trustee with respect to the First Lien Obligations or the Second Lien Obligations or any <u>First Lien Claimholder</u> or Second Lien Claimholders in connection with an Enforcement Action, otherwise in contravention of the Intercreditor Agreement, or in connection with an insolvency proceeding will be paid over to a designated Third Lien Claimholder.

Standstill Period:

Second Lien Claimholders may commence an Enforcement Action with respect to the Collateral or otherwise exercise rights under applicable law if (a) the Discharge of First Lien Obligations has occurred, or (b) a 180 day standstill period has elapsed, and no First Lien Claimholder is then diligently pursing an Enforcement Action against any Collateral or diligently attempting to vacate any stay against such exercise, or any Loan Party is subject of an insolvency proceeding; provided that the Second Lien Holder shall give the First Lien Agent at least 15 days prior written notice prior to taking any Enforcement Action (which notice may be given during the standstill period). The standstill period may be triggered by the Second Lien Claimholders providing written notice to a designated representative of the First Lien Claimholders upon (i) any payment default under the First Lien Documentation (as in effect on the effective date thereof or from time to time and irrespective of any waiver thereof), (ii) any payment default under the Second Lien Documentation or (iii) a breach of the restricted payments covenant under the Second Lien Documentation. Notwithstanding the foregoing, Second Lien Claimholders shall have all rights as an unsecured creditor and may exercise all rights and remedies available thereto to the extent not specifically waived, provided, that if any Second Lien Claimholder becomes a judgment lien creditor in respect of Collateral as a result of enforcement thereof, such judgment lien shall be subordinated to liens securing First Lien Obligations.

Third Lien Claimholders may commence an Enforcement Action with respect to the Collateral or otherwise exercise rights under applicable law if (a) the Discharge of First Lien Obligations and Discharge of Second Lien Obligations has occurred, or (b) a 270 day standstill period (or, after the Discharge of First Lien Obligations, a 90-day standstill period) and no First Lien Claimholder or Second Lien Claimholder is then diligently pursing an Enforcement Action against any Collateral or diligently attempting to vacate any stay against such exercise, or any Loan Party is subject of an insolvency proceeding. The standstill period may be triggered by the Third Lien Claimholders providing written notice to a designated representative of the First Lien Claimholders and Second Lien Claimholders upon (i) any payment default under the First Lien Documentation (as in effect on the effective date thereof or from time to time and irrespective of any waiver thereof), (ii) any payment default under the Third Lien Documentation or (iii) a breach of the restricted payments covenant under the Third Lien Documentation. Notwithstanding the foregoing, Third Lien Claimholders shall have all rights as an unsecured creditor and may exercise all rights and remedies available thereto to the extent not specifically waived, provided, that if any Third Lien Claimholder becomes a judgment lien creditor in respect of Collateral as a result of enforcement thereof, such judgment lien

shall be subordinated to liens securing First Lien Obligations and Second Lien Obligations.

Release of Liens:

If in connection with (1) a First Lien Claimholder's Enforcement Action in respect of the Collateral or (2) a disposition of Collateral not prohibited by the terms of the First Lien Documentation from time to time in effect, the First Lien Claimholders release any liens on any part of the Collateral or release any Guarantor from its obligations under its guaranty of the First Lien Obligations, then the liens of the Second Lien Claimholders and the Third Lien Claimholders on such Collateral and the obligations of such Guarantor under its guaranty of the Second Lien Obligations and the Third Lien Obligations, shall in each case be automatically released to the same extent as the liens of such First Lien Claimholders, or the obligations of such Guarantor under its guaranty of the First Lien Obligations, as applicable, are released (but shall apply to any remaining proceeds of such disposition of Collateral that are not otherwise utilized to repay the First Lien Obligations).

If in connection with (1) a Second Lien Claimholder's Enforcement Action in respect of the Collateral or (2) a disposition of Collateral not prohibited by the terms of the First Lien Documentation, not prohibited by the terms of the Second Lien Documentation and not prohibited by the terms of the Third Lien Documentation, the Second Lien Claimholders release any liens on any part of the Collateral or release any Guarantor from its obligations under its guaranty of the Second Lien Obligations, then the liens of the Third Lien Claimholders on such Collateral and the obligations of such Guarantor under its guaranty of the Third Lien Obligations, shall in each case be automatically released to the same extent as the liens of such Second Lien Claimholders, or the obligations of such Guarantor under its guaranty of the Second Lien Obligations, as applicable, are released (but shall apply to any remaining proceeds of such disposition of Collateral that are not otherwise utilized to repay the Second Lien Obligations).

The First Lien Agent and the First Lien Claimholders shall have the sole and exclusive right, subject to the rights of Grantors under the First Lien Documents, to adjust and settle any claim under any insurance policy covering the Collateral in the event of any loss thereunder and to approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation) affecting the Collateral. All proceeds of any such insurance policy and any such award (or any payments with respect to a deed in lieu of condemnation) shall be paid, subject to the rights of Grantors under the First Lien Documents and the Second Lien Documents, first to the First Lien Claimholders, then to Second Lien Claimholders and finally to the Third Lien

Claimholders in accordance with the priorities set forth herein, or as a court of competent jurisdiction may otherwise direct.

INSOLVENCY PROCEEDINGS

| | |
|---|---|
| DIP Financing / Cash Collateral: | Until the Discharge of First Lien Obligations, the Second Lien Claimholders and the Third Lien Claimholders will not contest any debtor-in-possession financing ("<u>DIP Financing</u>") or the use of cash collateral if the designated First Lien Claimholder consents thereto; <u>provided</u> that (i) the aggregate principal amount of such DIP Financing, together with the aggregate outstanding First Lien Obligations (including any roll-up), does not exceed the DIP Cap, (ii) such DIP Financing or cash collateral order (A) does not compel any Grantor to seek confirmation of a specific plan of reorganization for which all or substantially all of the material terms are set forth in such DIP Financing documentation or the DIP Financing order or (B) does not require the sale or other liquidation of a material portion of the Collateral prior to a default under such DIP Financing documentation or cash collateral order (but may include sale or plan milestones providing for the sale or reorganization of each Grantor's business as a going concern that are intended to cause the applicable Grantor to consummate such sale or reorganization as soon as practicable after the commencement of an insolvency proceeding), and (iii) the liens securing such DIP Financing shall be senior to or pari passu with the liens of the First Lien Claimholder on the Collateral securing the then outstanding First Lien Obligations (collectively, the "<u>DIP Financing</u> <u>Conditions</u>"). |
| | "DIP Cap" shall mean 130% of the aggregate principal amount of First Lien Obligations outstanding at any time. |
| Sale of Collateral: | Second Lien Claimholders and Third Lien Claimholders will not object in such capacities, and will be deemed to have consented to a 363 sale of Collateral to which the designated First Lien Claimholder consents in writing if (a) the liens of the Second Lien Claimholders attach to the net proceeds with the same priority as their liens on the Collateral which liens are subject to the Intercreditor Agreement, (b) the liens of the Third Lien Claimholders attach to the net proceeds with the same priority as their liens on the Collateral which liens are subject to the Intercreditor Agreement and (c) the net proceeds are distributed in accordance with the application of payments under the Intercreditor Agreement; provided that the Second Lien Claimholders and the Third Lien Claim Holders will not be limited from exercising rights available to general unsecured creditors to object to such a proposed sale of Collateral. The Second Lien Claimholders and the Third Lien Claimholders will |

not object in such capacities to the right of the First Lien Claimholders to credit bid First Lien Obligations.

Adequate Protection:

Second Lien Claimholders and Third Lien Claimholders shall not contest any request by the First Lien Claimholders for adequate protection, postpetition interest or relief from the automatic stay.

To the extent that adequate protection is requested by and granted to the First Lien Claimholders in the form of payment of postpetition interest as adequate protection, additional or replacement liens or superpriority claims, the Second Lien Claimholders and Third Lien Claimholders may also seek payment of postpetition interest as adequate protection, additional or replacement liens or superpriority claims; *provided* that (i) if the Second Lien Claimholders receive adequate protection in the form of additional or replacement liens or superpriority claims, such liens and claims will be subordinate to the liens and claims of the First Lien Claimholders, (ii) if the Third Lien Claimholders receive adequate protection in the form of additional or replacement liens or superpriority liens, such liens and claims will subordinate to the liens and claims of the First Lien Claimholders and the Second Lien Claimholders, (iii) the Second Lien Claimholders may seek the payment of postpetition interest as adequate protection subject to the First Lien Claimholders' right to object to the reasonableness of such payments and (iv) seek the Third Lien Claimholders may seek the payment of postpetition interest as adequate protection subject to the First Lien Claimholders' and the Second Lien Claimholders' right to object to the reasonableness of such payments.

Waiver of Claims:

Second Lien Claimholders and Third Lien Claimholders waive any right to assert or enforce any claim under section 506(c) or 552 of the Bankruptcy Code as against any First Lien Claimholders or any of the Collateral.

Third Lien Claimholders waive any right to assert or enforce any claim under section 506(c) or 552 of the Bankruptcy Code as against any Second Lien Claimholders or any of the Collateral.

Plan Voting:

Second Lien Claimholders and Third Lien Claimholders shall have the right to vote any claim in any insolvency proceeding; provided, the Second Lien Claimholders and the Third Lien Claimholders in such capacities shall not vote in favor of any chapter 11 plan that is in violation of the Intercreditor Agreement.

OTHER PROVISIONS

Purchase Rights:

None.

II-7

| | |
|---|---|
| Amendment of Loan Documents: | The First Lien Claimholders have consent rights with respect to amendments to Second Lien Documentation that (i) are in violation of the Intercreditor Agreement, (ii) restrict the Borrowers' ability to make required payments with respect to the First Lien Obligations, or (iii) shortens the maturity or weighted average life to maturity of the Second Lien Obligations, require that any payment on the Second Lien Obligations be made earlier than originally scheduled or add or make more restrictive any mandatory payment, prepayment, redemption, repurchase, sinking fund or similar requirement except for periods beyond the latest maturity date under the First Lien Documentation.

The First Lien Claimholders have consent rights with respect to amendments to Third Lien Documentation that (i) are in violation of the Intercreditor Agreement, (ii) restrict the Borrowers' ability to make required payments with respect to the First Lien Obligations, or (iii) shortens the maturity or weighted average life to maturity of the Third Lien Obligations, require that any payment on the Third Lien Obligations be made earlier than originally scheduled or add or make more restrictive any mandatory payment, prepayment, redemption, repurchase, sinking fund or similar requirement except for periods beyond the latest maturity date under the First Lien Documentation.

The Second Lien Claimholders have consent rights with respect to amendments to First Lien Documentation that are in violation of the Intercreditor Agreement.

The Third Lien Claimholders have consent rights with respect to amendments to First Lien Documentation and Second Lien Documentation that are in violation with the Intercreditor Agreement. |