**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ZACHRY HOLDINGS, INC., *et al.*[1] | ) ) ) | Case No. 24-90377 (MI) |
| Reorganized Debtors. | ) ) ) | (Jointly Administered) |

**REORGANIZED DEBTORS' <u>EMERGENCY</u> MOTION TO
ENFORCE THE CONFIRMED FURTHER MODIFIED FIRST AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ZACHRY HOLDINGS, INC.
AND ITS DEBTOR AFFILIATES WITH RESPECT TO THE NEBRASKA LITIGATION**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on May 12, 2025.**
>
> **If you object to the requested relief or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 12, 2025, at 10:00 a.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "electronic appearance" link on Judge Isgur's home page. Select the case name, complete the required fields, and click "submit" to complete your appearance.**

---

[1] The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814. A complete list of each of the Reorganized Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Reorganized Debtors' claims and noticing agent at www.veritaglobal.net/ZHI. The location of the Reorganized Debtors' service address in these chapter 11 cases is P.O. Box 240130, San Antonio, Texas 78224.

Zachry Holdings, Inc. and its affiliates in the above-captioned proceeding (collectively, the "**Reorganized Debtors**")[2] file this motion (this "**Motion**") seeking entry of an order substantially in the form attached hereto enforcing the Plan and Confirmation Order (defined herein) to stay the Nebraska Litigation (defined herein).

**Preliminary Statement**

1. A fundamental and essential component of chapter 11 is the centralized claim reconciliation process. This centralized process allows claims against a debtor or its property interest to be resolved in an orderly, efficient, and expeditious manner. The Court issued the Confirmation Order on February 27, 2025, approving the Debtors'[3] Plan which establishes this Court's exclusive jurisdiction to resolve all disputed proofs of claim filed against the Debtors. Specifically, Article XI of the Plan explicitly states that this Court "**shall have exclusive jurisdiction** to hear and determine **disputes concerning Claims** against or Interests in the Debtors that arose prior to the Effective Date" (emphasis added). The Plan further provides that all valid, allowed general unsecured claims will be paid in full.

2. Commonwealth Electric Company of the Midwest ("**Commonwealth**") filed a proof of claim against Debtor Zachry Industrial, Inc. ("**Zachry**") for $5,359,030.62 for alleged amounts owed under certain prepetition subcontractor agreements. Zachry subcontracted Commonwealth to perform installation and testing of various switchgear, circuits, panels, instruments, and power cables as part of Zachry's construction of two power generation facilities. However, the Debtors discovered that the work Commonwealth performed was not only defective

---

[2] The "**Effective Date**" of the Plan (defined herein) occurred on April 10, 2025, as described in the *Notice of (I) Entry of Order Approving the Debtors' Disclosure Statement on a Final Basis and Confirming the Further Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and its Debtor Affiliates and (II) Occurrence of the Effective Date* [Docket No. 2731].

[3] The "**Debtors**" refers to Zachry Holdings, Inc. and its affiliates in the above-captioned proceeding prior to the Effective Date of the Plan.

2

but also needed to be reworked to minimize the impact of Commonwealth's work on the project schedule. As a result, the Debtors timely filed an objection to Commonwealth's proof of claim in this Court, seeking to reduce the claim amount to account for amounts that Zachry spent resolving those issues in accordance with the subcontract agreements.

3. By filing its proof claim, Commonwealth agreed to the exclusive jurisdiction of this Court for the resolution of its claim. In the coming months, this Court will determine the exact value of Commonwealth's claim. This Court has already held a preliminary conference on Commonwealth's claim on April 1, 2025, and a status conference on the objection is set for April 30, 2025. Commonwealth is nonetheless continuing to pursue, in parallel, a recovery on the same **disputed** claim against the sureties in the United States District Court for the District of Nebraska (the "**Nebraska Litigation**"). However, Commonwealth does not have an independent right to do so; its claim against the sureties is derivative and contingent on whether and how much Commonwealth is able to recover from the Debtors. And that determination falls squarely within the purview of this Court and the claims process, which is ongoing in these chapter 11 cases. As such, the Nebraska Litigation is premature and duplicative of the issues pending before this Court. If both proceedings are allowed to continue in violation of the Plan and Confirmation Order, judicial and estate resources will be wasted, there will be a material risk of inconsistent or conflicting rulings on the same issues, and the Reorganized Debtors' efforts to implement the Plan will be stymied.

4. On March 26, 2025, the sureties moved to stay the Nebraska Litigation pending resolution of the claims process in this Court (without prejudice to Commonwealth's rights as against the sureties). Commonwealth opposed such relief. The stay motion remains pending before the Nebraska court. In the meantime, additional unnecessary legal costs related to the Nebraska Litigation—costs that will ultimately be borne by the Reorganized Debtors—continue to accrue.

Attempts by the Reorganized Debtors and sureties to resolve the dispute with Commonwealth without this Court's intervention failed. The Reorganized Debtors therefore filed this Motion on an emergency basis requesting that this Court (a) enforce its own exclusive jurisdiction over the disputed claim and (b) compel Commonwealth to comply with both the Plan and Confirmation Order and stay the Nebraska Litigation pending a resolution of its claim in this Court.

## Relief Requested

5.     The Reorganized Debtors seek entry of an order, substantially in the form attached hereto (a) enforcing Articles XI and VII.F of the Plan, (b) directing Commonwealth to comply with Article XI of the Plan and Confirmation Order and stay prosecution of the Nebraska Litigation pending resolution the Claim Objection (defined herein), and (c) granting related relief.

## Jurisdiction and Venue

6.     The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Reorganized Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     The predicates for the relief requested are section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rule 2002, rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

## Background

**I.     Chapter 11 Cases**

9.     On May 21, 2024 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the chapter 11 cases in this Court (the

"**Chapter 11 Cases**").

10. On February 27, 2025, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Further Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and its Debtor Affiliates* (the "**Confirmation Order**") [Docket No. 2431], which confirmed the *Further Modified First Amended Joint Chapter 11 Plan of Reorganization of Zachry Holdings, Inc. and its Debtor Affiliates* [Docket No. 2362] (the "**Plan**"). The Confirmation Order and the Plan provide that this Court shall retain jurisdiction over various enumerated matters arising out of or relating to the Chapter 11 Cases, the Confirmation Order, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code. *See* Confirmation Order ¶ 174; Plan, Art. XI. One such matter involves disputes concerning any Claim. *See* Plan, Art. XI (stating that this "Court shall have exclusive jurisdiction to hear and determine disputes" concerning claims against Zachry that arose prior to the Plan's Effective Date). Zachry's Plan also provides that allowed and unsubordinated general unsecured claims will be paid in full.

11. The Plan went effective on April 10, 2025. *See supra* n.3.

## II. Commonwealth's Claim

12. On September 21, 2021, Zachry entered into a contract with the Omaha Public Power District ("**OPPD**") to design and construct two electrical generation facilities near Omaha, Nebraska (the "**Projects**"). Zachry hired Commonwealth as a subcontractor to assist Zachry in the construction of both Projects pursuant to five subcontractor agreements (collectively, the "**Agreements**"). Commonwealth was to perform work such as installation and testing of various switchgear, circuits, panels, and instrument and power cables needed on the Projects, including associated hardware, junctions, penetration seals, conduit, cable trays, supports, and terminations. On May 15, 2024, Zachry terminated the Agreements at issue in Commonwealth's proof of claim.

5

13. On August 27, 2024, Commonwealth filed proof of claim number 1003 (the "**Claim**"), asserting a $5,359,030.62 (the "**Claim Amount**") unsecured claim of which $1,038,339.54 was alleged to be entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code. The Claim was for "[l]abor, materials, services, and supplies." *See* Proof of Claim No. 1003, at 2.

14. On February 20, 2025, the Debtors filed the *Debtors' Objection to the Claim of Commonwealth Electric Company of the Midwest (Claim No. 1003)* [Docket No. 2336] (the "**Claim Objection**"). The Claim Objection seeks to (a) offset approximately $2,651,982 of the Claim for costs Zachry incurred on account of Commonwealth's defective, incomplete, and unnecessarily duplicative work and (b) reclassify a portion of the administrative expense claim to account only for goods that were actually delivered within the 20-day period prior to the Petition Date, as required under section 503(b) of the Bankruptcy Code. Accordingly, the Reorganized Debtors are requesting that the Claim be reduced to the corrected amount of $2,707,048.62 and that only $110,275.93 of such amount be classified as an administrative expense claim.

15. On March 21, 2025, Commonwealth filed the *Commonwealth Electric Company of the Midwest's Response to Debtors' Objection to the Claim of Commonwealth Electric Company of the Midwest (Claim No. 1003)* [Docket No. 2602] (the "**Response**") asserting that Zachry could not "pursue the remedies of deducts for alleged defective or unfinished work" because Zachry terminated the Service Agreement "for its convenience" prior to the Petition Date.[4]

16. On April 1, 2025, the Court held a preliminary hearing on the Claim Objection, and a status conference has been set for April 30, 2025, regarding the Claim Objection. Zachry intends

---

[4] Commonwealth Electric also filed the *Commonwealth Electric Company of the Midwest's Supplemental Response to Debtors' Objection to the Claim of Commonwealth Electric Company of the Midwest (Claim No. 1003)* [Docket No. 2652] that was later withdrawn. *See Notice of Withdrawal Without Prejudice of Commonwealth Electric Company of the Midwest's Supplemental Response to Debtors' Objection to the Claim* [Docket No. 2689].

to pursue an expedited schedule to resolve the Claim Objection within a matter of months.

### III. The Nebraska Litigation

17. On August 23, 2024, Commonwealth commenced the Nebraska Litigation against Travelers Casualty and Surety Company ("**Travelers**") and Pacific Indemnity Company ("**Pacific**" and, together with Travelers, the "**Sureties**") to recover $5,359,030.62 – the same exact amount as the Claim. In the Nebraska Litigation, Commonwealth is seeking to have the Sureties pay the Claim Amount on grounds that Zachry allegedly failed to pay Commonwealth for work performed under the Agreements. The Sureties issued bonds to Zachry (the "**Bonds**") to guarantee its performance and payment obligations to OPPD in connection with the Projects. Under the Bonds, the Sureties must perform Zachry's obligations **if Zachry fails to do so**, and Zachry must reimburse the Sureties for doing so. It is a zero-loss proposition for the Sureties.

18. As a result of this tripartite relationship and the nature of the surety obligation, the Sureties filed a *Motion to Stay* the Nebraska Litigation on March 26, 2025, on grounds that, among other things, Commonwealth filed the Claim in this Court which is subject to an objection as to the correct allowed amount, and the Plan and Confirmation Order grants this Court exclusive jurisdiction to hear and resolve such objection. *See Commonwealth Electric Co. of the Midwest v. Travelers Casualty and Surety Co. et al.*, Civ. Action No. 24-cv-03149-SMB-JMD (D. Neb. Mar. 26, 2025) [Docket No. 31]. The Sureties agree (and Commonwealth does not dispute) that the Nebraska Litigation is duplicative of the ongoing claims reconciliation process as it relates to the Claims and Claim Amount even though Zachry is not a defendant.

19. Notwithstanding the clear language in the Plan and Confirmation Order, on April 9, 2025, Commonwealth objected to the motion to stay, filing the *Plaintiff Commonwealth Electric Company of the Midwest's Brief in Opposition to Defendants' Motion to Stay*. *See id*. [Docket No. 34]. Commonwealth did not address the waste of judicial and estate resources with parallel

litigations but instead argued, in part, that both the Sureties and Zachry are liable for the Claim and Claim Amount.  On April 18, 2025, the Sureties filed the *Travelers Casualty and Surety Company's and Pacific Indemnity Company's Reply Brief in Support of Their Motion to Stay* iterating, among other things, that joint liability does not negate the fact that there are two proceedings litigating the same issues and only one court – this Court – has exclusive jurisdiction to resolve the issues of how much is Commonwealth's Claim against Zachry.  *See id*. [Docket No. 40].  Thus, the Court should (a) enforce its own exclusive jurisdiction over the disputed claim and (b) compel Commonwealth to both comply with the Plan and Confirmation Order and stay the Nebraska Litigation pending a resolution of the Claim Objection in this Court.

## Basis for Relief

**I.     Article XI of the Plan Should Be Enforced to Stay the Nebraska Litigation.**

20.     It is axiomatic that a federal court has the power and jurisdiction to interpret and enforce its own orders.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (stating that a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders"); *Rodriguez v. EMC Mortg. Corp. (In re Rodriguez)*, No. 00-50657, 2001 U.S. App. LEXIS 30564, at *6 (5th Cir. Mar. 15, 2001) ("When an estate is in administration, a bankruptcy court retains jurisdiction to interpret and enforce its own orders to ensure their proper execution."); *see also In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379–80 (1994) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order.").

21.     Indeed, the Confirmation Order in this case explicitly provided this Court with continuing jurisdiction to enforce its implementation:

> The Court may properly, and upon the Effective Date shall, to the full

>extent set forth in the Plan, retain jurisdiction over all matters arising out of, and relating to, the Chapter 11 Cases, this Order, and the Plan, including the matters set forth in Article XII of the Plan and sections 105(a) and 1142 of the Bankruptcy Code.

Confirmation Order, at 86.

22.     Moreover, section 105(a) of the Bankruptcy Code also authorizes the Court to interpret and clarify its orders. *See Pompa v. Wells Fargo Home Mortg., Inc. (In re Pompa)*, No. 06-31759 (MI), 2012 Bankr. LEXIS 3051, at *13 (Bankr. S.D. Tex. June 29, 2012) (stating that a court has "the power granted by § 105(a) to enforce its own orders"); *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007) ("Section 105(a) gives bankruptcy courts broad authority to take actions necessary and appropriate for administering and enforcing the Bankruptcy Code and enforcing a court's orders."). Under this section, "[a] bankruptcy court may enjoin state court actions brought in contravention of its decrees." *In re Trump Taj Mahal Assocs.*, 156 B.R. 928, 942 (Bankr. D.N.J. 1993) (citing *In re Central R.R. of N.J.*, 38 B.R. 686, 690 (D.N.J.1983)); *see also In re Johns-Manville Corp.*, 97 B.R. 174, 181 (Bankr. S.D.N.Y. 1989) (stating that this section "confers authority on the bankruptcy court to enjoin actions in other courts that interfere with the reorganization of the debtor").

23.     Here, the Court should exercise its powers to give full force and effect to Article XI of the Plan that grants this Court exclusive jurisdiction to hear and determine disputes concerning prepetition claims for four reasons. *See* Plan, at 48. <u>First</u>, by filing the Claim, Commonwealth voluntarily submitted to this Court's exclusive jurisdiction to resolve the Claim Objection and that process is underway. The parties are set to meet with this Court again on April 30, 2025, to reiterate their intent on resolving the Objection as quickly as possible. Doing so is reasonable and appropriate under the circumstances considering that the issues concerning the validity of the Claim have already been laid out before the Court and the parties have already commenced discovery

scheduling. The Claim Objection will likely conclude prior to any resolution in the Nebraska Litigation, which commenced more than eight months ago.

24. Second, Commonwealth's complaint in the Nebraska Litigation seeks the same relief as its Claim pending in this Court, *i.e.*, payment of $5,359,030.62 for amounts allegedly due under the Agreements. However, Commonwealth does not have an independent right to pursue such relief against the Sureties. Its ability to obtain payment from the Sureties is derivative and contingent on whether Commonwealth has an allowed claim against Zachry that it has refused to pay. *See N. Bank v. Dowd*, 252 Neb. 352, 354 (Neb. 1997) ("Inherent in the existence of any surety relationship is the requirement that the principal owe some obligation. The liability of the surety for the debt to the holder of the obligation is no greater and no less than that of the principal."). In this Court, Zachry is not seeking to disallow the Claim in its entirety. Rather, it is seeking a determination as to the accurate value of the Claim based on the Agreements. Once decided, the allowed portion of the Claim will be paid in full in accordance with the Plan, leaving nothing for the Sureties to pay. But even if Commonwealth had an independent right to recover from the Sureties (it does not, and the Reorganized Debtors reserve all rights on that issue), Commonwealth does **not** have an allowed Claim against the Debtors for which the Sureties can provide redress.

25. Third, parallel proceedings pose a real risk of conflicting or inconsistent rulings and guarantee that judicial and limited estate resources will be wasted. The Sureties and Reorganized Debtors are raising the same arguments concerning the accuracy of the Claim Amount in both proceedings,[5] resulting in this Court and the Nebraska court having to decide the same issues and

---

[5] Under Nebraska law, the Sureties are entitled to assert Zachry's defenses, as principal under the Bonds, in the Nebraska Litigation. *See Phelps v. Dawson*, 97 F.2d 339, 341-42 (8th Cir. 1938) ("The rule of law which governs the liability of sureties upon bonds generally is that the surety is not liable unless the principal is and, therefore, may plead any defense available to the principal"); *In re Modern Textile, Inc.*, 900 F.2d 1184, 1188 (8th Cir. 1990) (quoting 10 W. Jaeger, Williston on Contracts § 1214, at 714 (3d e. 1967)). The defenses consist of the same

potentially ruling inconsistently. Judicial resources are also being wasted as Commonwealth continues to ignore this Court's exclusive jurisdiction and pursue the Nebraska Litigation, which will be mooted by payment in full of Commonwealth's Claim in this proceeding.[6] The potential for estate resources to be wasted (and depleted) is not theoretical; it is a real risk due to the nature of the surety relationship. The Sureties are continuing to incur costs in the Nebraska Litigation, including on needless fact and expert discovery. They have already accrued fees and expenses related to preparing expert reports, which are due May 14, 2025. Depositions will then have to be completed by June 27, 2025. As the Nebraska Litigation proceeds,[7] the Sureties costs will ultimately be incurred by the Reorganized Debtors. Such costs would be additive – not in lieu of – the costs that the Reorganized Debtors have incurred and will continue to incur while pursuing the Claim Objection in this Court.

26. <u>Fourth</u>, the Reorganized Debtors are not seeking a dismissal of the Nebraska Litigation with prejudice. They are merely requesting that an orderly and efficient process be followed to resolve issues currently pending in both Nebraska and in these cases. The proposed order, which seeks only to order Commonwealth to comply with the Plan and Confirmation Order and thus stay the Nebraska Litigation until the Claim Objection as to the Claim Amount is resolved, is without prejudice to any party's rights or defenses following such resolution. Thus,

---

arguments that Zachry has raised in its Claim Objection: Zachry incurred increased costs to finish and repair Commonwealth's incomplete and defective work at the Projects.

[6] The mere fact that Commonwealth is seeking to recoup from the Sureties interest, attorney's fees, and the cost of pursuing the Nebraska Litigation does not change this outcome. In fact, it further supports the need to order Commonwealth's compliance with the Confirmation Order and Plan. Under the Bond, the Sureties' liability cannot be any greater than that of Zachry and, in any case, is limited to the penal sum of the Bonds. But if the Sureties pay amounts in excess of what this Court decides is the allowed Claim Amount, the Sureties could seek to recoup the additional amounts from Zachry resulting in a windfall for Commonwealth. This is not only antithetical to fundamental bankruptcy principles but also violates the Confirmation Order and Plan.

[7] The Nebraska court has not yet ruled on the Sureties' motion to stay, and there is no guarantee that such motion will be granted.

11

Commonwealth will suffer no prejudice as a result of the relief requested in this Motion by Zachry.

## II. The Plan Precludes Commonwealth From Interfering With the Implementation of the Plan.

27. By opposing a stay of the Nebraska Litigation pending a determination by this Court on its Claim, Commonwealth is violating the terms of the Plan. Article VIII.F of the Plan provides as follows:

> Upon entry of the Confirmation Order, **all Holders of Claims** and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, **shall be enjoined from taking any actions to interfere with the implementation or Consummation of this** Plan in relation to any Claim or Interest that is extinguished, discharged, satisfied, or released pursuant to this Plan

(emphasis added).

28. The Nebraska Litigation interferes with the Reorganized Debtors' implementation of the Plan, which grants this Court exclusive jurisdiction to resolve the Claim Objection and requires payment of all general unsecured claims in full. These competing proceedings, and the duplicate costs associated therewith, directly interfere with this critical aspect of the Plan.

## Emergency Consideration

29. The Reorganized Debtors request emergency consideration of this Motion, consistent with the Scheduling Order. Commonwealth and the Sureties are currently conducting discovery in the Nebraska Litigation. If Commonwealth is not directed to comply with the Plan and Confirmation Order and thus stay the Nebraska Litigation as soon as practicable, the Reorganized Debtors will continue to incur unnecessary expense in the Nebraska Litigation.

## Conclusion

30. The Reorganized Debtors respectfully request that the Court enter the proposed order or a substantially similar order (a) enforcing Articles XI and VII.F of the Plan, (b) directing

Commonwealth to comply with Article XI of the Plan and Confirmation Order and stay prosecution of the Nebraska Litigation pending resolution the Claim Objection, and (c) granting such other and further relief as the Court deems appropriate.

## Notice

31.    The Reorganized Debtors will provide notice of this Motion to (a) the United States Trustee for the Southern District of Texas, (b) Commonwealth, (c) the United States Attorney's Office for the Southern District of Texas, (d) the state attorneys general for the states in which the Reorganized Debtors operate, (e) the Internal Revenue Service, and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice need be provided in light of the nature of the relief requested.

Dated: April 30, 2025
Houston, Texas

        */s/ Charles R. Koster*
**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
Bojan Guzina (admitted *pro hac vice*)
Andrew O'Neill (admitted *pro hac vice*)
Michael Andolina (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: jason.zakia@whitecase.com
       bojan.guzina@whitecase.com
       aoneill@whitecase.com
       mandolina@whitecase.com

Laura J. Garr (admitted *pro hac vice)*
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: lgarr@whitecase.com

*Counsel to the Reorganized Debtors*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ *Charles R. Koster*
Charles R. Koster

**Certificate of Service**

I certify that on April 30, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles R. Koster*
Charles R. Koster