**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ZACHRY HOLDINGS, INC., *et al.*[1] | ) | CASE NO. 24-90377 (MI) |
| | ) | |
| DEBTORS | ) | CHAPTER 11 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

**COMMONWEALTH ELECTRIC COMPANY OF THE MIDWEST'S MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO DEBTORS' OBJECTION TO THE
CLAIM OF COMMONWEALTH ELECTRIC COMPANY OF THE MIDWEST**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

---

[1] The last four digits of Zachry Holdings, Inc.' tax identification number are 6814. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal identification numbers may be obtained on the website of the Debtors' proposed claims agent and noticing agent at www.veritaglocal.net/ZHI. The location of the Debtors' service address in these chapter 11 cases is: P.O. Box 240130, San Antonio, Texas 78224.

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................ 1

**FACTUAL BACKGROUND** .................................................................................... 2

**STANDARD OF REVIEW** ...................................................................................... 4

**ARGUMENT** ............................................................................................................ 5

    **I.**     **Zachry Is Not Entitled to Setoff or Reduce Its Obligation to CECM under the Service Agreement that it Terminated**................5

          **A.**    **The Service Agreement Does Not Permit Zachry to "Backcharge" or "Withhold Payment" from CECM Following a Termination** ...............................................6

          **B.**    **Zachry Cannot Claim Setoff Because It Terminated the Contract for Convenience** ........................................11

    **II.**    **CECM Was Entitled to a Right to Cure at Common Law**............14

    **III.**   **Zachry's Failure to Timely Notify CECM of the Alleged Issues Has Also Prejudiced CECM in this Contested Matter** .....................17

**CONCLUSION** ....................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*A.J. Temple Marble & Tile, Inc. v. Long Island R.R.*, 659 N.Y.S. 2d 412 (N.Y. Sup. Ct. 1997), *aff'd* 256 A.D.2d 526 (N.Y. App. Div. 1998) ................................................................. 12

*A-1 Track & Tennis, Inc. v. Asphalt Maint., Inc.*, No. A-99-433, 2000 WL 781371, at *5 (Neb. Ct. App. 2000) ....................................................................................................................... 17

*Adobe Land Corp. v. Griffin, L.L.C.,* 236 S.W.3d 351 (Tex. App. 2007) ..................................... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 4

*Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988) .......................................................... 7

*Big River Const. Co. v. L & H Props., Inc.*, 268 Neb. 207, 681 N.W.2d 751 (2004) ..................... 7

*Blaine Econ. Dev. Auth'y v. Royal Elec. Co.*, 20 N.W.2d 473 (Minn. Ct. App. 1994) ................ 16

*Bluebonnet Hotel Ventures, L.L.C.*, 754 F.3d 272 (5th Cir. 2014) (quoting *Celotex Corp*, 477 U.S. at 322) ........................................................................................................................ 5

*Borley Storage & Transfer Co., Inc. v. Whitted*, 271 Neb. 84, 710 N.W.2d 71 (2006) ................ 17

*Bruning Seeding Co. v. McArdle Grading Co.*, 232 Neb. 181, 439 N.W.2d 789 (1989) ........ 15, 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 5

*Centerplan Constr. Co. v. City of Hartford*, 274 A.3d 51 (Conn. 2022) ...................................... 16

*City of Sidney v. Mun. Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018) ............ 6, 7

*Clark v. Randalls Food*, 317 S.W.3d 351 (Tex. App. 2010) *citing Trevino v. Ortega*, 969 S.W.2d 950 (Tex. 1998) ...................................................................................................................... 18

*Conway Constr. Co. v. City of Puyallup*, 490 P.3d 221 (Wash. 2021) ........................................ 16

*Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746 (1995) .................................... 6

*Freedom Specialty Contracting Inc. v. Nichol Flats, LLC*, 28 Neb.App. 797, 950 N.W.2d 109 (2020) ............................................................................................................... 12, 13, 14

*Harmon Cable Comms. of Neb. Ltd. P'ship v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (Neb. 1991) ......................................................................................................... 17

*Home Instead, Inc. v. Florance*, 721 F.3d 494 (8th Cir. 2013) ................................................ 6, 7

*In re Papercraft,* 127 B.R. 346 (Bankr.W.D.Pa.1991) ................................................................ 6

*In re PSA, Inc.,* 277 B.R. 51 (Bankr.D.Del.2002) ....................................................................... 6

*Lyons v. Lamb County*, 275 F.3d 43 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 377 U.S. 316, 324 (1986)) .................................................................................................................... 5

*Magnum Constr. Mgmt. Corp. v. City of Miami Beach*, 209 So.3d 51 (Fla. Dist. Ct. App. 2016) 16

*McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194 (Tenn. Ct. App. 1990) ........................ 16, 17

*Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557 (5th Cir. 1997) ........................... 5

*Miner Dederick Const., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 466 (Tex. App. 2013) (*citing Trevino*, 969 S.W.2d at 957 ...................................................................... 18

*Nathan v. McDermott*, 306 Neb. 216, 945 N.W.2d 92 (2020) ....................................................... 6

*Paragon Restoration Grp., Inc. v. Cambridge Square Condos.*, 42 A.D.3d 905 (N.Y. App. Div. 2007) ........................................................................................................................................ 11

*QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439 (5th Cir. 2009) ................................. 4, 5

*Shelter Prods., Inc. v. Steelwood Constr., Inc.*, 307 P.3d 449 (Or. Ct. App. 2013) ................ 11, 12

*Simmons v. Savell* (In re Simmons), 765 F.2d 547 (5th Cir.1985) ................................................ 4

ii

*Tennessee Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141, at
*20 (Tex. App. Aug. 21, 2008)................................................................................................ 15

*Tishman Constr. Corp. v. City of New York*¸ 228 A.D.2d 292 (N.Y. App. Div. 1996).................. 12

*Trevino v. Ortega*, 969 S.W.2d 950 (Tex. 1998) .......................................................................... 18

**Statutes**

11 U.S.C. § 558 ............................................................................................................................... 6

**Rules**

Fed. R. Bankr.P. 3007, Advisory Committee Note (1983)............................................................. 4

Fed. R. Bankr.P. 9014(a) ................................................................................................................. 4

Fed. R. Bankr.P. 9014(c) ................................................................................................................. 4

Fed. R. Civ. P. 56(a) ....................................................................................................................... 4

Pursuant to Bankruptcy Rules 9014(c) and 7056, and Federal Rule of Civil Procedure 56, Commonwealth Electric Company of the Midwest ("CECM") hereby moves for Summary Judgment as to the affirmative defenses and claims for offset raised by Debtors in the Objection to the Claim of Commonwealth Electric Company of the Midwest (Claim No. 1003) (Doc. 233610) (the "Objection"). As explained below, Zachry is precluded as a matter of law, from claiming an offset under the Service Agreement to reduce the amount owed to CECM, and the Objection should be denied.

<u>**PRELIMINARY STATEMENT**</u>

Zachry Industrial Inc. ("Zachry") contracted with Omaha Public Power District ("OPPD") to design and build two electric power generation facilities in Omaha, Nebraska: the Standing Bear Lake Project and the Turtle Creek Project. Zachry hired CECM as a subcontractor to perform portions of the electrical work on these two projects, under five separate subcontracts. CECM has filed a proof of claim (Claim No. 1003) in this Bankruptcy, seeking payment of $5,359,030.62 for work CECM performed under the five subcontracts before Zachry filed for Bankruptcy.[2]

The Objection filed by Debtors seeks to reduce CECM's claim with respect to work that CECM performed on the largest of the five subcontracts: (Service Agreement #115001-605028 or referred to by Zachry as the "**Service Agreement**"). Specifically, Debtors claim they are entitled to an offset for additional costs Zachry allegedly incurred to "complete, repair, replace, correct and rework CECM's incomplete and defective work" under the Service Agreement. The Objection to reduce CECM's claim <u>only</u> relates to CECM's work pursuant to the Service Agreement.

---

[2] CECM reserves all of its rights as to pursuit of post-petition amounts owed to CECM by the Debtors, including the principal amount owed of $219,907.00 for post-petition services and materials provided at the request of the Debtors.

CECM disputes that it performed defective or incomplete work under the Service Agreement, and it is prepared to present evidence in defense of these claims in an evidentiary hearing if necessary.  However, there is no genuine dispute as to the following material facts: (1) Zachry terminated the Services Agreement for convenience under section 16.2, preventing CECM from completing any of its work in progress; (2) Zachry did not provide notice to CECM of any alleged defective work; and (3) Zachry did not give CECM an opportunity to inspect and correct any alleged defective work following Zachry's termination of the Service Agreement for convenience.

The provisions of the Service Agreement relied on by Zachry in its Objection did not survive Zachry's termination of the Service Agreement.  Further, _even if_ Zachry had not terminated the Service Agreement — a fact which is undisputed — Zachry failed to give CECM written notice of any alleged defects and an opportunity to cure such alleged defects, both express requirements of the Service Agreement.  For these reasons, as a matter of law, the Service Agreement does not permit Zachry to allege an offset or reduction for alleged defective or incomplete work. Accordingly, the Court should dismiss Debtors' Claim Objection because Zachry is precluded from asserting an offset to reduce the amount owed to CECM under the Service Agreement.

## FACTUAL BACKGROUND

The following undisputed facts establish that CECM is entitled to summary judgment on the contested matter of Debtors' Objection to the claim of CECM as a matter of law.

1.      Zachry hired CECM as a supplemental subcontractor to perform electrical work for Zachry on a time and material basis on the Standing Bear Lake Project. (Ex. A, Thornton Decl. at ¶ 6-8).

2.      Pursuant to the Service Agreement, CECM was to supply a supplemental labor force to perform electrical work on site along with Zachry's crews and other electrical subcontractors, under Zachry's supervision and at Zachry's direction. (*Id*. at ¶ 10-12).

3.      From November 2023 until May 2024, CECM performed work on the Standing Bear Lake Project at Zachry's direction. Zachry issued payments to CECM for the labor and material invoices CECM submitted through February 2024 as required by the Service Agreement.

4.      Zachry did not pay the March 2024 invoice and subsequently failed to pay the April and May 2024 invoices submitted by CECM. (*Id*. at ¶ 18).

5.      Zachry did not issue a notice to CECM that it was withholding payment under section 10.1.3 of the Service Agreement for "defective work not remedied by Seller." (*Id*. at ¶ 28; Ex. 1, Service Agreement, at § 10.1.3; Ex. B, Decl. Deats, at ¶ 18).

6.      Zachry did not issue a notice to CECM that it would be pursuing "backcharges" under article 11.9 of the Service Agreement.  (Ex. A, at ¶ 40; Ex. 1, at § 11.9; Ex. B, at ¶ 13-18).

7.      In fact, Zachry did not send any written notice to CECM that it contended CECM had performed defective work under the Service Agreement, nor did Zachry request that CECM remedy any alleged defective work under the Service Agreement. (Ex. B, Decl. Deats, at ¶ 13, 14, 16-18; Ex. A, at ¶ 13).

8.      Instead, on April 11, 2024, Zachry executed a Change Order to increase the "NOT TO EXCEED" amount of the Service Agreement by $5,000,000, bringing the total "NOT TO EXCEED" amount of this time and materials subcontract to $10,000,000. The Change Order also extended CECM's time of performance from March 1, 2024, to June 30, 2024. (Ex. A, at ¶ 13-14; Ex. 2, Change Order No. 1).

9.      On May 15, 2024, Zachry terminated the Service Agreement for convenience pursuant to section 16.2 of the Service Agreement. (Ex. 3).

10.     Less than a week later, Zachry voluntarily filed this Chapter 11 Bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Texas. (Doc. 1).

11.     Zachry has not alleged that CECM performed any incomplete or defective work on any of the other four subcontracts, and notably, Zachry continued to have CECM perform work under the smaller four subcontracts even after Zachry terminated the Service Agreement for convenience and commenced this bankruptcy.[3]  (Ex. A, at ¶ 22-24).

## **STANDARD OF REVIEW**

12.     Rule 56(a) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 9014(c) and 7056,[4] provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

13.     "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex Corp. v. Catrett*, 477 U.S.

---

[3] CECM has not been paid for the work it performed under the other four subcontracts after the Bankruptcy petition was filed and CECM reserves all of its rights as to pursuit of post-petition amounts owed to CECM by the Debtors, including the principal amount owed of $219,907.00 for post-petition services and materials provided at the request of the Debtors.

[4] An objection to a proof of claim that falls under § 502(b) creates a contested matter. *Simmons v. Savell* (In re Simmons), 765 F.2d 547, 552 (5th Cir.1985); Fed. R. Bankr.P. 3007, Advisory Committee Note (1983). Contested matters are governed by Rule 9014. Fed. R. Bankr.P. 9014(a). Rule 9014(c) triggers the application of certain rules, including Rule 7056, "unless the court directs otherwise." Fed. R. Bankr.P. 9014(c).

317, 323 (1986).  "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324. Summary judgment is appropriate if the non-movant cannot present facts sufficient to establish "'the existence of an element essential to that party's case.'"  *Bluebonnet Hotel Ventures, L.L.C.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex Corp*, 477 U.S. at 322).

14.     The Court "must view the evidence in the light most favorable to the non-moving party." *QBE Ins. Corp*, 591 F.3d at 442.  However, the nonmoving party must "do more than simply allege a material issue of fact[,]" and instead must "'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'"  *Lyons v. Lamb County*, 275 F.3d 43, 43 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 377 U.S. 316, 324 (1986)).  If the proffered evidence does not have probative value as to a genuine issue, summary judgment is appropriate. *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

## ARGUMENT

15.     In the Claim Objection, Zachry argues that it is entitled to the affirmative defense of setoff or recoupment. (Doc. 2336 ¶ 20). Specifically, Zachry claims that pursuant to Art 11.9, and 10.1.3 of the Service Agreement, "the Court should reduce the Claim because [CECM] performed incomplete, defective, and/or unnecessary duplicative work not in accordance with the Service Agreement." (Doc. 2336 ¶ 22). These contractual provisions did not survive termination of the Service Agreement, but even if they did, Zachry failed to provide the required written notice to invoke these provisions under the Service Agreement.

### I.      Zachry Is Not Entitled to Setoff or Reduce Its Obligation to CECM under the Service Agreement that it Terminated

16.     Pursuant to 11 U.S.C. § 558, the Debtors are entitled to assert any defenses Zachry would have had prepetition. *In re PSA, Inc.,* 277 B.R. 51 (Bankr.D.Del.2002) (holding that debtor, under § 558, was entitled to exercise state law right of setoff); *In re Papercraft,* 127 B.R. 346 (Bankr.W.D.Pa.1991) (finding that either setoff or recoupment is available as a defense under § 558 and, if established, results in netting out of what each party owes the other).

17.     Whether couched as setoff or recoupment, Zachry bears the burden of establishing it is entitled to reduce its payment obligation to CECM under the Service Agreement. *Davis Erection Co. v. Jorgensen,* 248 Neb. 297, 534 N.W.2d 746 (1995) (the party who pleads a setoff bears the burden of proving it); *Nathan v. McDermott,* 306 Neb. 216, 236, 945 N.W.2d 92, 108 (2020) (upholding trial court's grant of summary judgment on the affirmative defense of recoupment, when the defendants failed to meet their burden of proof).

18.     Here, Zachry cannot, as a matter of law, establish a right to setoff under the terms of the Service Agreement because (1) Zachry terminated the Services Agreement for convenience under section 16.2, preventing CECM from completing any of its work in progress; (2) Zachry did not provide notice to CECM of any alleged defective work; and (3) Zachry did not give CECM an opportunity to inspect and correct any alleged defective work following Zachry's termination of the Service Agreement for convenience.

## A. The Service Agreement Does Not Permit Zachry to "Backcharge" or "Withhold Payment" from CECM Following a Termination

19.     The Service Agreement is governed by Nebraska law. (Ex. 1, section 20.4). Under Nebraska law, "a court faced with a question of contract interpretation must first determine whether the contract is ambiguous." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 498 (8th Cir. 2013); *accord City of Sidney v. Mun. Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826, 843 (2018). "[T]he determination of whether a contract is ambiguous is a threshold issue for the court to decide.

*Big River Const. Co. v. L & H Props., Inc.*, 268 Neb. 207, 681 N.W.2d 751, 756 (2004). A court determines whether ambiguity exists on an objective basis, reviewing the contract as a whole. *See Home Instead*, 721 F.3d at 498; *accord Big River*, 681 N.W.2d at 756 ("A contract must be construed as a whole, and, if possible, effect must be given to every part thereof.").

20.     "'A written contract which is expressed in clear and unambiguous language is not subject to interpretation or construction,' and a court simply must give effect to that language." *Home Instead*, 721 F.3d at 498; *accord City of Sidney*, 917 N.W.2d at 843. "[T]here is a strong presumption that a written instrument correctly expresses the intention of the parties" and "parties are bound by the terms of the contract even though their intent may be different from that expressed in the agreement." *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535, 539 (1988).

21.     Here, the terms of the parties' agreement are clear.  As a time and materials subcontract, CECM's scope of work was to "furnish qualified, experienced, and competent personnel and management knowledgeable and trained to perform electrical installation and other required electrical services as needed on a Time and Materials basis per Zachry design and/or as directed by Zachry management." (Ex. 1, p. 25, at § [1].2.4).

22.     CECM was to "be paid for actual Work performed, as authorized by Zachry's project management and measured in the field by his duly authorized representative, however no such authorization shall be effective if the amount exceeds the NOT TO EXCEED amount, unless Seller first obtains an approved Change Order, in accordance with Article 11." (Ex. 1, p. 7, at Art. 2 ¶ 2).[5]

---

[5] Originally, the NOT TO EXCEED amount of Service Agreement was $5,000,000. (Ex. 1, at p. 6, at Art. 2 ¶ 1). On April 11, 2024, Zachry executed a Change Order increasing the NOT TO EXCEED amount of Service Agreement to $10,000,000.00. (Ex. 2).

23.     The Service Agreement distinguishes between terminations for cause and convenience, each with separate rights and remedies. (See Ex. 1, sections 16.1 and 16.2). Termination for cause expressly requires that Zachry first provide notice to CECM of any alleged issues, and then allow CECM an opportunity to cure such issues within 7 days, before Zachry may terminate CECM for cause and then pursue "any other right or remedies available under the Service Agreement." (Ex. 1, at § 16.1).

24.     On the other hand, termination for convenience allows Zachry to terminate CECM with only 2 business days notice, and once notice of termination is given, CECM is required to "terminate the Work as instructed by Zachry." (Ex. 1, at § 16.2).  Pursuant to Article 16.2, the remedy to CECM for termination for convenience is that: "Zachry shall pay to [CECM], in full satisfaction and discharge of all liabilities and obligations owed to [CECM] with respect to the Work so terminated, an amount equal to the sum of:

> a.   All amounts due pursuant to this Agreement up to the termination date; and
>
> b.   All [CECM]'s actual, verifiable reasonable and necessary costs of such termination (including any costs reasonably incurred by [CECM] in performing services under this Article 16.2), but not any amounts for unabsorbed overhead, anticipated profits or lost opportunity, nor shall liability for termination expenses exceed the remaining unpaid Agreement Price." (Ex. 1, section 16.2).

25.     Neither section 11.9 or 10.1.3 permit Zachry to reduce its obligations to CECM following a termination for convenience under section 16.2.  Moreover, Zachry did not provide timely notice to CECM of its intent to invoke these provisions. Zachry's Objection to CECM's Claim should be overruled.

26.     Debtors first argue that Article 11.9 allowed Zachry to perform work on CECM behalf and charge the labor back to CECM.  This "backcharge" provision requires Zachry to give CECM written notice[6] before performing work on CECM's behalf, regardless of whether the "work performed be in contention or agreed." (Ex. 1, section 11.9).

27.     Further, and more importantly, Article 11 **does not survive termination of the Service Agreement**. The Service Agreement specifically identifies which provisions survive termination or expiration of the Agreement, including for example, the provisions governing the parties' rights and obligations with respect to indemnity, insurance, warranty, confidentiality, and termination. (Ex. 1, section 20.11).  Article 11 does not survive.  All of the alleged defective and incomplete work and related "backcharge" costs were asserted by Zachry *after* Zachry terminated the Service Agreement for convenience.[7]

28.     Similarly, Debtors' dependence on section 10.1.3 of the Service Agreement, which identifies Zachry's right to withhold payments from CECM if CECM is in default of its contractual obligations, is misplaced.

29.     Section 10.1.3 only permits Zachry to withhold payment "on an invoice or a portion thereof in an amount and to such extent as may be reasonably necessary to protect Zachry from loss because of… Defective Work not remedied by Seller…" This provision clearly contemplates that Zachry's right to withhold payment is limited to the amount that may be necessary to address defective work performed by CECM, but only in the event that CECM fails to remedy the alleged

---

[6] The Service Agreement specifically defines what it means to give "Notice" or "Notify" a Party pursuant to the Agreement. (See Ex. 1, section 20.1, and *Definitions* at p.5).  This section requires that Notice be in writing, signed by the Party giving such notice, and delivered by email or mail to a designated Party representative. Here, there is no evidence that notice was provided in conformance with the Service Agreement.

[7] The alleged date that work was performed by Zachry and ICS was from May 30, 2024, until December 6, 2024. (Doc. 2339, Doc. 2339-1, 2339-2, 2339-3, 2339-4).  The "backcharge notifications" are dated October 10, 2024, through January 31, 2025, but the "backcharge notifications" were not actually provided to CECM until February 20, 2025, in the Bankruptcy Proceeding. (*Id.*).

defective work. Again, the Service Agreement contemplates that CECM will have notice and an opportunity to remedy or cure any alleged issues with its work before Zachry is entitled to backcharge or reduce CECM's right to payment under the Service Agreement.

30.     This interpretation is also supported by the language in the last two paragraphs of Article 10, whereby Zachry was required "should [it] dispute any particular invoice(s) rendered or amount(s) paid," to "so Notify [CECM] in writing within ten (10) days receipt of the same. Zachry will pay Seller on the undisputed balance where such amounts are clearly separable from disputed amounts." (Ex 1, p.14). Nor was Zachry required to make payment to Seller "after ten (10) days written notice to Seller when… Seller is in material breach of this Agreement and Seller has not commenced to cure the same…" (*Id.*)

31.     Before Zachry terminated the Service Agreement on May 15, 2024, it never provided CECM with written notice that it was withholding payment under Article 10 of the Service Agreement due to alleged defective work, or for any other reason.

32.     Further, as one might expect, Article 10 of the Service Agreement ***does not survive termination of the Service Agreement***.  Once Zachry terminated the Service Agreement for Convenience, it was not entitled to unilaterally withhold payment from CECM under section 10.1.3.

33.     In contrast to sections 10.1.3 and 11.9, section 12.2 — the provision that governs warranties — does survive termination of the agreement. (See Ex.1, sections 20.11 and 12.2). However, section 12.2 also requires Zachry to notify CECM of any defective work discovered, and "afford [CECM] the opportunity to redesign, repair, or replace the Defective Work within the required time." (Ex. 1, section 12.2.1). Zachry is only allowed to redesign, repair, or replace the Defective Work at CECM's expense, *if* such notice and opportunity to correct the Defective Work

10

is provided first. As there is no genuine issue of material fact that Zachry terminated the contract for convenience, its attempt to assert a "backcharge" or "withhold payment" following the termination for convenience must fail as a matter of law, and summary judgment is appropriate.

### B. Zachry Cannot Claim Setoff Because It Terminated the Contract for Convenience

34.     When Zachry unilaterally made the decision to terminate the Service Agreement for convenience, it relinquished its right to setoff under the Service Agreement. Courts have consistently recognized that a termination for convenience precludes the terminating party from later asserting claims for defects or additional costs, as the terminated party is deprived of the opportunity to inspect and cure any alleged deficiencies, a right typically permitted in terminations for cause. *Shelter Prods., Inc. v. Steelwood Constr., Inc.*, 307 P.3d 449, 461 (Or. Ct. App. 2013). *See also Paragon Restoration Grp., Inc. v. Cambridge Square Condos.*, 42 A.D.3d 905, 906 (N.Y. App. Div. 2007) (defendant-owner's counterclaim should have been dismissed against plaintiff to the extent that it sought an offset for the costs of completing the project because, "[w]here [defendant] elects to terminate for convenience ..., whether with or without cause, it cannot counterclaim for the cost of curing any alleged default").

35.     Indeed, a termination for convenience, when invoked, enables the terminating party to limit the liability it would otherwise face for "a termination action that would otherwise constitute a breach of contract." *A.J. Temple Marble & Tile, Inc. v. Long Island R.R.*, 659 N.Y.S. 2d 412, 414 (N.Y. Sup. Ct. 1997), *aff'd* 256 A.D.2d 526 (N.Y. App. Div. 1998).

36.     When a contract provides for both termination for default and convenience, the terminating party must elect to terminate for default, to preserve any future claims for damages from default. *See Tishman Constr. Corp. v. City of New York¸* 228 A.D.2d 292, 293 (N.Y. App. Div. 1996). General language indicating that a termination does not prejudice the terminating party's

other rights or remedies is insufficient to preserve future claims for damages from default. *Shelter Prods., Inc.*, 307 P.3d at 459.

37.     Nor can a party terminate for convenience and attempt to later treat the termination as one for cause because the termination for cause process was "simply too complex" or otherwise inconvenient. *Tishman Constr. Corp.*, 228 A.D.2d at 293. This is because, enabling a terminating party to invoke termination for convenience and later sue for default or raise an offset permits the terminating party to "pursue two inconsistent paths simultaneously: both terminating the agreement for convenience *and* seeking damages against [the terminated party] as it had terminated for cause and given [the terminated party] an opportunity to cure." *Shelter Prods., Inc.*, 307 P.3d at 459 (emphasis in original).

38.     The Nebraska Court of Appeals has recognized the difference between termination for convenience and termination for cause. In *Freedom Specialty Contracting Inc. v. Nichol Flats, LLC*, a construction contractor sought to recover for breach of contract from the project owner for a wrongful termination. *Freedom Specialty Contracting Inc. v. Nichol Flats, LLC*, 28 Neb.App. 797, 950 N.W.2d 109 (2020). The owner counterclaimed for breach of contract. *Id.*

39.     The owner claimed that the parties' oral agreement for the contractor to follow a compressed schedule, as opposed to the schedule contained in the written contract, was an enforceable modification of the written contract. *See id.* at 811, 950 N.W.2d at 119. After the contractor failed to meet the schedule as defined by their verbal agreement, the owner had terminated the contractor for cause. *Id.* at 807, 950 N.W.2d at 117. The trial court found the owner had wrongfully terminated the contractor, and the contractor was entitled to damages. *Id.* at 809–10, 950 N.W.2d at 118. The Nebraska Court of Appeals reviewed the lower court's decision de novo. *Id.* at 810, 950 N.W.2d at 119.

40.     On appeal, the court first agreed that the contractor was not in breach of its schedule obligations and determined that the owner had wrongfully terminated the contract without cause. *Id.* at 813–16, 950 N.W.2d at 120–22. However, the owner asked the appellate court to find that its termination was not wrongful, because it was a termination for convenience, not cause. *Id.* at 816, 950 N.W.2d at 122. The court rejected this assertion for two reasons. First, the termination of convenience clause still required the owner to provide written notice and pay the contractor for payment for work executed, which the owner had not done. *Id.* Second, the court found the owner "made clear its intention . . . to terminate [the contractor] for cause." *Id.* at 816, 950 N.W.2d at 122–23.

41.     Although the owner did not explicitly say in its termination notice that it was terminating for cause, the court found the remedy that the owner elected and referenced in its termination notice showed the owner's intent to elect to terminate for cause. *Id.* at 816–17, 950 N.W.2d at 122–23. Specifically, in its notice of termination, the owner apprised the contractor that it would supplement the contractor's work and hold it liable for additional costs – both remedies for offsets. *Id.* The court found these remedies to be "precisely the type[s] of remedy provided for under [the termination for cause clause,]" and, therefore, indicative of the owner's intent to terminate for cause, not convenience. *See id.* In other words, even when the termination notice is silent, the owner's selection of remedy at the time of termination is determinative in distinguishing a termination for cause from one for convenience.

42.     The *Freedom Specialty Contracting* decision supports the principle that a termination for convenience is not interchangeable with a termination for cause: the remedies and respective rights of the parties following a termination for convenience are limited, because the

13

terminated party has no opportunity to contest the termination. The remedy of offset is reserved for terminations for cause, not terminations for convenience.

43.     Here, Zachry's termination notice was clear. There is no dispute that Zachry made the unilateral decision to terminate CECM for convenience. Zachry specifically cited section 16.2 of the parties' agreement, titled the letter "Notice of Termination for Convenience," and specified within the body of the letter, that "you are hereby notified that Zachry hereby terminates this Agreement for its convenience." (Ex. 3).

44.     When Zachry terminated CECM for convenience, it did not identify or reference any events of default under section 16.1.2 of the Service Agreement.  Nor did Zachry request that CECM "commence to cure" any alleged deficiencies at the time of termination for convenience or after the subcontract was terminated. Instead, Zachry invoked its right to unilaterally terminate for convenience, and directed CECM to demobilize and submit an invoice for all of CECM's work on the Project through May 17, and to fully turn over the site to Zachry by May 20, 2024.

45.     Because Zachry elected to terminate the Service Agreement for convenience, Zachry is estopped from now asserting, almost a year later, that CECM was in default when Zachry terminated the agreement in May of 2024. Enabling Zachry to unilaterally terminate CECM's contract for convenience and also seek damages as if it had terminated for default and provided CECM with the requisite notice and opportunity to cure such default, would constitute a bait-and-switch. When Zachry terminated for convenience, CECM was given no opportunity to finish its work or cure any alleged deficiencies. Zachry cannot now claim there were deficiencies in CECM's unfinished work when it halted CECM's performance and ordered CECM to demobilize from the Project.

## II.     CECM Was Entitled to a Right to Cure at Common Law

46.     CECM had a contractual right to cure any work that Zachry alleged was deficient. As discussed previously, the Service Agreement contains multiple provisions that entitled CECM to notice and opportunity to cure any alleged issues with its work. Even article 16.1.2, which provides the process for termination for default, entitles CECM to a seven-day cure period following notice before Zachry can terminate the contract for cause. These contractual cure notice requirements are judicially enforceable. *See, e.g.*, *Bruning Seeding Co. v. McArdle Grading Co.*, 232 Neb. 181, 185, 439 N.W.2d 789, 791 (1989); *Tennessee Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141, at *20 (Tex. App. Aug. 21, 2008) (pipeline owner failed to give written notice to contractor of alleged defective workmanship and opportunity to remedy same, thus, it failed to avail itself of remedy under contract for defective workmanship).

47.     However, setting aside the express notice and cure rights in the Service Agreement, CECM was also entitled to notice and the right to cure any deficiencies at common law. Every contract contains an implied right to cure. *Centerplan Constr. Co. v. City of Hartford*, 274 A.3d 51, 78 (Conn. 2022) ("Under our common law, when a contract is silent as to notice and cure rights, the right to cure is implied in every contract as a matter of law unless expressly waived."). *Accord, e.g.*, *McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990).

48.     This right entitles the defaulting party both to notice of the specific default and an opportunity to cure such default. *Centerplan Constr. Co.*, 274 A.3d at 412. Notice requires apprising the breaching of party of the specific deficiencies in performance warranting termination, and the notice should allow a reasonable amount of time for the breaching party to cure. *Id; Blaine Econ. Dev. Auth'y v. Royal Elec. Co.*, 20 N.W.2d 473, 477 (Minn. Ct. App. 1994).

49.     Failure to give the defaulting party reasonable notice and an opportunity to cure renders a termination for default wrongful. *See id.* (notice that did not sufficiently apprise other

party of inadequate performance and requirement to cure rendered termination wrongful); *see also Bruning Seeding Co.*, 232 Neb. 181, 185–86, 439 N.W.2d 789, 791–92 (Neb. 1989) (finding general contractor's failure to comply with notice requirements to be a breach of contract).

50.     A party who has wrongfully terminated a contract by failing to give notice and an opportunity to cure may not claim an offset for defective work discovered after the wrongful termination. *See Conway Constr. Co. v. City of Puyallup*, 490 P.3d 221, 227–28 (Wash. 2021) (en banc); *Magnum Constr. Mgmt. Corp. v. City of Miami Beach*, 209 So.3d 51, 55 (Fla. Dist. Ct. App. 2016)

51.     Further, under the doctrine of avoidable consequences, a terminating party seeking damages has a duty to mitigate damages and avoid economic waste. *Borley Storage & Transfer Co., Inc. v. Whitted*, 271 Neb. 84, 95, 710 N.W.2d 71, 80 (2006); *A-1 Track & Tennis, Inc. v. Asphalt Maint., Inc.*, No. A-99-433, 2000 WL 781371, at *5 (Neb. Ct. App. 2000). Although an injured party may seek damages for repairing defective work, it cannot seek recompense for the cost of repairs that exceed their value. *A-1 Track & Tennis, Inc.*, 2000 WL 781371, at *5. A party's failure to mitigate damages generally precludes damages that could have been mitigated or avoided. *Harmon Cable Comms. of Neb. Ltd. P'ship v. Scope Cable Television*, 237 Neb. 871, 889–90, 468 N.W.2d 350, 363 (Neb. 1991).

52.     A terminating party can mitigate damages and avoid economic waste by granting the defaulting party an opportunity to cure. *See McClain*, 806 S.W.2d at 198. Cure notice is "designed to allow the defaulting party to repair the defective work, to reduce the damages, to avoid additional defective performance, and to promote the informal settlement of disputes." *Id.* By failing to give cure notice, the terminating party forecloses an opportunity for the defaulting party to repair work, reduce damages, or avoid additional defective performance, all of which

could mitigate the terminating party's damages. *Cf. id.* As such, denying a defaulting party the opportunity to cure violates the terminating party's duty to mitigate damages and avoid economic waste.

53.     Despite its contractual and common law obligations, Zachry failed to give CECM appropriate notice and an opportunity to cure any alleged issues with CECM's work. Zachry terminated the Service Agreement on May 15, 2024, and asked CECM to stop all work in progress, demobilize, and turn over the site by May 20, 2024.  After the termination, when Zachry allegedly discovered issues with CECM's work, Zachry did not at any point provide CECM, or its counsel, an opportunity to inspect, investigate, or cure any alleged deficiencies before engaging a third party to complete the alleged repair work. By denying CECM an opportunity to cure, Zachry also failed to mitigate its damages and avoid economic waste. As such, Zachry is not entitled to seek a setoff or reduction of CECM's damages as a matter of law.

### III.     Zachry's Failure to Timely Notify CECM of the Alleged Issues Has Also Prejudiced CECM in this Contested Matter

54.     A party must preserve what it knows, or reasonably should know is relevant in the action, or is reasonably calculated to lead to the discovery of admissible evidence. *Clark v. Randalls Food*, 317 S.W.3d 351, 357 (Tex. App. 2010) (*citing Trevino v. Ortega*, 969 S.W.2d 950 at 957 (Tex. 1998) (Baker, J., concurring)). Although a party need not take extraordinary measures to preserve evidence, a party has a duty to exercise reasonable care in preserving potentially relevant evidence. *Miner Dederick Const., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 466 (Tex. App. 2013).  A claim that the evidence was destroyed in the ordinary course of business will not excuse the obligation to preserve when a party's duty to preserve evidence arises before the destruction. *Miner*, 403 S.W.3d 451 at 466 *citing Adobe Land Corp. v. Griffin, L.L.C.,* 236 S.W.3d 351, 359 (Tex. App. 2007).

55.     Zachry terminated the Service Agreement on May 15, 2024, less than a week before filing its petition for Bankruptcy. (Ex. 3).  Zachry apparently reviewed the Service Agreement and its contractual options for terminating CECM prior to notifying CECM of the termination, because Zachry specifically referenced Section 16.2 of the Service Agreement in its termination notice. Zachry is a sophisticated party that both drafted the Service Agreement and drafted the Notice of Termination.

56.     At some point after terminating CECM for convenience, Zachry also determined it would attempt to "backcharge" or "withhold" payment from CECM under the Service Agreement. And yet, Zachry did not provide notice to CECM of any alleged defective work to allow CECM to (1) inspect the alleged defects; (2) document the alleged defects; (3) determine a remedy or fix to address the alleged issues; and (4) perform the work to correct or address the alleged issues.

57.     The alleged date that corrective work was performed by Zachry and ICS was from May 30, 2024, until December 6, 2024. (Doc. 2339, Doc. 2339-1, 2339-2, 2339-3, 2339-4). During this time, CECM was performing work for Zachry under four other subcontracts, and CECM had manpower and resources available to perform corrective work on the Service Agreement, if necessary.  Zachry chose not to notify CECM of the alleged issues.

58.     CECM made a claim on Zachry's surety bond on June 4, 2024, putting Zachry on notice of its claims for payment under the Service Agreement.  CECM then filed its Proof of Claim in the Bankruptcy on August 27, 2024.  The "backcharge notifications" are dated October 10, 2024, through January 31, 2025, but the "backcharge notifications" were not actually provided to CECM until February 20, 2025, in the Bankruptcy Proceeding.

59.     By the time Zachry notified CECM of the "backcharges" in February 2025, the alleged defective work had already been remedied. In other words, with full knowledge of CECM's

18

claims for payment, Zachry did not take steps to preserve evidence of the alleged defective work and give CECM an opportunity to inspect and investigate the then-existing conditions on the site.

60.     At the same time Zachry was allegedly performing corrective work, CECM was performing work for Zachry on the same OPPD projects under four other subcontracts.  Despite this, Zachry did not take steps to preserve the conditions or work Zachry now alleges it observed on site from May 30, 2024, until December 6, 2024.

61.     Zachry's failure to give the requisite notice under the Service Agreement amounts to a refusal to allow CECM to inspect and investigate Zachry's claims in real time, before the conditions were destroyed. CECM has been prejudiced by Zachry's failure to preserve relevant evidence, and Zachry should be estopped from now attempting to claim defective or incomplete work to reduce its liability to CECM in the Bankruptcy Proceeding.

## **CONCLUSION**

For the foregoing reasons, Commonwealth Electric Company of the Midwest respectfully requests that the Court enter  summary judgment in its favor on the affirmative defenses and claims raised by Debtors in their Objection to the Claim (Claim No. 1003), including that (i) because Zachry terminated the Services Agreement for convenience under section 16.2, CECM was prevented from completing any of its work in progress; (ii) Sections 10.1.3 and 11.9 and of the Service Agreement did not survive Zachry's termination for convenience; (iii) Zachry's claims for backcharges and offsets for incomplete and/or defective work are in all parts denied; and (iv) that even if Sections 10.1.3 and 11.9 survived Zachry's termination of the Service Agreement, Zachry failed to provide CECM the required notice and opportunity to cure or remedy any alleged incomplete or defective work and Zachry's claim that it is entitled to withhold payment from CECM to offset costs incurred by Zachry is denied, and for such other relief as is just and proper.

ANDREWS MYERS P.C.

*/s/ T. Josh Judd*
T. JOSH JUDD
SBN: 24036866
1885 Saint James Place, 15th Floor
Houston, TX 77056
Tel: 713-850-4200
Fax: 713-850-4211
jjudd@andrewsmyers.com

**and**

WOODS AITKEN LLP
Joel D. Heusinger, No. 18326, *admitted pro hac vice*
Audrey R. Svane, No. 25830, *admitted pro hac vice*
301 South 13th Street, Suite 500
Lincoln, Nebraska 68508
Telephone: (402) 437-8500
Facsimile: (402) 437-8558
jheusinger@woodsaitken.com
asvane@woodsaitken.com

**COUNSEL FOR COMMONWEALTH
ELECTRIC COMPANY OF THE MIDWEST**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 23, 2025, a true and correct copy of the foregoing Motion served via the Court's CM/ECF system on all parties requesting notice.

*/s/T. Josh Judd*
T. Josh Judd